1  MICHAEL F. PERLIS, ESQ. / SBN 95992
2  RICHARD JOHNSON, ESQ. / SBN 198117
   **KAUFMAN BORGEEST & RYAN LLP**
3  21700 Oxnard Street, Suite 1450
   Woodland Hills, CA 91367
4  Telephone: (818) 880-0992
5  Facsimile: (818) 880-0993
   Attorneys for Defendant,
6  **MARKEL AMERICAN INSURANCE COMPANY**
7
8           **UNITED STATES DISTRICT COURT**
9           **CENTRAL DISTRICT OF CALIFORNIA**
10
11  UNITED TALENT AGENCY, LLC, a          )    Case No.: **2:21-cv-00369-MCS (Ex)**
    Delaware limited liability company,   )
12                                        )    *Hon. Mark C. Scarsi*
                            Plaintiff,    )    **DEFENDANT'S NOTICE OF**
13                                        )    **MOTION AND MOTION FOR**
                                          )    **SUMMARY JUDGMENT**
14       vs.                              )    **[FED.R.CIV.P. 56]**
                                          )    Date:        December 13, 2021
15                                        )    Time:        9:00 a.m.
16  MARKEL AMERICAN INSURANCE             )    Courtroom:   7C, 7th Floor
    COMPANY, a Virginia company; and DOES )
17  1 through 10,                         )
                                          )    Action filed: December 18, 2020
18                          Defendants.   )
19  _____ )
20
21       **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**
22       **PLEASE TAKE NOTICE** that, on Monday, December 13, 2021 at 9:00 a.m.,
23  before the Honorable Mark C. Scarsi, in the Courtroom to be assigned at the Western
24  Division of the above-entitled Court, located at First Street Courthouse, 350 West
25  First Street, Courtroom 7C, 7th Floor, Los Angeles, CA 90012, Defendant, Markel
26  American Insurance Company ("MAIC"), will, and hereby does, make this Motion,
27  pursuant to Rule 56 of the Federal Rules of Civil Procedure, for Summary Judgment
28

in MAIC's favor on all claims in the Complaint of Plaintiff United Talent Agency, LLC ("UTA").

MAIC's Motion is brought on the ground that there is no genuine dispute of material fact, and that MAIC is entitled to judgment against UTA, purely as a matter of California law, to the effect that:

(1)   There is no coverage available under For Profit Management Liability Policy number ML817361 issued by MAIC to United Talent Agency Holdings, Inc., with an aggregate limit of liability of $5,000,000 for Directors and Officers and Company Liability, for the Policy Period of March 18, 2015, to March 18, 2016 (the "Policy") for certain claims asserted against UTA and various individuals by UTA's Creative Artists Agency ("CAA") alleging a "lawless, midnight raid that UTA and its co-conspirators launched against CAA in a desperate attempt to steal clients and employees" (the "Underlying Litigation") because:

  a.   Coverage is precluded by the Policy's Broad Professional Liability Exclusion, which California courts interpret expansively to exclude any claim flowing from or in any way involving UTA's Professional Services; and,

  b.   The Underlying Litigation is also uninsurable as a matter of law pursuant to California Insurance Code Section 533, which bars coverage for willful misconduct and for less than willful conduct inextricably intertwined in a scheme of willful misconduct (and the disgorgement/restitution sought in the Underlying Litigation, no matter how labeled, is also uninsurable as a matter of California public policy); and,

(2)   UTA therefore has no breach-of-contract or "bad faith" claims given the absence of coverage (and the declaratory judgment requested by UTA should be issued in MAIC's favor).

MAIC bases its Motion upon this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the Declaration of Michael F. Perlis filed concurrently herewith and the Exhibits thereto, Plaintiff's pleadings and the documents attached thereto (including, without limitation, the Policy), any and all

matters of which the Court may properly take judicial notice (including the pleadings from the Underlying Litigation), the Reply brief and any other papers filed or to be filed with the Court, any oral arguments of counsel, the legal authorities cited to or by the Court, and any other matters the Court may properly consider.

This Motion is made following the conference of counsel pursuant to L. R. 7-3, which took place on November 1, 2021.

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ...........................................................................5

**I.     INTRODUCTION** ........................................................................7

**II.    UNDISPUTED FACTS** ................................................................7

**III.   ARGUMENT** ..............................................................................9

        **A.    Standards on a Rule 56 Motion for Summary Judgment**....... 9

        **B.    Coverage is Precluded by the Professional Services
Exclusion**.……………………………………………………10

        **C.    The Underlying Litigation Is Legally Uninsurable under
California Law**.………………………………………………….. 15

        **D.    UTA's Breach-of-Contract and "Bad Faith" Claims Fail
Absent Coverage**.…………………………………………….....17

**IV.   CONCLUSION** ...........................................................................18

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

7734943

1

## <u>**TABLE OF AUTHORITIES**</u>

2

**Cases**

3  *American Casualty v. Union Welfare Fund*, 113 Nev. 764, 942 P. 2d 172 (1997)......16

4  *August Entertainment Inc. v. Philadelphia Indemnity Ins. Co.*, 146 Cal. App. 4th, 565

5      (2007) ....................................................................................................................16

6  *Baker v. Countrywide Home Loans, Inc.*, No. 3:08-CV-0916-B, 2009 WL 1810336

7      (N.D. Tex. Jun. 24, 2009) .....................................................................................10

8  *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 10 Cal. Rptr. 2d 538, 833 P. 2d

9      545 (1992)..............................................................................................................16

10  *Baylor Heating & Air v. Federated Mut.*, 987 F. 2d 415 (7th Cir. 1993) ...................16

11  *Beazley Ins. Co., Inc. v. ACE Am. Ins. Co.*, 880 F.3d 64 (2d Cir. 2018).....................12

12  *Benavides v. State Farm General Ins. Co.*, 136 Cal.App.4th 1241 (2006).................17

13  *Burlington Ins. Co. v. Bay One Security, Inc.*, No. 17-cv-04734-YGR (N.D. Cal. April

14      10, 2018) ...............................................................................................................12

15  *Case v. State FarmMutual Automobile Ins. Co., Inc.*, 30 Cal.App.5th 397 (2018) .....17

16  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)...............................................................9

17  *Continental Cas. Co. v. City of Richmond*, 763 F.2d 1076 (9th Cir. 1985) ................11

18  *Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478 (1998)..................................15

19  *Duckett v. City of Cedar Park*, 950 F.2d 272 (5th Cir. 1992) .....................................10

20  *Energy Insurance Mutual Limited v. ACE American Insurance Company*, 14

21      Cal.App.5th 281 (2017) ........................................................................................11

22  *HotChalk, Inc. v. Scottsdale Insurance Company*, No. 16-17287, 2018 U.S. App.

23      LEXIS 14884 (9th Cir. Jun. 4, 2018).....................................................................12

24  *James River Insurance Company v. Medolac Laboratories*, 290 F. Supp. 3d 956 (C.

25      D. Cal. 2018).........................................................................................................11

26  *Jamison v. Certain Underwriters at Lloyd's Under Policy No. B0146LDUSA0701030*,

27      2015 WL 1546254 (9th Cir. Apr. 8, 2015)............................................................12

28

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

7734943

*Level 3 Commc'ns., Inc. v. Fed. Ins. Co.*, 272 F. 3d 908 (7th Cir. 2001) ...................16

*Los Angeles Lakers v. Fed. Ins. Co.*, 869 F. 3d 795 (9th Cir. 2017) ............................11

*Love v. Fire Insurance Exchange*, 221 Cal.App.3d 1136 (1990)................................17

*Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819 (2006). .....................................11

*Nestle USA, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 10 Fed. Appx. 438 (9th Cir. 2001) ............................................................................................................................11

*Pacific Ins. Co., Ltd. v. Eaton Vance Management*, 369 F. 3d 584 (1st Cir. 2004).....16

*Pan Pacific Retail Properties, Inc. v. Gulf Ins. Co.*, 471 F. 3d 961 (9th Cir. 2006) ....16

*Southgate Recreation & Park Dist. v. Cal. Ass'n for Park & Recreation Ins.*, 106 Cal. App. 4th 293 (2003) .................................................................................................11

*State Farm Gen. Ins. Co. v. Mintarsih*, 175 Cal. App. 4th 274 (2009) ........................15

*Trenches, Inc. v. Hanover Ins. Co.*, No. CV 12–627–AG, 2012 WL 12507967 (C.D. Cal. Aug. 10, 2012)..................................................................................................11

*Underwriters at Lloyd's of London v. Cordova Airlines, Inc.*, 283 F. 2d 659 (9th Cir. 1960) ........................................................................................................................11

*Unified W. Grocers v. Twin City Fire Ins. Co.*, 457 F. 3d 1106 (9th Cir. 2006) .........16

*Vandenberg v. Superior Court*, 21 Cal. 4th 840 (1999) ..............................................16

**Statutes**

California Insurance Code § 533 ...........................................................................15, 16

**Rules**

Fed. R. Civ. P. 56(c) ......................................................................................................9

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

7734943

# I.  INTRODUCTION

As explained above in the Notice of Motion and Motion, and as demonstrated and discussed more fully below, there is no coverage under the Policy for the Underlying Litigation because (among other reasons) it is excluded by the Policy's Broad Professional Liability Exclusion and is uninsurable pursuant to California Insurance Code Section 533.  Therefore, UTA has no claim against MAIC for breach of contract or "bad faith" and its declaratory relief claim is moot.  Accordingly, MAIC is entitled to summary judgment in its favor on this action in its entirety.

# II.  UNDISPUTED FACTS

MAIC's Motion for Summary Judgment is based solely and entirely on the contents of two documents  regarding which there is no genuine dispute of material fact, namely: (1) the Policy (*i.e.*, For Profit Management Liability Policy number ML817361 issued by MAIC to United Talent Agency Holdings, Inc., with an aggregate limit of liability of $5,000,000 for Directors and Officers and Company Liability, for the Policy Period of March 18, 2015, to March 18, 2016, a true and correct copy of which is attached to UTA's Complaint and attached as Exhibit A to the Declaration of Michael Perlis filed concurrently herewith [the "Perlis Declaration"]); and, (2) the operative Underlying Litigation Second Amended Complaint (the "CAA SAC" or the "Complaint," which is publicly available in the Superior Court docket and attached as Exhibit B to the Perlis Declaration).

During the Policy Period, CAA filed the Complaint against UTA and certain UTA employees who were formerly CAA employees, asserting causes of action for: (1) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS; (2) INDUCING BREACH OF CONTRACT; (3) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; (4) BREACH OF FIDUCIARY DUTY; (5) CONSPIRACY TO BREACH FIDUCIARY DUTY; (6) AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; (7) BREACH OF

1  DUTY OF LOYALTY; (8) CONSPIRACY TO BREACH DUTY OF LOYALTY; (9)

2  AIDING AND ABETTING BREACH OF DUTY OF LOYALTY; AND (10)

3  VIOLATIONS OF BUSINESS AND PROFESSIONS CODE § 17200.

4       In the introduction to the CAA SAC, CAA made the following allegations

5  regarding the gravamen of all of the claims asserted therein:

> This case is about a lawless, midnight raid that UTA and its co-
> conspirators launched against CAA in a desperate attempt to steal
> clients and employees. Months in the making, this illegal and
> unethical conspiracy has resulted in a number of agents who were
> under contract to CAA brazenly and abruptly breaching their
> contractual obligations to CAA and intentionally and deliberately
> interfering with CAA's existing and prospective economic
> relationships with its clients. In the process, UTA and its co-
> conspirators have tortiously inflicted economic damage upon CAA.
>
> Acting in concert with one another and with full awareness of the
> indisputable illegality of their conduct, [Gregory] Cavic [who
> "worked for CAA as a talent agent from February 5, 2005 until March
> 31, 2015, when he resigned his employment with CAA and
> immediately joined UTA as a partner" {Par. 9}] and [Gregory]
> McKnight [who "worked for CAA as a talent agent from July 14,
> 2004 until March 31, 2015, when he resigned his employment with
> CAA and immediately joined UTA as a partner" {Par. 11}], while still
> on CAA's payroll and while still accepting generous compensation
> and benefits from CAA, worked clandestinely with each other and
> UTA to induce a number of CAA employees to abruptly terminate
> their employment with CAA and to join UTA. At least three of the
> employees whom UTA, Cavic, and McKnight induced to leave CAA
> had entered into enforceable, ongoing contracts with CAA.
>
> CAA also is informed and believes that Cavic and McKnight, in direct
> violation of their duties to CAA, solicited existing and prospective
> CAA clients on behalf of UTA while still employed by CAA; delayed
> meetings and deals with existing and potential CAA clients in order to
> make it more likely that they would complete such deals after leaving
> CAA and becoming partners at UTA with the intent to divert as much
> of CAA's business to UTA as possible; encouraged existing and
> prospective CAA clients to avoid exclusive relationships with CAA
> and/or to alter their existing relationships with the agency; and

- 8 -

7734943

> solicited and encouraged other CAA employees to do the same so that significant economic opportunities could more easily be diverted to UTA.
>
> Defendants should not be permitted to profit from their illegal and unethical activities.  Consequently, CAA seeks damages, injunctive relief, and restitution as a result of Defendants' willful, wanton, and malicious corporate raiding.

(Perlis Dec., Ex. B [CAA 2nd Amended Complaint], p. 1, Pars. 1-4.)

As demonstrated below in the Argument section, these unambiguous allegations in the CAA Complaint (read together with the terms of the Policy) demonstrate, purely as a matter of California law, that the Underlying Litigation is excluded from coverage under the Policy and uninsurable pursuant to Section 533.  Therefore, by letter dated April 16, 2015, MAIC disclaimed coverage for the Underlying Litigation in its entirety because (*inter alia* without limitation) the Underlying Litigation is excluded from coverage by a Professional Liability Exclusion Endorsement to the Policy. While UTA subsequently sent correspondence to MAIC periodically, asking it to reverse its coverage disclaimer, MAIC never did so.  Rather, MAIC stood by its April 16, 2015 coverage disclaimer, and also reminded UTA that Section 533 would still preclude coverage for the Underlying Litigation in its entirety even if the Exclusion did not apply (which it does).

## III.    ARGUMENT

### A.    Standards on a Rule 56 Motion for Summary Judgment

Summary judgment is appropriate where the movant proves that no genuine dispute exists as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The movant must make a prima facie case showing that it is entitled to the relief sought, and the "burden falls upon the movant to prove that no genuine issue of material fact exists."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Baker v. Countrywide Home Loans, Inc.*, No. 3:08-CV-0916-B, 2009 WL 1810336, at *2 (N.D.

1  Tex. Jun. 24, 2009). Only if the movant satisfies this burden, then the burden shifts to
2  the non-movant to show that there is a genuine factual dispute requiring a trial. *See*
3  *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992).

4  **B.**    **Coverage is Precluded by the Professional Services Exclusion.**

5      The Policy contains, among other terms and conditions, the following Broad
6  Professional Liability Exclusion, which was added by Endorsement:

7      This endorsement modifies insurance provided under the following:

8      DIRECTORS AND OFFICERS AND ORGANIZATION LIABILITY
9      COVERAGE PART[; ]DIRECTORS AND OFFICERS AND
       COMPANY LIABILITY COVERAGE PART[; ]EMPLOYMENT
10     PRACTICES AND THIRD[-]PARTY DISCRIMINATION LIABILITY
11     COVERAGE PART[; ]FIDUCIARY LIABILITY COVERAGE PART

12     The following exclusion is added to the EXCLUSIONS Section:

13     The Insurer shall not be liable to pay any Loss on account of, and shall
14     not be obligated to defend, any Claim based upon, arising out of, or in
       any way involving any actual or alleged error, misstatement, misleading
15     statement, act, omission, neglect, or breach of duty in connection with the
16     rendering or failure to render any professional services to others for a fee,
       commission or other compensation by any Insured.
17
18     This exclusion shall not apply to any Loss on account of any Claim
19     against any Insured Person alleging failure to supervise the rendering or
       failure to render any professional services excluded above.

20 (Perlis Dec., Ex. A [the Policy], p. 44 [Endorsement MML 1340 06 12].)

21     The first thing to note about this Exclusion is the extremely broad introductory
22 language, which expansively precludes coverage under the Policy for "any Claim
23 based upon, arising out of, or in any way involving any actual or alleged error,
24 misstatement, misleading statement, act, omission, neglect, or breach of duty in
25 connection with the rendering or failure to render any professional services to others
26 for a fee, commission or other compensation by any Insured." *Id.* (underscoring
27 added).

28

7734943

California courts (like those in most, if not all, jurisdictions) interpret this introductory language very broadly, so as to exclude anything flowing from or having anything to do with the excluded matter.  *See*, *e.g.*, *Los Angeles Lakers v. Fed. Ins. Co.*, 869 F. 3d 795, 801 (9th Cir. 2017) (policy containing exclusion for claims "arising from, or in consequence of invasion of privacy" interpreted broadly because "California courts and our court have consistently given a broad interpretation to the clause 'arising from' in an insurance contract"); *Nestle USA, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 10 Fed. Appx. 438, 440 (9th Cir. 2001); *Continental Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1080 (9th Cir. 1985) (broadly interpreting "arising from" in insurance policy exclusion provision); *Underwriters at Lloyd's of London v. Cordova Airlines, Inc.*, 283 F. 2d 659, 664 (9th Cir. 1960) (broadly interpreting "arising from" in an insurance policy exclusion as "connot[ing] ... something broader than causation"); *Southgate Recreation & Park Dist. v. Cal. Ass'n for Park & Recreation Ins.*, 106 Cal. App. 4th 293, 301 (2003) ("As this court has noted, the '"arising out of" connective ... broadly links' the exclusionary operative events with the exclusion." (citations omitted)); *Trenches, Inc. v. Hanover Ins. Co.*, No. CV 12–627–AG, 2012 WL 12507967, at *7 (C.D. Cal. Aug. 10, 2012); *James River Insurance Company v. Medolac Laboratories*, 290 F. Supp. 3d 956, 967-970 (C. D. Cal. 2018); *Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819, 836 (2006).

Consistent with this approach, California courts, the Ninth Circuit Court of Appeals (applying California law), and several other courts have interpreted broad professional liability exclusions like the one at issue here very expansively and enforced them to preclude coverage for Claims like the Underlying Litigation, which flow from or have anything to do with the Insureds' Professional Services.  *See*, *e.g.*, *Energy Insurance Mutual Limited v. ACE American Insurance Company*, 14 Cal.App.5th 281 (2017) (holding that umbrella policy's "professional services" exclusion barred coverage for settlements after a pipeline explosion); *HotChalk, Inc.*

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

*v. Scottsdale Insurance Company*, No. 16-17287, 2018 U.S. App. LEXIS 14884 (9th Cir. Jun. 4, 2018) (affirming the District Court's determination that a broadly-worded professional services exclusion in a directors and officers liability insurance policy required dismissal of the insured's coverage and bad faith claims at the pleadings stage, and explicitly rejecting the insured's argument that the exclusion did not apply because the underlying False Claims Act allegations only related to the insured's internal business practices and not to its provision of educational services to others); *Jamison v. Certain Underwriters at Lloyd's Under Policy No. B0146LDUSA0701030*, 2015 WL 1546254 (9th Cir. Apr. 8, 2015) (expansively applying a professional services exclusion to preclude coverage for a Ponzi scheme only indirectly related to professional services based upon the policy's broad, unqualified "in connection with" language, and rejecting illusory coverage argument since the policy, like this one, would still cover securities claims); *Beazley Ins. Co., Inc. v. ACE Am. Ins. Co.*, 880 F.3d 64 (2d Cir. 2018) (applying a "professional services" exclusion to bar coverage under D&O policies for claims against NASDAQ in connection with the Facebook IPO); *Burlington Ins. Co. v. Bay One Security, Inc.*, No. 17-cv-04734-YGR (N.D. Cal. April 10, 2018) (broadly applying professional services exclusion to preclude coverage).

Pursuant to these controlling authorities, the Underlying Litigation (the pleadings of which are replete with alleged connections to UTA's rendering of professional services for former CAA clients for a fee) is excluded in its entirety from coverage under the Policy.  *See*, *e.g.*, CAA SAC, Par. 1-4 ("solicited existing and prospective CAA clients on behalf of UTA while still employed by CAA"; "delayed meetings and deals with existing and potential CAA clients in order to make it more likely that they would complete such deals after leaving CAA and becoming partners at UTA with the intent to divert as much of CAA's business to UTA as possible";

1  "encouraged existing and prospective CAA clients to avoid exclusive relationships

2  with CAA and/or to alter their existing relationships with the agency").

3        The *sine qua non*, the entire rationale of, and motivation for, the alleged scheme

4  to steal CAA agents and clients, was the monetary value to UTA of the professional

5  services UTA would render to those stolen clients through those stolen agents for fees,

6  commissions, or other compensation, absent which rationale/motivation the scheme

7  would have had no value to UTA and would have caused no damage or loss to CAA.

8  If the agents had not had clients to whom they would be rendering professional

9  services on behalf of UTA as a result of the midnight raid, then the midnight raid

10  would not have occurred.  Thieves do not steal items of no value, and the value here

11  was the fees, commissions and other compensation to be gained by UTA as a result of

12  professional services.  Each and every act, error, and omission that is alleged as the

13  gravamen of each and every cause of action asserted in the Complaint is "in

14  connection with" the rendering of professional services by UTA. The entirety of the

15  relief sought in the Complaint is restitution/disgorgement of ill-gotten gains reaped by

16  UTA in compensation for the professional services the agents stolen from CAA

17  rendered to the clients stolen from CAA for UTA's benefit.

18        Pursuant to well-established and controlling California and Ninth Circuit case

19  law, these connections are more than sufficient to trigger the exclusion and preclude

20  coverage for the Underlying Litigation in its entirety.   UTA has never, in any of its

21  many letters challenging MAIC's coverage disclaimer, provided any cogent rebuttal to

22  the indisputable applicability of the Exclusion.  Instead, it has offered only unavailing

23  arguments that ignore and nullify the text of the broadly-worded Exclusion.

24        For example, UTA has argued that the Exclusion should only apply to claims

25  brought by UTA's clients or customers.  This argument is flatly contrary both to the

26  controlling case law cited above and to the express text of the Endorsement, which

27  provides that the Exclusion pertains, not only to the Directors and Officers Liability

28

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

7734943

Coverage Part, but also to the Fiduciary Liability and Employment Practices Liability Coverage Parts, which only provide coverage (subject to their terms and conditions and applicable law) for Claims by UTA Employees and Plan participants (not by third parties like clients and customers), and thus the Exclusion could not by hypothesis be limited to Claims by clients and customers.

Besides, as noted above, the text of the exclusion itself only requires that the Claim be "based upon, arising out of, or <u>in any way involving</u> any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty <u>in connection with</u> the rendering or failure to render any professional services to others for a fee, commission or other compensation by any Insured." (Underscoring added.) There is no requirement in the exclusion that the "error, misstatement, misleading statement, act, omission, neglect, or breach of duty" be committed against UTA clients or customers. All that is required is that the Claim "in any way involv[e]" some "actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty" that occurs "in connection with the rendering or failure to render any professional services to others for a fee, commission or other compensation by any Insured." The Underlying Litigation is precisely such a Claim, as demonstrated above. Therefore, it is, in its entirety, excluded from coverage under the Policy.[1]

---

[1] It should also be noted that the individuals sued in the Underlying Litigation would not be covered under the Policy's Insuring Agreements for their alleged breaches of duty against CAA committed in their capacity as former CAA employees, not in an Insured capacity as UTA executives, as required for coverage under the Policy's Insuring Agreements. The Complaint is replete with such uninsured capacity allegations. *See*, *e.g.*, CAA SAC, Pars. 2-3, 47-51, 86-91, 93-99, 101-110, 112-115, 117-121, 123-131. If any coverage were otherwise available for the Underlying Litigation, such uninsured capacity allegations would require a significant allocation of any settlement on the individuals' behalf to uncovered loss.

## C.   The Underlying Litigation Is Legally Uninsurable under California Law.

Moreover, the Underlying Litigation is also uninsurable as a matter of law pursuant to California Insurance Code Section 533, which is a nonwaivable statutory exclusion implied by law in every insurance policy issued in California, and which provides, in pertinent part, that "[a]n insurer is not liable for a loss caused by the willful [sic] act of the insured[.]"

As the Court can see for itself from the passage quoted above, the Complaint indisputably and unequivocally alleges only willful misconduct (and less than willful conduct inextricably intertwined with a scheme of willful misconduct), which is precluded from coverage pursuant to California Insurance Code section 533.  *See*, *e.g.*, *Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 507 (1998) (inherently harmful willful acts are uninsurable pursuant to California Insurance Code Section 533, and, to prevent disguised illegal indemnity, insurer is prohibited from paying even a cost-of-defense settlement in such cases); *State Farm Gen. Ins. Co. v. Mintarsih*, 175 Cal. App. 4th 274 (2009) (less than willful conduct that is inextricably intertwined with a scheme of willful misconduct is also uninsurable).

There is simply no way to read the Complaint as alleging anything other than a willful scheme by UTA and its co-conspirators to harm CAA and enrich themselves by stealing CAA's agents and clients in contravention of contracts, duties, and laws. *See*, *e.g.*, CAA SAC, Par. 1-4 ("lawless, midnight raid"; "co-conspirators"; "desperate attempt to steal clients and employees"; "illegal and unethical conspiracy"; "brazenly and abruptly breaching their contractual obligations"; "intentionally and deliberately interfering"; "tortiously inflicted"; "[a]cting in concert with one another and with full awareness of the indisputable illegality of their conduct"; "illegal and unethical activities"; "willful, wanton, and malicious corporate raiding").

There is no way for such claims to sound or for liability to attach in negligence, and CAA makes no allegation that could be interpreted as anything less than

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

7734943

inherently harmful willful misconduct by CAA and its co-conspirators. It should be noted in this connection that all of the alleged breaches of duty and contract are intentional, that all of the alleged interference torts are intentional torts, and that aiding and abetting and conspiracy are also intentional torts which require knowledge of and intentional assistance to the willful wrongdoing. Therefore Section 533 precludes coverage.

In addition, the only monetary relief sought (apart from unspecified damages caused by UTA's alleged willful scheme, which are uninsurable under Section 533, and attorneys' fees under California Business & Professions Code section 17200) is restitution/disgorgement of ill-gotten gains, which is uninsurable under California law no matter how labeled. *See*, *e.g.*, *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 10 Cal. Rptr. 2d 538, 833 P. 2d 545, 553 (1992) (restitution or disgorgement of monies to which Insured is not legally entitled does not qualify as Loss covered by insurance); *Pan Pacific Retail Properties, Inc. v. Gulf Ins. Co.*, 471 F. 3d 961, 966–69 (9th Cir. 2006); *Unified W. Grocers v. Twin City Fire Ins. Co.*, 457 F. 3d 1106, 1115 (9th Cir. 2006) ("The label of 'restitution' or 'damages' does not dictate whether a loss is insurable") *citing Level 3 Commc'ns., Inc. v. Fed. Ins. Co.*, 272 F. 3d 908, 911 (7th Cir. 2001) (holding disgorgement uninsurable even where labeled as "damages"); *see also*, *August Entertainment Inc. v. Philadelphia Indemnity Ins. Co.*, 146 Cal. App. 4th, 565, 573-574 (2007) (failure to pay monies owed pursuant to a contract is not a covered Wrongful Act); *citing*, *Vandenberg v. Superior Court*, 21 Cal. 4th 815, 840 (1999); and, *Pacific Ins. Co., Ltd. v. Eaton Vance Management*, 369 F. 3d 584, 590 (1st Cir. 2004); *accord*, *Baylor Heating & Air v. Federated Mut.*, 987 F. 2d 415, 419-420 (7th Cir. 1993) (same); *American Casualty v. Union Welfare Fund*, 113 Nev. 764, 942 P. 2d 172, 175-176 (1997) (same).

**D.    UTA's Breach-of-Contract and "Bad Faith" Claims Fail Absent Coverage.**

Since no coverage is available under the Policy for the Underlying Litigation as shown above, no benefits are due under the Policy, and thus UTA does not have any actionable claim for breach of contract or "bad faith," both of which require as an indispensable element and condition precedent the existence of covered benefits due under the Policy. *See*, *e.g.*, *Love v. Fire Insurance Exchange*, 221 Cal.App.3d 1136, 1151 (1990) ("there are at least two separate requirements to establish breach of the implied covenant: (1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause")

For this reason, "an insured cannot maintain a claim for tortious breach of the implied covenant of good faith and fair dealing absent a covered loss. If the insurer's investigation - adequate or not - results in a correct conclusion of no coverage, no tort liability arises for breach of the implied covenant." *Benavides v. State Farm General Ins. Co.*, 136 Cal.App.4th 1241, 1250 (2006).

Moreover, even if MAIC were incorrect about this issue, there was at most a genuine dispute as to the law regarding which MAIC's position is at the very least reasonable, as demonstrated by the fact that all the many courts cited above agree with it on the broad applicability of the Professional Liability Exclusion. *See*, *e.g.*, *Case v. State Farm Mutual Automobile Ins. Co., Inc.*, 30 Cal.App.5th 397, 413 (2018) ("an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith[,] even though it might be liable for breach of contract.' That is because 'whe[n] there is a genuine issue as to the insurer's liability under the policy for the claim asserted by the insured, there can be no bad faith liability imposed on the insurer for advancing its side of that dispute.'" *Case*, 30 Cal.App.5th, at 402.

# IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, MAIC respectfully requests that this Court grant its Motion for Summary Judgment and issue Judgment in MAIC's favor on all causes of action, and rule, as a matter of law, that the Policy does not provide any coverage for the Underlying Litigation, which is also uninsurable pursuant to California Insurance Code Section 533.

Dated:  November 8, 2021                        Respectfully submitted,

KAUFMAN BORGEEST & RYAN LLP

By:_____
            Michael F. Perlis
            Richard R. Johnson
*Attorneys for Defendant Markel American Insurance Company*

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

7734943

1

## **CERTIFICATE OF SERVICE**

2    I hereby certify that this document filed through the ECF system on this 8th

3    day of November, 2021, will be sent electronically to the registered participants as

4    identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to

5    those that are indicated as non-registered participants, if any.

6

7    _____

8    Michael F. Perlis

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7734943