A STOCK COMPANY



# MARKEL AMERICAN INSURANCE COMPANY

4521 Highwoods Parkway
Glen Allen, VA 23060

**INSURANCE POLICY**

**Coverage afforded by this policy is provided by the Company (Insurer) and named in the Declarations.**

In **Witness Whereof**, the company (insurer) has caused this policy to be executed and attested and countersigned by a duly authorized representative of the company (insurer) identified in the Declarations.

Secretary                                               President

MJIL 1000 06 10                                                          Page 1 of 1

INTERLINE

**MARKEL**®

## PRIVACY NOTICE

We are committed to safeguarding your privacy. We understand your concerns regarding the privacy of your nonpublic personal information. No nonpublic personal information is required to be collected when you visit our websites; however, this information may be requested in order to provide the products and services described. We do not sell nonpublic personal information to non-affiliated third parties for marketing or other purposes. We only use and share this type of information with non-affiliated third parties for the purposes of underwriting insurance, administering your policy or claim and other purposes as permitted by law, such as disclosures to insurance regulatory authorities or in response to legal process. Notwithstanding the foregoing, we may use this information for the purpose of marketing our own products and services to you.

We collect nonpublic personal information about you from the following sources:

- Information we receive from you on applications or other forms;
- Information about your transactions with us, our affiliates, or others; and/or
- Information we receive from consumer reporting agencies and inspection reports.

We do not disclose any nonpublic personal information about our customers/claimants or former customers/claimants to anyone, except as permitted by law.

We may disclose nonpublic personal information about you to the following types of third parties:

- Service providers, such as insurance agents and/ or brokers and claims adjusters; and/or
- Other non-affiliated third parties as permitted by law.

We restrict access to nonpublic personal information about our customers/claimants to those individuals who need to know that information to provide products and services to our customers/claimants or as permitted by law.  We maintain physical, electronic, and procedural safeguards to guard your nonpublic personal information.


*Residents of California:*

You may request to review and make corrections to recorded non-public personal information contained in our files.  A more detailed description of your rights and practices regarding such information is available upon request.  Please contact your agent/broker for instructions on how to submit a request to us.

**MANAGEMENT LIABILITY**



# MARKEL AMERICAN INSURANCE COMPANY

## NOTICES TO INSURER

Address for any notice pursuant to Section V - Reporting and Notice of the General Terms and Conditions:

Claims Service Center
MARKEL SERVICE, INCORPORATED
Ten Parkway North
Deerfield, IL  60015

Phone: (847) 572-6000
Fax: (847) 572-6338
E-mail: newclaims@markelcorp.com

Address for any other notice to the Insurer pursuant to this policy:

Markel West Insurance Services, a division of Markel Service, Incorporated (#0D95581)
21600 Oxnard Street, Suite 900
Woodland Hills, CA  91367-4800

Phone: (818) 595-0600
Fax: (866) 730-2529



**MANAGEMENT LIABILITY**

# MARKEL AMERICAN INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## POLICYHOLDER NOTICE - CLAIM EXPENSES

The Insurer calls your attention:

**Claim Expenses** are part of and not in addition to the Limits of Liability set forth in the Declarations, and payment for **Claim Expenses** shall reduce and may exhaust such Limits of Liability.

If you have any questions, please contact your agent.

MANAGEMENT LIABILITY

**MARKEL®**

# MARKEL AMERICAN INSURANCE COMPANY

## POLICYHOLDER DISCLOSURE NOTICE OF CERTIFIED ACTS
## OF TERRORISM COVERAGE

**Disclosure** You are hereby notified that under the Terrorism Risk Insurance Act as amended in 2015 the definition of terrorism has changed. As *defined in Section 102(1) of the Act*: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Under the Act, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. The Act requires the Insurer to also notify you that Terrorism Coverage required to be offered by the Act for losses caused by certified acts of terrorism is partially reimbursed by the United States Government under a formula established by federal law. Under this formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

The Terrorism Risk Insurance Act as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

**Disclosure Of Premium**

Certified acts of terrorism coverage is provided for no additional premium.



# MARKEL AMERICAN INSURANCE COMPANY

## FOR PROFIT MANAGEMENT LIABILITY POLICY DECLARATIONS

**Claims Made Coverage:** The coverage afforded by this policy only applies to **Claims** that are first made against the **Insured** during the **Policy Period** or the **Extended Reporting Period**, if exercised.

**Notice:** If purchased pursuant to Item 5 below, the Insurer shall have the duty to defend covered **Claims. Claims Expenses** shall reduce the Limit of Liability and any applicable Retention under this policy, unless otherwise stated in an endorsement to this policy. Please read the policy carefully.

POLICY NUMBER: ML817361     RENEWAL OF POLICY: ML812668

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE INSURER AGREES WITH THE PARENT COMPANY TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| **Item 1. Parent Company and Address** (No., Street, Town or City, State, Zip Code) |
|---|
| UNITED TALENT AGENCY HOLDINGS, INC. |
| 9336 CIVIC CENTER DR. |
| BEVERLY HILLS, CA 90210 |

| **Item 2. Policy Period** |
|---|
| From 03/18/2015 to 03/18/2016, at 12:01 A.M. Standard Time at the address shown above. |

| **Item 3. Extended Reporting Period** | |
|---|---|
| A.  Additional Premium:<br>(Percent of Annualized Premium<br>Stated in Item 4 below) | B.  Additional Period: |
| 75% | 1 Year |
| 125% | 3 Years |
| 150% | 6 Years |

| **Item 4. Policy Premium** |
|---|
| $73,700.00   Payable at inception |

| Producer Number, Name and Address |
|---|
| 08170<br>AmWINS Brokerage<br>601 S. Figueroa Street, Suite 4350<br>Los Angeles, CA  90017 |

## Item 5. Coverage Schedule

This policy includes only those Coverage Parts designated below by "X" as purchased. If a Coverage Part is not expressly designated as purchased, this policy does not include such Coverage Part.

| Coverage Part | Coverage Part Purchased | Coverage Part Limit of Liability | Coverage Part Retention | Coverage Part Pending or Prior Date | Coverage Part Duty to Defend |
|---|---|---|---|---|---|
| A.  Directors and Officers and Company Liability | Yes X<br>No ___ | $5,000,000 Aggregate Limit of Liability | | | Yes ___<br>No X |
|    1.  Insuring Agreement A: Insured Person Liability | | | $0 Each **Claim** | 08/04/2004 | |
|    2.  Insuring Agreement B: Company Reimbursement | | | $150,000 Each **Claim** | 08/04/2004 | |
|    3.  Insuring Agreement C: Company Liability | | | $150,000 Each **Claim** | 08/04/2004 | |
|    4.  Insuring Agreement D: Derivative Demand Investigation Costs | | Derivative Demand Investigation Costs Sublimit: $250,000 | | | |
| B.  Employment Practices and Third Party Discrimination Liability | Yes X<br>No ___ | $5,000,000 Aggregate Limit of Liability | $150,000 Each **Employment Practices Claim** | 01/13/2011 | Yes ___<br>No X |
| | | Third Party Discrimination Liability Sublimit: $5,000,000 All **Claims** | $200,000 Each **Third Party Discrimination Claim** | 01/13/2011 | |
| | | **Wage and Hour Claims** Sublimit: $Coverage Not Purchased All **Claims** | | | |
| C.  Fiduciary Liability | Yes ___<br>No X | $___ Aggregate Limit of Liability | $___ Each **Claim** | | Yes ___<br>No X |
| | | Voluntary Settlement Programs Sublimit: $___ | | | |

No Retention shall apply to **Non-Indemnifiable Loss** incurred by **Insured Persons** under any Coverage Part, except as required by state law.

## Item 6. Coverage Parts Which Share A Limit of Liability

[    ]   A.  Directors and Officers and Company Liability
[    ]   B.  Employment Practices and Third Party Discrimination Liability
[    ]   C.  Fiduciary Liability
[X]   D.  None

## Item 7. Combined Aggregate Limit of Liability

| $10,000,000 | All **Loss** (including **Claim Expenses**) under all purchased Coverage Parts, combined. |
|---|---|

| Item 8. Forms and Endorsements |
| --- |
| Forms and Endorsements applying to the Coverage Part(s) made part of this policy at time of issue: |
| See Schedule of Forms and Endorsements |

**These declarations, together with the General Terms and Conditions and Coverage Part(s) and any Endorsements(s), complete the above numbered policy.**

| 03/30/2015 | |
| --- | --- |
| **Countersignature Date** | AUTHORIZED REPRESENTATIVE |



INTERLINE
POLICY NUMBER: ML817361

# MARKEL AMERICAN INSURANCE COMPANY

## FORMS SCHEDULE

| Form Number | Form Name |
| --- | --- |
| MJIL 1000 06 10 | Policy Jacket |
| MPIL 1007 03 14 | Privacy Notice |
| MPML 1000 05 10 | Notices to Insurer |
| MPML 1002 09 10 | Policyholder Notice - Claim Expenses |
| MPML 1003 01 15 | Confirmation of Certified Acts of Terrorism |
| MDML 1000 05 10 | For Profit Management Liability Policy Declaration |
| MML 1000 05 10 | General Terms and Conditions |
| MML 1001 05 10 | Directors and Officers and Company Liab Cov Part |
| MML 1002 05 10 | Emplymnt Pract & Third Party Discrim Liab Cov Part |
| MML 1201 01 11-A | Policy Changes |
| MML 1201 01 11-B | Policy Changes  (Consumer Protection Exclusion) |
| MML 1201 01 11-C | Policy Changes (FLSA Wage and Hour Exclusion) |
| MML 1209 05 10 | Antitrust Endorsement |
| MML 1223 01 15 | Certified Acts of Terrorism Coverage |
| MML 1316 01 11 | Specific Matter Exclusion |
| MML 1340 06 12 | Exclusion - Broad Professional Liability |
| MML 1433-CA 01 11 | California Amendatory Endorsement |
| MML MANUSCRIPT-1 | Additional Insured(s) Endorsement |
| MML MANUSCRIPT-1 | Separate Retention Endorsement |

# Risk Management for Markel
# Management Liability Policyholders
## EPL Hotline & Online Loss Control

# Jackson Lewis, LLP

As a Markel policyholder, you have access to a comprehensive loss control program to connect you with proactive and practical information for managing risks. Staffed by EPL attorneys, the hotline is managed by Jackson Lewis, LLP, one of the nation's largest and most respected employment law firms representing management in the defense of harassment, discrimination, wrongful discharge, and other workplace-related claims. In addition to the hotline, employers can utilize the Jackson Lewis web site as a resource for education, risk management publications, newsletters, and opt-in email notifications. Markel EPL insureds can attend Jackson Lewis seminars without charge. A list of breakfast seminar series, luncheons, and other programs presented at their 49 offices across the country is available at **www.jacksonlewis.com**.

Please call **866-758-6874** to access the EPL Hotline.

# HR Care®

**http://markel.hrcare.com**

Courtesy of Markel, HR Care gives your business the core resources needed to keep up with employment law issues. **As a Markel Employment Practices Liability policyholder, you are entitled to access all secure areas of HR Care at no charge. Read more about HR Care below!**

## HR Classroom

**As a Markel insured, you and your employees may also take FREE trainings from HR Classroom for staff and supervisors concerning Discrimination and Sexual Harassment Prevention.** Upon completion of a training course, you and your employees may print the Certificate of Completion showing that you have taken the training. Go to http://markel.hrcare.com to get started.

If you want to track employee completion, customize trainings, insert policies, use the LMS interface and features, customer service, and other features of HR Classroom, then you may purchase trainings and services from HR Classroom. **Note: For every 100 trainings purchased, you will receive 50 free as an insured of Markel!** If you would like to see the various training offered by HR Classroom, visit http://www.hrclassroom.com/content/courses.aspx.

If you have any questions about HR Care and HR Classroom, you can reach us at:
**Curtis Communications, Inc.**
1200 Valley West Drive
Suite 309-4
West Des Moines, IA 50266
877-376-6158
curtiscom@hrcare.com





# MARKEL AMERICAN INSURANCE COMPANY

## GENERAL TERMS AND CONDITIONS

### TABLE OF CONTENTS

SECTION I – TERMS AND CONDITIONS ...................................................................................................2

SECTION II – DEFINITIONS ....................................................................................................................2

SECTION III – LIMITS OF LIABILITY, RETENTION AND SINGLE CLAIMS...................................................4

SECTION IV – DEFENSE, SETTLEMENT AND COOPERATION ...................................................................5

SECTION V – REPORTING AND NOTICE .................................................................................................7

SECTION VI –COVERAGE EXTENSIONS ..................................................................................................7

SECTION VII – ALLOCATION ..................................................................................................................8

SECTION VIII – CHANGES IN EXPOSURE ................................................................................................8

SECTION IX – REPRESENTATIONS, SEVERABILITY AND NON-RESCINDABLE COVERAGES ...........................9

SECTION X – CANCELLATION AND NONRENEWAL ................................................................................10

SECTION XI – OTHER INSURANCE ........................................................................................................10

SECTION XII – SUBROGATION ..............................................................................................................10

SECTION XIII – ALTERATION, ASSIGNMENT AND HEADINGS.................................................................10

SECTION XIV – PAYMENT PRIORITY .....................................................................................................11

SECTION XV – TERRITORY AND VALUATION .........................................................................................11

SECTION XVI – AUTHORIZATION CLAUSE .............................................................................................11

SECTION XVII – BANKRUPTCY..............................................................................................................11

# MARKEL AMERICAN INSURANCE COMPANY

## GENERAL TERMS AND CONDITIONS

In consideration of the premium paid and in reliance upon the statements made and information furnished to the Insurer in the **Application**, which is made a part hereof, and subject to the terms, conditions and limitations of this policy, the Insurer and the **Insureds** agree as follows:

## SECTION I – TERMS AND CONDITIONS

This policy is comprised of these General Terms and Conditions, the Declarations, various Coverage Parts and endorsements, if applicable, and the **Application**. Although various Coverage Parts may be referenced in this policy, a Coverage Part is included within this policy only if that Coverage Part is stated as being purchased in the Coverage Schedule in Item 5 of the Declarations.

Except for these General Terms and Conditions or unless stated to the contrary in any Coverage Part or endorsement, the terms and conditions of each Coverage Part of this policy apply only to that Coverage Part and shall not apply to any other Coverage Part of this policy. Any defined term referenced in the General Terms and Conditions but defined in a Coverage Part shall, for purposes of coverage under that Coverage Part, have the meaning set forth in that Coverage Part. If any provision in the General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for purposes of that Coverage Part.

Throughout this policy, the term Insurer refers to the insurance company providing this insurance.

## SECTION II – DEFINITIONS

When used in this policy, the following terms are defined as follows and appear in bold throughout this policy:

A.     **Application** means all materials and information, including all signed applications and any materials attached thereto or incorporated therein, submitted by or on behalf of the **Insureds** to the Insurer in connection with the underwriting of this policy or any policy issued by the Insurer of which this policy is a direct or indirect renewal or replacement.

    The **Application** is deemed attached to and incorporated into this policy.

B.     **Claim** means, with respect to each purchased Coverage Part, those matters defined as a **Claim** in each such Coverage Part. For the purpose of the Employment Practices and Third Party Discrimination Liability Coverage Part, if purchased, **Claim** includes any **Employment Practices Claim** and **Third Party Discrimination Claim**.

C.     **Claim Expenses** means reasonable and necessary fees, costs and expenses incurred by:

    1.     the Insurer, if duty to defend coverage has been purchased for the applicable Coverage Part;

    2.     the **Insureds**, if duty to defend coverage has not been purchased for the applicable Coverage Part;

    in the defense or appeal of that portion of any **Claim** for which coverage is afforded under this policy, including without limitation court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Insurer to apply for or furnish any such bonds; provided, however, that **Claim Expenses** shall not include salary, wages, overhead, benefit expenses or charges of any kind associated with **Insured Persons** or the Insurer.

D.     **Company** means, collectively, the **Parent Company** and its **Subsidiaries**, including any such organization as a debtor in possession under United States bankruptcy law or an equivalent status under the law of any other country.

E.     **Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Company**.

F. **Employee** means the following:

    1. any natural person in the regular service of the **Company** in the ordinary course of the **Company's** business and whom the **Company** compensates by salary, wages and/or commissions and has the right to govern and direct in the performance of such service, including any such natural person who is a leased, temporary, part-time or seasonal employee of the **Company**;

    2. any natural person independent contractor who is treated under applicable law as an employee of the **Company**; and

    3. any **Volunteer** of the **Company**.

G. **Employment Practices Claim** means a **Claim**, as defined in the applicable Coverage Part, brought by or on behalf of any past, present, future or prospective **Employee** of the **Company** against any **Insured** for a **Wrongful Employment Practice**.

H. **Executive Officer** means, with respect to any **Company,** any natural person who was, now is or shall during the **Policy Period** become such **Company's** president, chief executive officer, chief operating officer, chief financial officer or in-house general counsel or the functional equivalent of any of the foregoing positions.

I. **Extended Reporting Period** means the period described in Item 3.B of the Declarations, if purchased pursuant to Section VI.B of these General Terms and Conditions.

J. **Extradition** means any formal process by which any **Insured Person** located in any country is or is sought to be surrendered to any other country for trial, or otherwise to answer any criminal accusation, for a **Wrongful Act**.

K. **Financial Impairment** means the status of the **Company** resulting from:

    1. the appointment of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the **Company**, or

    2. the **Company** becoming a debtor in possession.

L. **Insured** means, with respect to each purchased Coverage Part, the entities, **Plans** and natural persons defined as **Insured** in each such Coverage Part.

M. **Insured Person** means, with respect to each purchased Coverage Part, any natural person defined as an **Insured Person** in each such Coverage Part.

N. **Interrelated Wrongful Acts** means all **Wrongful Acts**, including all **Wrongful Employment Practices**, that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

O. **Loss** means, with respect to each purchased Coverage Part, the amounts defined as **Loss** in each such Coverage Part.

P. **Manager** means, with respect to any **Company** that is a limited liability company, any natural person who was, now is or shall during the **Policy Period** become such **Company's** manager, managing member, member of the board of managers or equivalent executive.

Q. **Non-Indemnifiable Loss** means **Loss** incurred by an **Insured Person** for which the **Company** is not permitted by common or statutory law to indemnify or is not financially able to indemnify by reason of **Financial Impairment**.

R. **Parent Company** means the organization stated in Item 1 of the Declarations.

S. **Plans** means the plans and programs defined as **Plans** in the Fiduciary Liability Coverage Part, if purchased.

T. **Policy Period** means the period stated in Item 2 of the Declarations, subject to prior cancellation or termination.

U. **Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or a state, county, municipality or locality counterpart thereof. **Pollutants** also means any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, silica, noise, fungus (including mold, mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi, but not any fungi intended by the **Insured** for consumption) and electric or magnetic or electromagnetic field. Such matters shall include, without limitation, solids, liquids, gaseous, thermal, biological, nuclear or radiological irritants, contaminants or smoke, soot, fumes, acids, alkalis, chemicals or waste materials.

V.   **Subsidiary** means:

    1.   any organization in which more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of directors or equivalent position is owned, in any combination, by one or more other **Company(ies)**;

    2.   any organization in which one or more other **Company(ies)**, in any combination, have the right, pursuant to a written contract with or the by-laws, charter, operating agreement or similar document of such organization, to elect or appoint a majority of the directors or equivalent position of such organization; and

    3.   any foundation, charitable trust or political action committee controlled or exclusively sponsored by one or more other **Company(ies)**.

W.   **Third Party Discrimination Claim** means a **Claim**, as defined in the applicable Coverage Part, other than an **Employment Practices Claim**, which is brought by or on behalf of any natural person who is not an **Insured Person** or an applicant for employment with the **Company**, for a **Wrongful Act** that constitutes an actual or alleged violation of any law or public policy concerning discrimination or harassment.

X.   **Volunteer** means any natural person who is not an **Employee** and who donates his or her services and acts at the direction of and within the scope of duties determined by the **Company** and who is not paid a fee, salary or other compensation by the **Company** or by any other party for the services performed for the **Company**.

Y.   **Wrongful Act** means, with respect to each purchased Coverage Part, any act, error, omission and other matter defined as a **Wrongful Act** in each such Coverage Part. For purposes of Insuring Agreement A in the Employment Practices and Third Party Discrimination Liability Coverage Part if purchased, **Wrongful Act** means a **Wrongful Employment Practice**.

Z.   **Wrongful Employment Practice** means any of the following actual or alleged acts, errors or omissions by the **Insured Persons** in their capacity as such or by the **Company**:

    1.   wrongful termination (including constructive discharge) of an **Employee**;

    2.   violation of any law or public policy concerning discrimination in employment whether based upon age, race, national origin, religion, sex, sexual preference, marital status, disability, medical leave or genetic predisposition;

    3.   employment-related torts including without limitation wrongful termination, failure or refusal to hire or promote; wrongful discipline; wrongful reference, deprivation of a career opportunity, demotion or adverse change in terms, conditions or status of employment; wrongful failure to grant tenure; humiliation; retaliation for asserting a legal right; workplace harassment including without limitation offensive, intimidating, coercive or unwelcome conduct, advances, contact or communications; negligent hiring, retention, supervision, training or performance evaluation; and employment-related misrepresentation, defamation, invasion of privacy or infliction of emotional distress; or

    4.   violation of any other employment-related law, rule or regulation, including without limitation any civil rights or fair employment practices law.

## SECTION III – LIMITS OF LIABILITY, RETENTION AND SINGLE CLAIMS

A.   **LIMITS OF LIABILITY**

    1.   Combined Aggregate Limit of Liability

        The amount stated in Item 7 of the Declarations shall be the Insurer's maximum aggregate liability for all **Loss** covered under all Coverage Parts, combined, for all **Claims** first made during the **Policy Period** and the **Extended Reporting Period,** if exercised.

    2.   Coverage Part Limit of Liability

        The respective Limit of Liability for each Coverage Part, as stated in the Coverage Schedule in Item 5 of the Declarations, shall be the Insurer's maximum aggregate liability under each such Coverage Part for all **Loss** on account of all **Claims** first made during the **Policy Period** and the **Extended Reporting Period,** if exercised. The Limit of Liability for each Coverage Part shall be part of and not in addition to the Combined Aggregate Limit of Liability as stated in Item 7 of the Declarations.

    3.   Coverage Parts Which Share a Limit of Liability

        Notwithstanding Subsection III.A.2., the Insurer's maximum aggregate liability for all **Loss** covered under all Coverage Parts which share a Limit of Liability, as stated in Item 6 of the Declarations, shall be the

larger(est) of the amounts stated in Item 5 of the Declarations as the Aggregate Limit of Liability for each Coverage Part which shares a Limit of Liability. Such shared Limit of Liability shall be part of and not in addition to the Combined Aggregate Limit of Liability as stated in Item 7 of the Declarations. This paragraph further limits the Insurer's maximum liability under each such Coverage Part and does not increase the respective separate Limit of Liability for each Coverage Part.

4.    Claim Expenses Within Limit of Liability

**Claim Expenses** are part of and not in addition to the applicable Limit of Liability, and the payment by the Insurer of **Claim Expenses** reduces such Limit of Liability. If the applicable Limit of Liability is exhausted by payment of **Loss**, the Insurer's obligations, including without limitation any duty to defend, shall be completely fulfilled and extinguished.

**B.    RETENTION**

The Insurer's liability with respect to **Loss** for each **Claim** shall apply only to that part of **Loss** which is excess of the applicable Retention stated in the Coverage Schedule in Item 5 of the Declarations, and such Retention shall be borne by the **Insured** uninsured and at the **Insured's** own risk. No Retention shall apply to **Non-Indemnifiable Loss** incurred by an **Insured Person**, except as required by state law.

**C.    SINGLE CLAIM**

All **Claims** which arise out of the same **Wrongful Act** or **Interrelated Wrongful Acts** of the **Insured** shall be deemed one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made against any **Insured**, regardless of whether such date is before or during the **Policy Period** or any **Extended Reporting Period**.

**D.    SINGLE CLAIM COVERED BY MULTIPLE COVERAGE PARTS**

If a single **Claim** (as described in Subsection III.C above) is covered in whole or in part under more than one Coverage Part:

1.    the applicable Retention under each such Coverage Part shall be applied with respect to coverage for such **Claim** under such Coverage Part, provided the sum of all applicable Retentions under all such Coverage Parts shall not exceed the larger(est) of such applicable Retentions; and

2.    the remaining applicable Limits of Liability under each such Coverage Part shall apply with respect to coverage for such **Claim** under such Coverage Part, provided the Insurer's maximum aggregate liability for all **Loss** covered under all such Coverage Parts, combined, on account of such **Claim** shall not exceed the larger(est) of such remaining applicable Limits of Liability. This paragraph 2 does not increase the Insurer's maximum liability with respect to such **Claim**, which is also subject to the Combined Aggregate Limit of Liability as stated in Item 7 of the Declarations and any shared Limit of Liability described in Subsection III.A.3 above.

**SECTION IV – DEFENSE, SETTLEMENT AND COOPERATION**

**A.    DEFENSE AND SETTLEMENT**

1.    If duty to defend coverage is purchased with respect to any Coverage Part as stated in the Coverage Schedule in Item 5 of the Declarations:

a.    The Insurer shall have the right and duty to defend any **Claim** covered under such Coverage Part, even if any of the allegations are groundless, false or fraudulent. The Insurer's duty to defend any **Claim** shall cease upon exhaustion of the Limit of Liability applicable to such **Claim**.

b.    If the law of the state of the **Parent Company's** domicile allows the **Insureds** to control the selection of defense counsel where a conflict of interest has arisen between the **Insured** and the Insurer, the Insurer will provide to the **Insured** a list of attorneys or law firms from which the **Insured** may designate defense counsel who shall act solely in the interest of the **Insured**, and the **Insured** shall direct such defense counsel to cooperate with the Insurer. Such cooperation shall include:

(1)    providing to the Insurer on a regular basis, but not less frequently than every three (3) months, written reports on claimed damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the **Claim**;

(2)    providing to the Insurer any other reasonable information requested by the Insurer;

(3)    providing to the Insurer fully itemized **Claim Expenses** billings on a periodic basis; and

(4)   good faith efforts to resolve any **Claim Expenses** disputes with the Insurer and the **Insured**.

Fees and costs incurred by such defense counsel at the Insurer's request or to cooperate with the Insurer, as set forth above, shall be included in **Claim Expenses**.

2.   If duty to defend coverage is not purchased with respect to any Coverage Part as stated in the Coverage Schedule in Item 5 of the Declarations, it shall be the duty of the **Insureds** and not the duty of the Insurer to defend any **Claim** covered under such Coverage Part. Solely with respect to such Coverage Part, the Insurer shall advance covered **Claim Expenses** on a current basis. Any advancement of covered **Claim Expenses** shall be repaid to the Insurer by the **Insureds** severally according to their respective interests if and to the extent it is later determined the **Insureds** shall not be entitled under the terms and conditions of this policy to coverage for such **Claim Expenses**.

3.   With respect to any Coverage Part:

a.   The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Claim Expenses** or otherwise assume any contractual obligation, admit any liability or stipulate to any judgment with respect to any **Claim**, without the Insurer's written consent, which shall not be unreasonably withheld. The Insurer shall not be liable for or as a result of any offer to settle, settlement, **Claim Expenses**, assumed obligation, admission or stipulated judgment to which it has not given its prior written consent.

b.   The Insurer shall have the right and shall be given the opportunity to make any investigation it deems necessary and to effectively associate with the **Insureds** in the investigation, defense and settlement, including but not limited to the negotiation of a settlement, of any **Claim** that is or reasonably could be covered in whole or in part by the Coverage Part.

4.   The Insurer may, with the consent of an **Insured** against whom a **Claim** is made, make any settlement of such **Claim** against such **Insured** if such **Claim** is covered under a Coverage Part. If the **Insured** withholds consent to any such settlement acceptable to the claimant, the Insurer's liability for all **Loss** on account of such **Claim** shall not exceed the sum of:

a.   the amount for which the Insurer could have settled such **Claim**;

b.   **Claim Expenses** accrued as of the date such settlement was proposed in writing by the Insurer to the **Insured**; and

c.   eighty percent (80%) of all covered **Loss** incurred thereafter on account of such **Claim**.

**B.   COOPERATION**

With respect to all purchased Coverage Parts, the **Insureds** agree to provide the Insurer with all information, assistance, and cooperation which the Insurer reasonably requests and agree that in the event of a **Claim**, the **Insureds** will do nothing that shall prejudice the Insurer's position or its potential or actual rights of recovery. Without limiting the foregoing and upon the Insurer's request, the **Insured** shall: (1) attend hearings, depositions, arbitrations, mediations  and trials; and (2) assist in effecting settlement, and securing and giving evidence.

If an **Insured Person** attends any hearing, deposition, arbitration, mediation or trial at the Insurer's written request, and upon receipt by the Insurer of satisfactory written proof of loss, the Insurer shall reimburse the **Insured Person** the following amounts:

a.   all reasonable and necessary out-of-pocket expenses, other than **Claim Expenses**, incurred by the **Insured Person** for such attendance; and

b.   up to five hundred dollars ($500) per day for loss of earnings attributable to such attendance.

The Insurer's maximum liability for all such expenses and loss of earnings attributable to all **Claims** covered under this policy shall be fifteen thousand dollars ($15,000), which is in addition to and not part of the Limits of Liability stated in Items 5 and 7 of the Declarations.

**SECTION V – REPORTING AND NOTICE**

**A.   NOTICE OF CLAIMS**

With respect to any purchased Coverage Part:

1.   As a condition precedent to their rights under such Coverage Part, the **Insureds** shall give to the Insurer written notice of any **Claim** made against the **Insureds** as soon as practicable after an **Executive Officer**

or an employee of the **Company's** office of general counsel, risk management or functionally equivalent departments, if any, first learns of such **Claim**, but in no event later than **(i)** ninety (90) days after expiration of the **Policy Period**, or **(ii)** the expiration of the **Extended Reporting Period**, if exercised.

2.   The **Insureds** shall include within any notice of **Claim** a description of the **Claim**, the nature of the alleged **Wrongful Act**, the nature of the alleged or potential damage, the names of the claimants, and the date and manner in which the **Insureds** first became aware of the **Claim**.

**B.   DISCOVERY OF POTENTIAL CLAIMS**

With respect to any purchased Coverage Part, if during the **Policy Period** or the **Extended Reporting Period**, if exercised, the **Insured** becomes aware of any circumstance that could give rise to a **Claim** against the **Insured** and gives written notice of such circumstance containing the information listed below to the Insurer during the **Policy Period** or the **Extended Reporting Period**, if exercised, then any **Claim** subsequently arising therefrom shall be deemed for the purpose of this insurance to have been first made on the date on which such written notice is received by the Insurer.

It is a condition precedent to the coverage afforded by this Section V.B that such written notice to the Insurer contain the following information:

1.   a description and date of the **Wrongful Act** which could be alleged in the potential **Claim**;

2.   the injury or damage which has or may result from such **Wrongful Act**;

3.   the identity of the **Insured** who may be the subject of the potential **Claim**;

4.   the identity of potential claimants; and

5.   the manner and time in which the **Insured** first became aware of such circumstance or **Wrongful Act**.

The Insurer, at its sole option, may investigate such circumstance or **Wrongful Act**.

**C.   NOTICE**

Any notice to the Insurer pursuant to this Section V shall designate under which Coverage Part(s) the notice is given, and such notice shall not be deemed to be an effective notice under any other Coverage Part(s).

Except as otherwise provided in this policy, all notices to the Insurer shall be in writing and given to the Insurer at the applicable address stated in the attached notice schedule. All notices to the **Insureds** may be given to the **Parent Company** at the address stated in Item 1 of the Declarations.

**SECTION VI – COVERAGE EXTENSIONS**

**A.   ESTATES, LEGAL REPRESENTATIVES, SPOUSES AND DOMESTIC PARTNERS**

The estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** of **Insured Persons** shall be considered an **Insured Person** but only for a **Claim** arising solely out of their status as such and, in the case of a spouse or **Domestic Partner**, where such **Claim** seeks damages from marital community property, jointly held property or property transferred from the **Insured Person** to the spouse or **Domestic Partner**. No coverage is provided for any wrongful act or omission of an estate, heir, legal representative, assign, spouse or **Domestic Partner**. All provisions in these General Terms and Conditions and the respective Coverage Part applicable to **Loss** incurred by the **Insured Person** shall also apply to loss incurred by such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners**.

**B.   EXTENDED REPORTING PERIOD**

If the Insurer or the **Parent Company** cancels or nonrenews this policy other than for nonpayment of premium, the **Insureds** shall have the right, upon payment of the applicable additional premium stated in Item 3.A of the Declarations, to an extension of the coverage granted by this policy for the respective period stated in Item 3.B of the Declarations immediately following the effective date of such cancellation or nonrenewal, but such extension of coverage shall only apply to **Claims** first made against the **Insureds** during such period for any **Wrongful Act** which happened prior to the effective date of such cancellation or nonrenewal.

This right of extension shall lapse unless written notice of such election, together with payment of the additional premium due, is given by the **Insureds** to the Insurer within thirty (30) days following the effective date of cancellation or nonrenewal. If such written request and payment of additional premium are not received by the Insurer within such thirty (30) days, there shall be no right to purchase the **Extended Reporting Period** at a later date.

The quotation of a different premium, Retention, Limit of Liability or other coverage terms at renewal does not constitute a cancellation or nonrenewal for the purpose of this Section VI.B. The entire additional premium for the **Extended Reporting Period** shall be deemed fully earned at the inception of the **Extended Reporting Period**.

The **Extended Reporting Period** shall not in any way increase the Limits of Liability stated in Items 5 and 7. of the Declarations.

## SECTION VII – ALLOCATION

If in any **Claim** the **Insured** incurs both **Loss** covered by this policy and loss not covered by this policy either because the **Claim** against the **Insured** includes both covered and uncovered matters or because the **Claim** is made against both **Insureds** who are afforded coverage for such **Claim** and others, including **Insureds** who are not afforded coverage for such **Claim**, the **Insureds** and the Insurer shall allocate such amount as follows:

1.  If the Insurer has the duty to defend such **Claim** pursuant to Item 5 of the Declarations, all such **Loss** which constitutes **Claim Expenses** shall be allocated in its entirety to covered **Loss**.

2.  All other **Loss** described above shall be allocated between covered **Loss** and uncovered loss based upon the relative legal and financial exposures of the parties to covered and uncovered matters.

In any arbitration, suit or other proceeding among the Insurer and the **Insureds** or the **Company**, no presumption shall exist concerning what is a fair and proper allocation between covered **Loss** and uncovered loss.

## SECTION VIII – CHANGES IN EXPOSURE

### A.   NEW ORGANIZATIONS

1.  If before or during the **Policy Period** the **Company** acquires or creates a new **Subsidiary** or acquires an entity by merger or consolidation, coverage under this policy automatically shall apply to the new organization and its **Insureds**, provided such coverage shall apply only with respect to any **Claim** for a **Wrongful Act** taking place after such acquisition or creation, and shall be subject to subsections 2 and 3 below.

2.  If: (i) such newly acquired organization has issued any publicly-owned debt or equity securities; (ii) the total assets of such newly acquired organization exceeds twenty-five percent (25%) of the total assets of the **Parent Company** as reflected in their respective most recent audited consolidated financial statements; (iii) solely with respect to the Employment Practices and Third Party Discrimination Liability Coverage Part, if purchased, the total number of **Employees** of all **Companies** increases by more than twenty-five percent (25%) as an immediate result of such acquisition, merger or consolidation; or (iv) solely with respect to the Fiduciary Liability Coverage Part, if purchased, the total assets of all **Plans** of such newly acquired organization exceeds twenty-five percent (25%) of the total assets of all other **Plans** of all **Companies** as reflected in their respective most recent financial statements, then coverage under such Coverage Part as provided in subsection 1 above shall terminate as of the earlier of (i) the end of the **Policy Period** or the **Extended Reporting Period** if exercised, or (ii) ninety (90) days after such acquisition, merger or consolidation.

3.  The Insurer may agree to extend the coverage described in subsection 2 above if, within such ninety (90) days, the **Parent Company** provides any additional information, pays any additional premium and agrees to any additional terms and conditions reasonably required by the Insurer for such extension of coverage. In such event, the Insurer shall issue an endorsement to this policy confirming such coverage extension.

### B.   ACQUISITION OF PARENT COMPANY

If during the **Policy Period** the **Parent Company** merges into or consolidates with another organization such that the **Parent Company** is not the surviving entity, or another organization or person or group of organizations and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other organization(s) or person(s) of more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of directors, trustees or equivalent executives of the **Parent Company**, then coverage under this policy shall continue until the end of the **Policy Period** or the **Extended Reporting Period** if exercised, provided such coverage shall apply only with respect to any **Claim** for a **Wrongful Act** taking place prior to such merger, consolidation or acquisition.

### C.   CESSATION OF SUBSIDIARIES

If before or during the **Policy Period** an organization ceases to be a **Subsidiary**, coverage with respect to such **Subsidiary** and its **Insureds** shall continue until the end of the **Policy Period** or the **Extended Reporting Period**

if exercised, provided such coverage shall apply only with respect to any **Claim** for a **Wrongful Act** taking place prior to the date such organization ceased to be a **Subsidiary**.

**D.**  **CESSATION OF PLANS**

If before or during the **Policy Period** a **Plan** is terminated, coverage for such **Plan** and its **Insureds** under the Fiduciary Liability Coverage Part, if purchased, shall continue until the end of the **Policy Period** or the **Extended Reporting Period** if exercised, with respect to any **Claim** for a **Wrongful Act** taking place before or after such termination.

**SECTION IX – REPRESENTATIONS, SEVERABILITY AND NON-RESCINDABLE COVERAGES**

**A.**  **REPRESENTATIONS**

The **Insureds** represent and acknowledge that the statements and information contained in the **Application** are true and complete, are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy. This policy is issued in reliance upon the truth and completeness of such representations.

**B.**  **SEVERABILITY**

The **Application** shall be construed as a separate application for coverage by each of the **Insureds**. If with respect to any Coverage Part the **Application** contains any material misrepresentation or omission, then such Coverage Part shall be void *ab initio* as to:

**1.**  any **Company** to the extent such **Company** indemnifies an **Insured Person** who knew the facts that were not truthfully disclosed in the **Application**; and

**2.**  any **Company** and its **Subsidiaries** and **Plan(s)** if an **Executive Officer** of such **Company** knew the facts that were not truthfully disclosed in the **Application**;

whether or not such **Executive Officer** or **Insured Person** knew the **Application** contained such misrepresentation or omission. No knowledge of one **Insured Person** shall be imputed to any other **Insured Person** for purposes of this Section IX.

**C.**  **NON-RESCINDABLE COVERAGES**

The Insurer shall not have the right to rescind or void, in whole or in part, the coverage provided under any Coverage Part for any **Non-Indemnifiable Loss** incurred by the **Insured Persons**.

**SECTION X – CANCELLATION AND NONRENEWAL**

**A.**  **CANCELLATION**

The **Parent Company** may cancel this policy or any Coverage Part by mailing to the Insurer written notice stating when thereafter such cancellation shall be effective. The Insurer may cancel this policy or any Coverage Part only for nonpayment of premium. In such event, the Insurer shall mail or deliver to the **Parent Company** written notice of cancellation stating when, not less than least ten (10) days thereafter, such cancellation shall be effective. If this policy is cancelled, the Insurer will compute earned premium pro rata. The cancellation will be effective even if the Insurer has not made or offered a premium refund.

**B.**  **NONRENEWAL**

If the Insurer decides not to renew this policy, the Insurer will mail or deliver to the **Parent Company** written notice of non-renewal at least sixty (60) days prior to the end of the **Policy Period**.

**SECTION XI – OTHER INSURANCE**

If any **Loss** resulting from any **Claim** is insured by any other valid and collectible policy issued to any **Insured**, then this policy shall apply only in excess of the amount of any deductibles, retentions, co-insurance and limits of liability under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this policy by reference in such other policy to this policy's policy number.

With regard to coverage for any leased employees or independent contractors who are included in the definition of **Employee**, this policy shall be specifically excess of any indemnification or insurance otherwise available to such leased employees or independent contractors from the applicable leasing company or any other source.

**SECTION XII – SUBROGATION**

In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all the **Insureds**' rights of recovery, including without limitation any right of recovery from the **Company** for **Loss** incurred by **Insured Persons** which is indemnifiable by the **Company**. The **Insureds** shall execute all papers required and shall do

everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of the **Insureds**. In any subrogation claim against the **Company** to enforce the **Insured Persons'** right of indemnification, the shareholder and board of director resolutions of the **Company** shall be deemed to provide indemnification to the fullest extent permitted by law, and the Insurer's recovery from the **Company** for such **Loss** shall not exceed the Retention applicable to the **Company** for such **Loss**. The Insurer shall not exercise its right of subrogation against an **Insured Person** with respect to payments under any Coverage Part unless and to the extent one of the following respective exclusions in such Coverage Part applies to such **Insured Person**:

| Coverage Part | Exclusions |
|---|---|
| Directors and Officers and Company Liability | Section IV.I and J |
| Employment Practices and Third Party Discrimination Liability | Section III.F and G |
| Fiduciary Liability | Section III.D |

Any such recoveries, less the cost of obtaining them, will be distributed in the following priority:

**A.**     first, to the **Insureds** until they are reimbursed for any **Loss** that they sustain that exceeds their available insurance;

**B.**     second, to any insurers of any policies specifically excess of this policy until they are reimbursed for any **Loss** paid under such policies;

**C.**     third, to the Insurer until the Insurer is reimbursed for any payment made under this policy;

**D.**     fourth, to the **Insureds**, until they are reimbursed for their payment of any applicable Retention.

## SECTION XIII – ALTERATION, ASSIGNMENT AND HEADINGS

No change in, modification of, or assignment of interest under this policy shall be effective except when made by a written endorsement issued to form a part of this policy.

The titles and headings to the various sections, subsections and endorsements of this policy, as well as the schedule of endorsements attached to this policy, are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions or existence of such sections, subsections or endorsements.

## SECTION XIV – PAYMENT PRIORITY

If the **Loss** due and owing by the Insurer under a Coverage Part exceeds the then-remaining Limit of Liability applicable to such **Loss**, the Insurer shall pay such **Loss**, subject to the applicable Limits of Liability, in the following priority:

**A.**     first, the Insurer shall pay such **Loss** which is **Non-Indemnifiable Loss** incurred by **Insured Persons**;

**B.**     second, the Insurer shall pay all other **Loss** covered under the Coverage Part.

Subject to the foregoing paragraph, the Insurer shall, upon receipt of a written request from the **Parent Company**, delay any payment of **Loss** due and owing to the **Company** until such time as the **Parent Company** designates, provided the Insurer's liability with respect to any such delayed **Loss** payment shall not be increased, and shall not include any interest, on account of such delay.

## SECTION XV – TERRITORY AND VALUATION

Coverage under any Coverage Part shall extend to **Wrongful Acts** taking place, **Loss** incurred, or **Claims** made anywhere in the world, to the extent legally permitted.

All premiums, limits, retentions, **Loss** and other amounts under this policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of **Loss** under this policy is stated in a currency other than United States dollars, payment under this policy shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of **Loss** is due, respectively.

## SECTION XVI – AUTHORIZATION CLAUSE

By acceptance of this policy, the **Parent Company** agrees to act on behalf of the **Insureds** with respect to giving and receiving of notices to and from the Insurer as provided herein, the cancellation of this policy in whole or in part, paying premiums and receiving any return premiums that may become due under this policy, and agreeing to endorsements. The **Insureds** agree that the **Parent Company** shall act on their behalf with respect to such matters.

**SECTION XVII – BANKRUPTCY**

Bankruptcy or insolvency of any **Insured** or of the estate of any **Insured** shall not relieve the Insurer of its obligations nor deprive the Insurer of its rights or defenses under this policy.

In the event a liquidation or reorganization proceeding is commenced by or against a **Company** pursuant to the United States Bankruptcy Code, as amended, or any similar foreign, state or local law, the **Company** and the **Insureds** hereby (i) waive and release any automatic stay or injunction which may apply in such proceeding to this policy or its proceeds under such bankruptcy law, and (ii) agree not to oppose or object to any efforts by the Insurer, the **Company** or any **Insured** to obtain relief from any such stay or injunction.



# MARKEL AMERICAN INSURANCE COMPANY

## DIRECTORS AND OFFICERS AND COMPANY LIABILITY COVERAGE PART

### TABLE OF CONTENTS

SECTION I – INSURING AGREEMENTS ............................................................................................................2

A.    INSURED PERSON LIABILITY COVERAGE....................................................................................2

B.    COMPANY REIMBURSEMENT COVERAGE ...................................................................................2

C.    COMPANY LIABILITY COVERAGE ..................................................................................................2

D.    DERIVATIVE DEMAND INVESTIGATION COSTS...........................................................................2

SECTION II – EXTENSIONS ............................................................................................................................2

A.    PUBLIC COMPANY COVERAGE QUOTE........................................................................................2

B.    OUTSIDE POSITION COVERAGE ...................................................................................................2

SECTION III – DEFINITIONS ...........................................................................................................................3

SECTION IV – EXCLUSIONS............................................................................................................................5

# MARKEL AMERICAN INSURANCE COMPANY

## DIRECTORS AND OFFICERS AND COMPANY LIABILITY COVERAGE PART

**SECTION I – INSURING AGREEMENTS**

**A.    INSURED PERSON LIABILITY COVERAGE**

The Insurer shall pay on behalf of the **Insured Persons** all **Loss** for which the **Insured Persons** are not indemnified by the **Company** and which the **Insured Persons** become legally obligated to pay on account of any **Claim** first made against **Insured Persons**, individually or otherwise, during the **Policy Period** or the **Extended Reporting Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**.

**B.    COMPANY REIMBURSEMENT COVERAGE**

The Insurer shall pay on behalf of the **Company** all **Loss** for which the **Company** grants indemnification to the **Insured Persons**, as permitted or required by law, and which the **Insured Persons** have become legally obligated to pay on account of any **Claim** first made against **Insured Persons**, individually or otherwise, during the **Policy Period** or the **Extended Reporting Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**.

**C.    COMPANY LIABILITY COVERAGE**

The Insurer shall pay on behalf of the **Company** all **Loss** which the **Company** becomes legally obligated to pay on account of any **Claim** first made against the **Company** during the **Policy Period** or the **Extended Reporting Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**.

**D.    DERIVATIVE DEMAND INVESTIGATION COSTS**

The Insurer shall pay on behalf of the **Company** all **Investigative Costs** on account of a **Securityholder Derivative Demand** first received by the **Company** during the **Policy Period** or the Extended Reporting Period, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**, provided (**i**) the Insurer's maximum liability for all **Investigative Costs** covered under this Insuring Agreement D shall be the respective Sublimit amount stated in the Coverage Schedule in Item 5 of the Declarations, which is part of and not in addition to the Combined Aggregate Limit of Liability as stated in Item 7 of the Declarations and the Aggregate Limit of Liability for this Coverage Part, and (**ii**) no Retention shall apply to this Insuring Agreement D.

**SECTION II – EXTENSIONS**

**A.    PUBLIC COMPANY COVERAGE QUOTE**

If during the **Policy Period** the **Parent Company**:

**1.**    gives prior written notice to the Insurer that a **Company** intends to publicly offer or sell any debt or equity securities or to otherwise become a publicly-held organization described in Section 12(g) of the Securities and Exchange Act of 1934, as amended (hereafter Public Transaction); and

**2.**    provides to the Insurer all information requested by the Insurer with respect to the Public Transaction;

the Insurer shall provide to the **Company** as soon as practicable a quotation for coverage under the Insurer's Public Company Directors and Officers Insurance Policy, provided such coverage if purchased shall be subject to such terms, conditions, limits, retentions and premium as the Insurer may require in

its sole discretion. This Subsection II.A shall not impact the Insurer's ability to cancel or non-renew this policy as provided in Section X of the General Terms and Conditions.

**B.    OUTSIDE POSITION COVERAGE**

Subject to the other terms and conditions applicable to this Coverage Part, Insuring Agreement A and Insuring Agreement B include coverage for **Insured Persons** while serving in an **Outside Position**. Such coverage shall be specifically excess of any indemnification and insurance available from or provided by the **Outside Entity** in which the **Insured Person** serves in the **Outside Position**. Payment by the Insurer or any affiliate of the Insurer under another policy as a result of a **Claim** against an **Insured Person** in an **Outside Position** shall reduce, by the amount of such payment, the Insurer's Limit of Liability under this policy with respect to such **Claim**.

**SECTION III – DEFINITIONS**

When used in this Coverage Part, the following terms are defined as follows:

**A.    Claim** means:

**1.**    a written demand against any **Insured** for monetary damages or non-monetary relief, including a written demand that the **Insured** toll or waive a statute of limitations, commenced by such **Insured's** receipt of such written demand;

**2.**    a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading upon such **Insured**;

**3.**    a criminal proceeding against any **Insured** commenced by such **Insured's** receipt of an indictment, information or similar document;

**4.**    an administrative or regulatory proceeding against any **Insured** commenced by such **Insured's** receipt of a notice of charges or similar document;

**5.**    a civil, criminal, administrative or regulatory investigation of any **Insured Person** commenced by the service upon or other receipt by the **Insured Person** of a target letter or other written notice from the investigating authority identifying by name the **Insured Person** as an individual against whom a proceeding may be commenced;

**6.**    an official request for the **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition**, commenced by such **Insured's** receipt of such request or warrant; or

**7.**    an arbitration, mediation or other alternative dispute resolution proceeding against any **Insured** commenced by such **Insured's** receipt of a demand for such a proceeding;

for a **Wrongful Act**, including any appeal therefrom.

Solely with respect to Insuring Agreement A, **Claim** also means any request, demand or subpoena by a regulatory, administrative, governmental or similar authority to interview or depose an **Insured Person**, or to produce documents by an **Insured Person**, in his or her capacity as such.

Solely with respect to Insuring Agreement D, **Claim** only means a **Securityholder Derivative Demand**.

**B.    Financial Institution** means any entity that provides financial or insurance services for or sells financial or insurance products to its clients, customers or members, including without limitation a bank, trust company, credit union, investment company, insurance company, securities broker/dealer, insurance broker/agent and any other entity whose business involves holding, investing, lending or dealing in money, securities or other financial or insurance products.

**C.    Insured Person**, whether in the singular or plural, means:

**1.**    any natural person who was, now is or shall during the **Policy Period** become a duly elected or appointed director, trustee, governor, **Manager**, officer, advisory director, or member of a duly constituted committee or board of the **Company** or their functional equivalent;

**2.**    any natural person not described in subsection 1 above who was, now is or shall during the **Policy Period** become an **Employee** of the **Company**; and

**3.**    any natural person described in subsection 1 above while serving in an **Outside Position**;

provided that an **Employee** described in subsection 2 above shall not be considered an **Insured Person** for purposes of Subsection II.B, Outside Position Coverage, of this Coverage Part and Exclusions C or D in Section IV of this Coverage Part.

D.     **Insured**, whether in the singular or plural, means the **Insured Persons** and, solely with respect to Insuring Agreement B, Insuring Agreement C and Insuring Agreement D, the **Company**.

E.     **Investigative Costs** means reasonable and necessary fees (including attorney's fees and expert's fees) and expenses (other than wages, salaries, fees or benefits of the directors, officers or employees of the **Company**) incurred by the **Company** (including its Board of Directors or any committee of its Board of Directors) in investigating or evaluating on behalf of the **Company** whether it is in the best interest of the **Company** to prosecute the allegations in a **Securityholder Derivative Demand**.

F.     **Loss** means the total amount the **Insured** becomes legally obligated to pay on account of covered **Claims** made against them, including, but not limited to, damages (including punitive, exemplary or multiple damages), judgments, any award of pre-judgment and post-judgment interest with respect to covered damages, settlements, **Claim Expenses** and civil money penalties assessed against an **Insured** (i) pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. §78dd-2(g)(2)(B), or (ii) for a violation of any federal, state, local or foreign law if such violation is not knowing or willful.

The insurability of such punitive, exemplary or multiple damages and civil money penalties shall be determined under the internal laws of any applicable jurisdiction most favorable to the **Insured**, including without limitation the jurisdiction in which the **Company**, the **Insured Person**, the Insurer, this policy or such **Claim** is located.

Solely with respect to Insuring Agreement D, **Loss** only means **Investigative Costs**.

**Loss** does not include any of the following, provided this does not exclude **Claim Expenses** with respect to any of the following:

1.     any amount not indemnified by the **Company** for which the **Insureds** are absolved from payment by reason of any covenant, agreement or court order;

2.     taxes, sanctions, fines or penalties imposed by law, other than civil money penalties expressly referenced above;

3.     any amount incurred by the **Company** that represents or is substantially equivalent to an increase in the consideration paid or proposed to be paid by a **Company** in connection with its purchase of any securities or assets;

4.     any amount incurred by the **Company** to comply with any injunctive or other non-monetary relief or any agreement to provide such relief;

5.     any disgorgement or restitution of ill-gotten gain or rescissionary damages; or

6.     matters uninsurable under the law pursuant to which this policy is construed.

G.     **Outside Entity** means:

1.     any organization chartered and operated as a not-for-profit organization;

2.     any for-profit organization in which the **Company** owns an equity interest, provided such organization is neither a **Financial Institution** nor an organization whose securities are publicly owned or traded; or

3.     any other organization specifically included as an **Outside Entity** by endorsement to this policy; provided such organization is not included in the definition of **Company**.

H.     **Outside Position** means the position of director, officer, manager, trustee, governor or other equivalent executive position in an **Outside Entity** held by an **Insured Person**, if service in such position is with the knowledge and consent of, at the direction or request of, or part of the duties regularly assigned to the **Insured Person** by the **Company**.

I.     **Personal Injury** means false arrest, wrongful detention or imprisonment, malicious prosecution, defamation including libel and slander, invasion of privacy or wrongful entry or eviction.

J.     **Securityholder Derivative Demand** means receipt by the **Insured** of:

1.    any written demand, by a securityholder of a **Company**, upon the Board of Directors or Board of Managers of such **Company**, to bring a civil proceeding in a court of law against an **Insured Person** for a **Wrongful Act**; or

2.    any lawsuit by a securityholder of a **Company**, brought derivatively on behalf of such **Company**, against an **Insured Person** for a **Wrongful Act** without first making a demand as described in subparagraph 1 above.

**K.**    **Wrongful Act** means:

1.    any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty by any **Insured Person** in their capacity as such or in an **Outside Position**, or with respect to Insuring Agreement C, by the **Company**; or

2.    any matter claimed against any **Insured Person** solely by reason of their serving in such capacity or in an **Outside Position**.

## SECTION IV – EXCLUSIONS

The Insurer shall not be liable under this Coverage Part to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured**:

**A.**    based upon, arising out of, or in any way involving any fact, circumstance or **Wrongful Act** which have been the subject of any written notice given prior to inception of this policy under any prior directors and officers liability or comparable insurance policy or coverage part;

**B.**    based upon, arising out of, or in any way involving any **Claim** against any **Insured** which was pending on or existed prior to the respective Pending or Prior Date stated in the Coverage Schedule in Item 5 of the Declarations, or the same or substantially the same fact, circumstance or **Wrongful Act** alleged or underlying such prior **Claim**;

**C.**    brought or maintained by or on behalf of the **Company** or any **Insured Person** in any capacity, provided this exclusion shall not apply to:

1.    a **Claim** that is a derivative action brought or maintained on behalf of the **Company** by one or more persons who are not **Insured Persons** if the **Claim** is brought and maintained without the solicitation or active assistance or participation of the **Company** or any **Insured Person** or if the only such solicitation, assistance or participation by the **Company** and **Insured Persons** is (i) solely pursuant to, or in compliance with, a subpoena or similar legal process, or (ii) protected pursuant to any whistleblower statute;

2.    a **Claim** brought or maintained by any **Insured Person** for contribution or indemnity, if the **Claim** directly results from another **Claim** covered under this Coverage Part;

3.    a **Claim** brought by an **Insured Person** who has not served as an **Insured Person** for at least two (2) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without the solicitation or active assistance or participation of the **Company** or any other **Insured Person** who is serving or has served as an **Insured Person** within such two (2) year period;

4.    a **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver, similar official or creditors committee for such **Company**, or any assignee of such trustee, examiner, receiver, or similar official or creditors committee; or

5.    a **Claim** by or on behalf of the **Company** brought and maintained in any non-common law jurisdiction outside the United States;

**D.**    for a **Wrongful Act** by an **Insured Person** in an **Outside Position** if such **Claim** is brought or maintained by or on behalf of the **Outside Entity** in which the **Insured Person** serves, or by or on behalf of any past, present or future director, officer, manager, governor or trustee of such entity, provided this exclusion shall not apply to:

1.    a **Claim** that is a derivative action brought or maintained on behalf of such **Outside Entity** by one or more persons who are not directors, officers, managers or trustees of the **Outside Entity** if the **Claim** is brought and maintained without the solicitation or active assistance or participation of the **Company**, any **Insured Person**, the **Outside Entity** or any director, officer, manager or trustee of the **Outside Entity** or if the only such solicitation, assistance or participation by the **Company**, any **Insured Person**, the **Outside Entity** or any director, officer,

manager or trustee of the **Outside Entity** is **(i)** solely pursuant to or in compliance with a subpoena or similar legal process, or **(ii)** protected pursuant to any whistleblower statute;

2. a **Claim** for an employment-related **Wrongful Act** brought or maintained by a director, officer, manager, governor or trustee of such **Outside Entity**;

3. a **Claim** brought by a director, officer, manager, governor or trustee of such **Outside Entity** who has not served as such for at least two (2) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without the solicitation by, or active assistance or participation of, such **Outside Entity** or any other director, officer, manager, governor or trustee of such **Outside Entity** who is serving or has served as such within such two (2) year period;

4. a **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver, similar official or creditors committee for such **Outside Entity**, or any assignee of such trustee, examiner, receiver, similar official or creditors committee; or

5. a **Claim** by or on behalf of the **Outside Entity** brought and maintained in any non-common law jurisdiction outside the United States;

E.   for an actual or alleged violation of the responsibilities, obligations or duties imposed by Employee Retirement Income Security Act of 1974, as amended, or similar provisions of any federal, state or local statutory law or common law with respect to any pension, profit sharing, health and welfare or other employee benefit plan or trust established or maintained for the purpose of providing benefits to employees of the **Company**;

F.   for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof; provided this exclusion shall not apply to any allegations of mental anguish or emotional distress in a **Claim** against **Insured Persons** for **Personal Injury**;

G.   based upon, arising out of or in any way involving:

1. the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** at any time; or

2. any request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **Pollutants**;

provided this exclusion shall not apply to **Non-Indemnifiable Loss**;

H.   based upon, arising out of or in any way involving any **Wrongful Act** committed by any **Insured Person** serving in any position or capacity in any entity, other than the **Company** or **Outside Entity**, even if the **Company** directed or requested the **Insured Person** to serve in such other position or capacity;

I.   based upon, arising out of or in any way involving any deliberately fraudulent act or omission or any willful violation of any statute or regulation committed by such **Insured**, if a final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such a deliberately fraudulent act or omission or willful violation;

J.   based upon, arising out of or in any way involving such **Insured Person** gaining any profit, remuneration or financial advantage to which such **Insured** was not legally entitled, if **(i)** a final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such **Insured** in fact gained any such profit, remuneration or advantage, or **(ii)** such **Insured** agrees to repay to the **Company** such profit, remuneration or financial advantage;

K.   based upon, arising out of or in any way involving **(i)** the actual, alleged or attempted purchase or sale, or offer or solicitation of an offer to purchase or sell, any debt or equity securities, or **(ii)** the actual or alleged violation of any federal, state, local or common or foreign law relating to debt or equity securities; provided this exclusion shall not apply to any **Claim**:

1. based upon, arising out of or in any way involving the purchase or sale, or offer or solicitation of an offer to purchase or sell, any debt or equity securities in a private-placement transaction exempt from registration under the Securities Act of 1933, as amended;

2. based upon, arising out of or in any way involving the failure of the **Company** to undertake or successfully complete a public offering of securities, including any "roadshow" disclosures or other activities in connection with such an unsuccessful public offering; or

3. if prior to such purchase or sale, or offer or solicitation of an offer to purchase or sell, securities (i) the Insurer agrees in writing to delete this exclusion with respect to such purchase, sale, offer or solicitation, and **(ii)** the **Company** pays any additional premium and agrees to any additional terms and conditions reasonably required by the Insurer for such deletion;

L. solely with respect to Insuring Agreement C:

1. for any actual or alleged liability of the **Company** under any written or express contract or agreement, except to the extent that the **Company** would have been liable in the absence of such contract or agreement;

2. for **Personal Injury**;

3. for taxes;

4. for the rendering of or failure to render professional services; provided this exclusion shall not apply to any **Claim** by one or more shareholders of the **Company** in their capacity as such;

5. based upon, arising out of or in any way involving any actual or alleged infringement of copyright, patent, trademark, trade name, trade dress or service mark, or the actual or alleged misappropriation of ideas or trade secrets or the unauthorized disclosure of or access to confidential information; provided this exclusion shall not apply to any **Claim** by one or more shareholders of the **Company** in their capacity as such; or

6. based upon, arising out of or in any way involving the actual or alleged malfunction, defect or failure of any goods or products manufactured, distributed, sold, installed, marketed, developed or processed by the **Company**; provided this exclusion shall not apply to any **Claim** by one or more shareholders of the **Company** in their capacity as such; or

M. which constitutes an **Employment Practices Claim** or **Third Party Discrimination Claim**.

For the purpose of determining the applicability of any Exclusion set forth in this Section IV, the **Wrongful Act** or knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**, and under Insuring Agreement C only the **Wrongful Act** or knowledge of an **Executive Officer** of a **Company** shall be imputed to such **Company** and its **Subsidiaries**.



# MARKEL AMERICAN INSURANCE COMPANY

## EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART

### TABLE OF CONTENTS

SECTION I – INSURING AGREEMENTS ..................................................................................................... 2

A.    EMPLOYMENT PRACTICES LIABILITY COVERAGE .......................................................... 2

B.    THIRD PARTY DISCRIMINATION LIABILITY COVERAGE .................................................. 2

SECTION II – DEFINITIONS ...................................................................................................................... 2

SECTION III – EXCLUSIONS ..................................................................................................................... 3

SECTION IV – WAGE AND HOUR CLAIM SUBLIMIT ................................................................................. 5

# MARKEL AMERICAN INSURANCE COMPANY

## EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART

**SECTION I – INSURING AGREEMENTS**

**A.     EMPLOYMENT PRACTICES LIABILITY COVERAGE**

The Insurer shall pay on behalf of the **Insureds** all **Loss** for which the **Insureds** become legally obligated to pay on account of any **Employment Practices Claim** first made against the **Insureds** during the **Policy Period** or during the **Extended Reporting Period**, if exercised, for a **Wrongful Employment Practice** taking place before or during the **Policy Period**.

**B.     THIRD PARTY DISCRIMINATION LIABILITY COVERAGE**

The Insurer shall pay on behalf of the **Insureds** all **Loss** for which the **Insureds** become legally obligated to pay on account of any **Third Party Discrimination Claim** first made against the **Insureds** during the **Policy Period** or during the **Extended Reporting Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**.

**SECTION II – DEFINITIONS**

When used in this Coverage Part, the following terms are defined as follows:

**A.     Claim**, for purposes of the definitions of **Employment Practices Claim** and **Third Party Discrimination Claim** in the General Terms and Conditions, means:

1.     a written demand against any **Insured** for monetary damages or non-monetary relief, including a written demand that the **Insured** toll or waive a statute of limitations, commenced by such **Insured's** receipt of such written demand;

2.     a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading upon such **Insured**;

3.     an administrative or regulatory proceeding against any **Insured**, including a proceeding before the Equal Employment Opportunity Commission or a similar state or local governmental body, commenced by such **Insured's** receipt of a notice of charges or similar document;

4.     a civil, administrative or regulatory investigation of any **Insured** commenced by the service upon or other receipt by the **Insured** of a target letter or other written notice from the investigating authority identifying by name the **Insured** as an individual or entity against whom a proceeding may be commenced;

5.     an arbitration, mediation or other alternative dispute resolution proceeding against any **Insured**, commenced by such **Insured's** receipt of a demand for such a proceeding;

for a **Wrongful Act**, including any appeal therefrom; provided **Claim** does not include a labor or grievance proceeding pursuant to a collective bargaining agreement.

**B.     Independent Contractor** means any natural person who is not an **Employee** and who is working for a **Company** in the capacity of an independent contractor pursuant to an express contract or agreement with the **Company** which governs the nature of such person's engagement.

**C.     Insured Persons**, whether in the singular or plural, means:

1.     any natural person who was, now is or shall during the **Policy Period** become a duly elected or appointed director, trustee, governor, **Manager**, officer, **Employee** (including employed lawyers

MML1002 05 10                                                                                         **Page 2 of 5**

solely in their capacity as an **Employee**), advisory director, or member of a duly constituted committee or board of the **Company**, or their functional equivalent;

    **2.**    any **Independent Contractor**, but only if the **Company** agrees in writing within thirty (30) days after the **Claim** is made to provide indemnification to such **Independent Contractor** for any **Loss** arising out of such **Claim**; provided any coverage under this Coverage Part for any such **Independent Contractor** shall be specifically excess of any indemnification or insurance otherwise available to such **Independent Contractor** from any other source.

**D.**    **Insureds**, whether in the singular or plural, means the **Insured Persons** and the **Company**.

**E.**    **Loss** means the total amount the **Insureds** become legally obligated to pay on account of covered **Claims** made against them, including, but not limited to, damages (including back pay, front pay and punitive, exemplary or multiple damages), judgments, any award of pre-judgment and post-judgment interest with respect to covered damages, settlements, **Claim Expenses**, prevailing plaintiff attorney's fees awarded pursuant to Section 1988 of the Civil Rights Act, and liquidated damages awarded under the Age Discrimination in Employment Act, the Equal Pay Act or the Family Medical Leave Act.

The insurability of such punitive, exemplary, liquidated and multiple damages or attorneys' fees shall be determined under the internal laws of any applicable jurisdiction most favorable to the **Insureds**, including without limitation the jurisdiction in which the **Company**, the **Insured Persons**, the Insurer, this policy or such **Claim** is located.

**Loss** does not include any of the following, provided this does not exclude **Claim Expenses** with respect to any of the following:

    **1.**    any amount not indemnified by the **Company** for which the **Insureds** are absolved from payment by reason of any covenant, agreement or court order;

    **2.**    taxes, sanctions, fines or penalties imposed by law; or

    **3.**    matters uninsurable under the law pursuant to which this policy is construed.

**F.**    **Wage and Hour Claim** means an **Employment Practices Claim** to the extent such **Claim** is for an actual or alleged violation of the Fair Labor Standards Act (except the Equal Pay Act) or any other law concerning wage and hour practices, including but not limited to any **Claim** for off-the-clock work, failure to provide rest or meal periods, failure to reimburse expenses, improper classification of employees as exempt or non-exempt, failure to timely pay wages, conversions, unjust enrichment, or unfair business practices.

**G.**    **Wrongful Act** means:

    **1.**    with respect to Insuring Agreement A, any **Wrongful Employment Practice**; and

    **2.**    with respect to Insuring Agreement B, (i) any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty by any of the **Insured Persons** in their capacity as such, or by the **Company**; or (ii) any matter claimed against the **Insured Persons** solely by reason of their serving in such capacity.

## SECTION III – EXCLUSIONS

The Insurer shall not be liable under this Coverage Part to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured**:

**A.**    based upon, arising out of, or in any way involving any fact, circumstance or **Wrongful Acts** which have been the subject of any written notice given prior to inception of this policy under any prior employment practices liability or comparable insurance policy or coverage part;

**B.**    based upon, arising out of, or in any way involving any **Claim** against any **Insured** which was pending on or existed prior to the respective Pending or Prior Date stated in the Coverage Schedule in Item 5 of the Declarations, or the same or substantially the same fact, circumstance or **Wrongful Act** alleged or underlying such prior **Claim**;

**C.**    for an actual or alleged violation of the responsibilities, obligations or duties imposed by:

    **1.**    any law governing workers' compensation, unemployment insurance, social security, disability benefits or similar law, including without limitation the United States Longshoreman's and Harbor Workers' Compensation Act, the Jones Act or the Federal Employers' Liability Act,

2.  the Employee Retirement Income Security Act of 1974, as amended, except Section 510 thereof,

3.  the National Labor Relations Act,

4.  the Worker Adjustment and Retraining Notification Act,

5.  the Consolidated Omnibus Budget Reconciliation Act of 1985,

6.  the Occupational Safety and Health Act,

7.  the Racketeer Influenced and Corrupt Organizations Act,

8.  the Federal False Claims Act, or

9.  rules or regulations promulgated under any of such statutes or laws, amendments to such statutes or laws or similar provisions of any other federal, state, local or foreign statutory law or common law;

but this exclusion shall not apply to any **Claim** for any actual or alleged retaliatory treatment of the claimant by the **Insured** on account of the claimant's exercise of rights pursuant to any such law, rule or regulation or for any other actual or alleged violation of any whistleblower statute or law;

D.  for bodily injury, sickness, disease or death of any person or damage to or destruction of any tangible or intangible property including loss of use thereof; provided this exclusion shall not apply to any **Claim** for emotional distress, mental anguish or humiliation;

E.  based upon, arising out of, or in any way involving any actual or alleged breach of any contract or agreement, provided such contract or agreement specifies the terms of the **Company's** engagement of an **Independent Contractor**;

F.  based upon, arising out of, or in any way involving any deliberately fraudulent or deliberately criminal act or omission committed by such **Insured**, if a final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such a deliberately fraudulent or criminal act or omission;

G.  based upon, arising out of, or in any way involving such **Insured** gaining any profit, remuneration or financial advantage to which such **Insured** was not legally entitled, if a final and non-appealable adjudication adverse to such **Insured** in any proceeding not brought by the Insurer establishes such **Insured** in fact gained any such profit, remuneration or advantage;

H.  based upon, arising out of, or in any way involving the employment reinstatement or continued employment of the claimant by the **Company** or, if the **Company** has the option pursuant to an adjudication or settlement to reinstate the claimant as an **Employee** but fails to do so, any **Loss** constituting front pay, future damages or other future economic relief or the equivalent thereof with respect to such claimant; or

I.  if such **Loss** constitutes:

1.  any amount incurred by the **Insureds** to comply with any injunctive or other non-monetary relief or any agreement to provide such relief, including without limitation any costs associated with providing any reasonable accommodations required by, made as a result of, or to conform with the requirements of, the Americans with Disabilities Act and any amendments thereto or any similar federal, state, local or foreign statute, regulation, or common laws;

2.  compensation earned by the claimant in the course of employment but not paid by the **Company**, including any unpaid salary, bonus, hourly pay, overtime pay, severance pay, retirement benefits, vacation days, sick days, prerequisites, stock options or similar rights; provided this exclusion shall not apply to any back pay or front pay or any additional compensation allegedly due as a result of alleged discrimination or wrongful dismissal, wrongful discharge or wrongful termination of employment;

3.  amounts owing under or assumed by the **Insured** pursuant to a written or other express contract or agreement with or written severance obligation of the **Company**; but this exclusion shall not apply (i) if and to the extent that liability would have attached to the **Insureds** in the absence of the written contract with or obligation of the **Company**, or (ii) to the **Insured's** contractual liability to indemnify an employment agency or employee leasing company for the

**Wrongful Acts** of **Insureds** which injure or harm temporary or leased employees of such agency or company; or

4.    medical, insurance or other benefits or securities of the **Company** (or the equivalent value thereof) to which the claimant allegedly was entitled, including without limitation benefits to which the claimant would have been entitled had the **Company** provided the claimant with a continuation or conversion of insurance;

provided this exclusion shall not apply to **Claim Expenses.**

For the purpose of determining the applicability of any Exclusion set forth in this Section **III**, the **Wrongful Act** or knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**, and only the **Wrongful Act** or knowledge of an **Executive Officer** of a **Company** shall be imputed to such **Company** and its **Subsidiaries.**

## SECTION IV – WAGE AND HOUR CLAIM SUBLIMIT

The Insurer's maximum aggregate liability under this Coverage Part for all covered **Loss** on account of all **Wage and Hour Claims** shall be the respective Sublimit amount stated in the Coverage Schedule in Item 5 of the Declarations. Such Sublimit shall be part of and not in addition to the Combined Aggregate Limit of Liability as stated in Item 7 of the Declarations and the Aggregate Limit of Liability for this Coverage Part.



**MANAGEMENT LIABILITY**
POLICY NUMBER: ML817361

# MARKEL AMERICAN INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY CHANGES

THIS ENDORSEMENT FORMS A PART OF THE POLICY NUMBERED BELOW:

Policy Change
Number A

| POLICY NUMBER<br>ML817361 | POLICY CHANGES EFFECTIVE<br>03/18/2015 | INSURER<br>MARKEL AMERICAN INSURANCE COMPANY |
|---|---|---|
| PARENT COMPANY OR ORGANIZATION<br>UNITED TALENT AGENCY HOLDINGS, INC. | | PRODUCER NAME AND ADDRESS<br>AmWINS Brokerage<br>601 S. Figueroa Street, Suite 4350<br>Los Angeles, CA  90017 |

| THIS ENDORSEMENT MODIFIES INSURANCE UNDER THE FOLLOWING: |
|---|
| Directors and Officers and Company Liability Coverage Part |
| Employment Practices and Third Party Discrimination Liability Coverage Part |
| CHANGES |

It is understood and agreed that the General Terms and Conditions and Coverage Parts, if purchased, are modified as stated below.
A. GENERAL TERMS AND CONDITIONS
1.    SECTION IV – DEFENSE, SETTLEMENT AND COOPERATION A. 4. c. is deleted and replaced as follows:
c.    The following apply to the Coverage Parts referenced, but only if such Coverage Part is purchased and attached to this policy:
     One hundred percent (100%) of all covered Loss for the DIRECTORS AND OFFICERS AND COMPANY LIABILITY COVERAGE PART;
     Eighty percent (80%) of all covered Loss for the EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART; and
One hundred percent (100%) of all covered Loss for the FIDUCIARY LIABILITY COVERAGE PART.
2.    SECTION V – REPORTING AND NOTICE A. 1. is deleted and replaced as follows:
1.    As a condition precedent to their rights under such Coverage Part, the Insureds shall give to the Insurer written notice of any Claim made against the Insureds as soon as practicable after any Chief Operating Officer, Chief Financial Officer first learns of such Claim, but in no event later than (i) ninety (90) days after expiration of the Policy Period, or (ii) the expiration of the Extended Reporting Period, if exercised.
3.    Paragraph two of SECTION VI – COVERAGE EXTENSIONS B. is deleted and replaced as follows:
This right of extension shall lapse unless written notice of such election, together with payment of the additional premium due, is given by the Insureds to the Insurer within ninety (90) days following the effective date of cancellation or nonrenewal. If such written request and payment of additional premium are not received by the Insurer within such ninety (90) days, there shall be no right to purchase the Extended Reporting Period at a later date.
4.    SECTION VIII – CHANGES IN EXPOSURE A.2. is deleted and replaced as follows:
2.    If: (i) such newly acquired organization has issued any publicly-owned debt or equity securities; (ii) the total assets of such newly acquired organization exceeds thirty percent (30%) of the total assets of the Parent Company as reflected in their respective most recent audited consolidated financial statements; (iii) solely with respect to the Employment Practices and Third Party Discrimination Liability Coverage Part, if purchased, the total number of Employees of all Companies increases by more than thirty percent (30%) as an immediate result of such acquisition, merger or consolidation; or (iv) solely with respect to the Fiduciary Liability Coverage Part, if purchased, the total assets of all Plans of such newly acquired organization exceeds thirty percent (30%) of the total assets of all other

All other terms and conditions remain the same.

**MML 1201 01 11**

**Page 1 of 3**

Plans of all Companies as reflected in their respective most recent financial statements, then coverage under such Coverage Part as provided in subsection 1 above shall terminate as of the earlier of (i) the end of the Policy Period or the Extended Reporting Period if exercised, or (ii) ninety (90) days after such acquisition, merger or consolidation.

5.   SECTION IX – REPRESENTATIONS, SEVERABILITY AND NON-RESCINDABLE COVERAGES B. and C. are deleted and replaced as follows:

B.   SEVERABILITY

The Application shall be construed as a separate application for coverage by each of the Insureds. If with respect to any Coverage Part the Application contains any material misrepresentation or omission, then such Coverage Part shall be void ab initio as to:

1.   any Company to the extent such Company indemnifies an Insured Person who knew the facts that were not truthfully disclosed in the Application; and

2.   any Company and its Subsidiaries and Plan(s) if any Chief Executive Officer or Chief Financial Officer of such Company knew the facts that were not truthfully disclosed in the Application;

whether or not any Chief Executive Officer, Chief Financial Officer or Insured Person knew the Application contained such misrepresentation or omission. No knowledge of one Insured Person shall be imputed to any other Insured Person for purposes of this Section IX.

C.   NON-RESCINDABLE COVERAGES

The Insurer shall not have the right to rescind or void, in whole or in part, the coverage provided under any Coverage Part for any Loss incurred by any Insured.

6.   If there is an inconsistency between a state amendatory endorsement attached to this insurance and any other term or condition of this insurance, then to the extent permitted by law the Insurer shall apply whichever of such conflicting terms or conditions are more favorable to the Insureds.

B.   The following apply to the DIRECTORS AND OFFICERS AND COMPANY LIABILITY COVERAGE PART, but only if such Coverage Part is purchased and attached to this policy:

1.   The last sentence of SECTION IV – EXCLUSIONS is deleted and replaced as follows:

    For the purpose of determining the applicability of any Exclusion set forth in this Section IV, the Wrongful Act or knowledge of any Insured Person shall not be imputed to any other Insured Person, and only the Wrongful Act or knowledge of any Chief Executive Officer, Chief Financial Officer or General Counsel of a Company shall be imputed to such Company and its Subsidiaries.

2.   An additional Non-Indemnifiable Loss Aggregate Limit of Liability of $1,000,000 shall apply to any covered Non-Indemnifiable Loss which would be paid except for the exhaustion of the total of all available Limits of Liability, including any applicable Sublimits, under the above-referenced Coverage Part. This Additional Non-Indemnifiable Loss Aggregate is the most the Insurer will pay in any one Policy Period regardless of the number of Claims made. In no event will this additional limit apply until the entire policy's Combined Aggregate Limit of Liability is exhausted.

C.   The following apply to the EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART, but only if such Coverage Part is purchased and attached to this policy:

1.   The exclusion for fines or penalties imposed by law as set forth in the definition of Loss in the above-referenced Coverage Part shall not apply to any fine or penalty assessed against an Insured for violation of the Immigration Reform and Control Act, as amended ("IRCA"), if such violation is not knowing or willful.

The Insurer's maximum aggregate liability under the above-referenced Coverage Part for all fines or penalties described above and for all other Loss on account of any Claim for an actual or alleged violation of IRCA, combined, shall be $50,000, which further limits and does not increase the Insurer's maximum liability under this policy.

2.   The last sentence of SECTION III – EXCLUSIONS is deleted and replaced as follows:

For the purpose of determining the applicability of any Exclusion set forth in this Section III, the Wrongful Act or knowledge of any Insured Person shall not be imputed to any other Insured Person, and only the Wrongful Act or knowledge of any Chief Executive Officer, Chief Financial Officer or General Counsel of a Company shall be imputed to such Company and its Subsidiaries.

D.   The following apply to the FIDUCIARY LIABILITY COVERAGE PART, but only if such Coverage Part is purchased and attached to this policy:

1.   The last sentence of SECTION III – EXCLUSIONS is deleted and replaced as follows:

For the purpose of determining the applicability of any Exclusion set forth in this Section III, the Wrongful Act or knowledge of any Insured Person shall not be imputed to any other Insured Person, and only the Wrongful Act or knowledge of any Chief Executive Officer, Chief Financial Officer or General Counsel (i) of a Company shall be imputed to such Company and its Subsidiaries, and (ii) of a Plan shall be imputed to such Plan.

All other terms and conditions remain the same.

**MANAGEMENT LIABILITY**

The above amendments result in a change in premium as follows:

| [X] | NO CHANGES | ADDITIONAL PREMIUM | RETURN PREMIUM |
|-----|------------|--------------------|----------------|
|     |            | $ | $ |

_____

AUTHORIZED REPRESENTATIVE

All other terms and conditions remain the same.

**MML 1201 01 11**                                                            **Page 3 of 3**



**MANAGEMENT LIABILITY**
POLICY NUMBER: ML817361

# MARKEL AMERICAN INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

THIS ENDORSEMENT FORMS A PART OF THE POLICY NUMBERED BELOW:

Policy Change
Number B

| POLICY NUMBER ML817361 | POLICY CHANGES EFFECTIVE 03/18/2015 | INSURER MARKEL AMERICAN INSURANCE COMPANY |
|---|---|---|
| PARENT COMPANY OR ORGANIZATION UNITED TALENT AGENCY HOLDINGS, INC. | | PRODUCER NAME AND ADDRESS AmWINS Brokerage 601 S. Figueroa Street, Suite 4350 Los Angeles, CA   90017 |

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING BUT ONLY IF SUCH COVERAGE PART IS PURCHASED AND ATTACHED TO THIS POLICY:

GENERAL TERMS AND CONDITIONS
DIRECTORS AND OFFICERS LIABILITY COVERAGE PART
EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART
FIDUCIARY LIABILITY COVERAGE PART

CHANGES

**CONSUMER PROTECTION EXCLUSION**

It is understood and agreed that the General Terms and Conditions and Coverage Parts, if purchased, are modified as stated below.

**Section XVIII – EXCLUSIONS** is added to **GENERAL TERMS AND CONDITIONS** as follows:

**SECTION XVIII – EXCLUSIONS**

The Insurer shall not be liable under any purchased Coverage Part to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured**:

based upon, arising out of, or in any way involving any **Wrongful Act** or **Interrelated Wrongful Acts** that violate(s) or is(are) alleged to violate any federal or state consumer protection statute, law, rule, ordinance or regulation including, but not limited to:

(1) The Telephone Consumer Protection Act of 1991 (TCPA), any amendment thereto or any similar or related federal or state statute, law, rule, ordinance or regulation;

(2) The CAN-SPAM Act of 2003, any amendment thereof or any similar or related federal or state statute, law, rule, ordinance or regulation;

(3) Any federal, state or local statute, law, rule, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003 and their amendments and additions, that addresses, prohibits, or limits the printing, interception, dissemination, disposal, collecting, recording, sending, transmitting, communicating, distribution or receiving of private material, private communications or private information.

MML 1201 01 11

Page 1 of 2

**MANAGEMENT LIABILITY**

| The above amendments result in a change in premium as follows: | | |
|---|---|---|
| [X]  NO CHANGES | ADDITIONAL PREMIUM | RETURN PREMIUM |
| | $none | none |

_____
AUTHORIZED REPRESENTATIVE

All other terms and conditions remain unchanged.

MML 1201 01 11



**MANAGEMENT LIABILITY**
POLICY NUMBER: ML817361

## MARKEL AMERICAN INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## POLICY CHANGES

THIS ENDORSEMENT FORMS A PART OF THE POLICY NUMBERED BELOW:

Policy Change
Number C

| POLICY NUMBER<br>ML817361 | POLICY CHANGES EFFECTIVE<br>03/18/2015 | INSURER<br>MARKEL AMERICAN INSURANCE COMPANY |
|---|---|---|
| PARENT COMPANY OR ORGANIZATION<br>UNITED TALENT AGENCY HOLDINGS, INC. | | PRODUCER NAME AND ADDRESS<br>AmWINS Brokerage<br>601 S. Figueroa Street, Suite 4350<br>Los Angeles, CA  90017 |

This endorsement modifies insurance provided under the following but only if such Coverage Part is purchased and attached to this policy:
GENERAL TERMS AND CONDITIONS
DIRECTORS AND OFFICERS LIABILITY COVERAGE PART
EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART
FIDUCIARY LIABILITY COVERAGE PART

CHANGES

**FLSA Wage and Hour Exclusion**

It is understood and agreed that the General Terms and Conditions and Coverage Parts, if purchased, are modified as stated below:

**A.  GENERAL TERMS AND CONDITIONS**

    **1.  SECTION XVIII – EXCLUSIONS** is added as follows:

        The Insurer shall not be liable under any purchased Coverage Part to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured**:

        based upon, arising out of, or in any way involving any **Wrongful Act** or **Interrelated Wrongful Acts** that violate(s) or is(are) alleged to violate the Fair Labor Standards Act, any amendment thereto or any similar or related federal or state statute, law, rule, ordinance or regulation or any other law concerning wage and hour practices including but not limited to any **Claim** for off-the-clock work, failure to provide rest or meal periods, failure to reimburse expenses, improper classification of employees as exempt or non-exempt, failure to timely pay wages, conversions, unjust enrichment, or unfair business practices whether or not associated with any **Claim** for any actual or alleged **Wrongful Employment Practice**;

        but this exclusion shall not apply to any **Claim** for any actual or alleged retaliatory treatment of the claimant by the **Insured** on account of the claimant's exercise of rights pursuant to the Fair Labor Standards Act, any amendment thereto or any similar or related federal or state statute, law, rule, ordinance or regulation or for any other actual or alleged violation of any whistleblower statute or law.

MANAGEMENT LIABILITY

**B.** The following applies to the **EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART**, but only if such Coverage Part is purchased and attached to this policy:

    **1.** **SECTION IV – Wage and Hour Claim Sublimit** is deleted.

The above amendments result in a change in premium as follows:

| [X] | NO CHANGES | ADDITIONAL PREMIUM | RETURN PREMIUM |
|-----|------------|--------------------|----------------|
|     |            | $None              | $None          |

AUTHORIZED REPRESENTATIVE

All other terms and conditions remain the same.

MML 1201 01 11



**MANAGEMENT LIABILITY**
POLICY NUMBER: ML817361

## MARKEL AMERICAN INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ANTITRUST ENDORSEMENT

This endorsement modifies insurance provided under the following:

DIRECTORS AND OFFICERS AND COMPANY LIABILITY COVERAGE PART
FIDUCIARY LIABILITY COVERAGE PART

It is agreed that solely with respect to coverage under the above-referenced Coverage Part(s) for any **Claim** based upon, arising out of or in any way involving:

1.  any actual or alleged price fixing, restraint of trade, monopolization or unfair trade practices; or

2.  any actual or alleged violation of the Federal Trade Commission Act, the Sherman Antitrust Act, the Clayton Act, or any other state, federal or local statutory provision involving antitrust, monopoly, price fixing, price discrimination, predatory pricing, unfair trade practices or restraint of trade activities, or any equivalent or similar foreign law, or any rules or regulations promulgated under or in connection with any such statute or law; or

3.  any actual or alleged breach of any common law concerning antitrust, monopoly, price fixing, price discrimination, predatory pricing, unfair trade practices or restraint of trade;

the following designated provisions are amended or added to this policy, provided any of the following provisions shall apply only if the provision is designated below by "X" as applicable.

Applicable
[  ]  **A.  Sublimit**

> The Insurer's maximum aggregate liability under the above-referenced Coverage Part(s) for all covered **Loss** on account of all **Claims** described above which are first made during the **Policy Period** and the **Extended Reporting Period**, if exercised, shall be the Sublimit Amount set forth below. This paragraph further limits and does not increase the Insurer's maximum liability under this policy.

> Sublimit Amount: $

[X]  **B.  Retention**

> Solely with respect to each **Claim** described above, the applicable Retention amount stated in the Coverage Schedule in Item 5 of the Declarations for the above-referenced Coverage Part(s) is amended to read as follows:

> Retention Amount: $ 250,000

[  ]  **C.  Coinsurance**

> Solely with respect to **Loss** (other than **Non-Indemnifiable Loss**) excess of the applicable Retention on account of any **Claims** described above, the **Company** shall bear uninsured at its own risk the percent of such **Loss** specified below as the Coinsurance Percent, and the Insurer's liability under the above-referenced Coverage Part(s) for such **Loss** shall apply only to the remaining percent of such **Loss**.

> Coinsurance Percent:          %

All other terms and conditions remain the same.

MML 1209 05 10

Page 1 of 1

MANAGEMENT LIABILITY

**MARKEL**

## MARKEL AMERICAN INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CERTIFIED ACTS OF TERRORISM COVERAGE

This endorsement modifies insurance provided under the following:

GENERAL TERMS AND CONDITIONS

It is agreed that the following is added:

**Certified Acts of Terrorism**

It is hereby understood and agreed that this policy includes coverage on account of any **Claim** for **Wrongful Acts** or **Wrongful Employment Practices** applicable to Coverage Part(s) of this policy resulting from any **Certified Act of Terrorism**.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The federal Terrorism Risk Insurance Act set forth the following criteria for a **Certified Act of Terrorism**:

1.  The act resulted in insured losses in excess of $5 million in the aggregate attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If the aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Calendar Year and the Insurer has met the Insurer's deductible under the Terrorism Risk Insurance Act, the Insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such cases insured losses up to that amount are subject to pro rata allocation in accordance with the procedures established by the Secretary of the Treasury.

The terms and limitations of any terrorism coverage provided therewith, or the inapplicability or omission of terrorism exclusion, do not serve to create coverage for any **Loss** which would otherwise be excluded under this policy or applicable Coverage Part(s).

All other terms and conditions remain unchanged.

MML 1223 01 15

Page 1 of 1



**MANAGEMENT LIABILITY**
POLICY NUMBER: ML817361

# MARKEL AMERICAN INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SPECIFIC MATTER EXCLUSION

This endorsement modifies all insurance provided under the following unless a check mark appears next to a specific Coverage Part, in which case the endorsement only modifies the indicated Coverage Part(s):

[X] DIRECTORS AND OFFICERS LIABILITY COVERAGE PART
[X] EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART
[  ] FIDUCIARY LIABILITY COVERAGE PART

### SCHEDULE

| |
|---|
| Specific Matter: Claire Henry matter filed on 3/12/2010 Crum&Forster Claim  No. NJU00460616 |

The Insurer shall not be liable under this insurance for **Loss** on account of any **Claim** based upon, arising from, or in consequence of any fact, circumstance or situation underlying or alleged in any **Specific Matter** or any substantially similar fact, circumstance or situation.

For purposes of this endorsement, **Specific Matter** means the matter shown in the Schedule above.

All other terms and conditions of this policy remain unchanged.

**MML 1316 01 11**

**Page 1 of 1**

MANAGEMENT LIABILITY

**MARKEL**®

## MARKEL AMERICAN INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION - BROAD PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

DIRECTORS AND OFFICERS AND ORGANIZATION LIABILITY COVERAGE PART
DIRECTORS AND OFFICERS AND COMPANY LIABILITY COVERAGE PART
EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART
FIDUCIARY LIABILITY COVERAGE PART

The following exclusion is added to the **EXCLUSIONS** Section:

The Insurer shall not be liable to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** based upon, arising out of, or in any way involving any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty in connection with the rendering or failure to render any professional services to others for a fee, commission or other compensation by any **Insured**.

This exclusion shall not apply to any **Loss** on account of any **Claim** against any **Insured Person** alleging failure to supervise the rendering or failure to render any professional services excluded above.

All other terms and conditions remain the same.

MML 1340 06 12

Page 1 of 1

MANAGEMENT LIABILITY

**MARKEL**®

# MARKEL AMERICAN INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CALIFORNIA AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

GENERAL TERMS AND CONDITIONS

Please refer to each Coverage Part to determine which terms are defined. Words shown in bold on this endorsement may or may not be defined in all Coverage Parts.

**I.    SECTION II - DEFINITIONS**

The definition of **Claims Expenses** is replaced by the following and applies to all coverage parts attached to this policy:

**Claim Expenses** means reasonable and necessary fees, costs and expenses incurred by:

1.    The Insurer, if duty to defend coverage has been purchased for the applicable Coverage Part;

2.    The **Insureds**, if duty to defend coverage has not been purchased for the applicable Coverage Part;

in the defense or appeal of that portion of any **Claim** for which coverage is afforded under this policy, including without limitation attorneys' and experts' fees, expenses incurred in the defense or appeal of a **Claim**, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Insurer to apply for or furnish any such bonds; provided, however, that **Claim Expenses** shall not include salary, wages, overhead, benefit expenses or charges of any kind associated with **Insured Persons** or the Insurer.

**II.    SECTION X - CANCELLATION AND NONRENEWAL** is replaced by the following:

**A.    CANCELLATION**

**1.    The Parent Company or Organization** may cancel this policy or any Coverage Part by mailing to the Insurer written notice stating when thereafter such cancellation shall be effective.

**2.    All Policies In Effect For Sixty (60) Days Or Less**

If this policy has been in effect for sixty (60) days or less, and is not a renewal of a policy the Insurer has previously issued, the Insurer may cancel this policy by mailing or delivering to the **Parent Company or Organization** at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.**    Ten (10) days before the effective date of cancellation if the Insurer cancels for:

**(1)**    Nonpayment of premium;

**(2)**    Discovery of fraud by:

**(a)**    Any **Insured** or his or her representative in obtaining this insurance; or

**(b)**    The **Insured's** representative in pursuing a **Claim** under this policy.

**b.**    Thirty (30) days before the effective date of cancellation if the Insurer cancels for any other reason.

**3.    All Policies In Effect For More Than Sixty (60) Days**

**a.**    If this policy has been in effect for more than sixty (60) days, or is a renewal of a policy the Insurer has issued, the Insurer may cancel this policy only upon the occurrence, after the effective date of the policy, for one or more of the following:

MML 1433-CA 01 11                                                                                          **Page 1 of 3**

MANAGEMENT LIABILITY

**(1)** Nonpayment of premium, including payment due on a prior policy the Insurer has issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

    **(a)** Any **Insured** or his or her representative in obtaining this insurance; or

    **(b)** The **Insured's** representative in pursuing a **Claim** under this policy.

**(3)** A judgment by a court or an administrative tribunal that the **Parent Company or Organization** has violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

**(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by the **Parent Company or Organization** or their representative, which materially increase any of the risks insured against.

**(5)** Failure by the **Parent Company or Organization** or representative to implement reasonable loss control requirements, agreed to by the **Parent Company or Organization** as a condition of policy issuance, or which were conditions precedent to the Insurer's use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

**(6)** A determination by the Commissioner of Insurance that the:

    **(a)** Loss of, or changes in, the Insurer's reinsurance covering all or part of the risk would threaten the Insurer's financial integrity or solvency; or

    **(b)** Continuation of the policy coverage would:

        **(i)** Place the Insurer in violation of California law or the laws of the state where the Insurer is domiciled; or

        **(ii)** Threaten the Insurer's solvency.

**(7)** A change by the **Parent Company or Organization** or their representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**b.** The Insurer will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the **Parent Company or Organization**, at the mailing address shown in the policy, and to the producer of record, at least:

    **(1)** Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium or discovery of fraud; or

    **(2)** Thirty (30) days before the effective date of cancellation if the Insurer cancels for any other reason listed in Paragraph **2.a.**

**4.** If this policy is cancelled, the Insurer will compute earned premium pro rata. The cancellation will be effective even if the Insurer has not made or offered a premium refund.

**B. NONRENEWAL**

**1.** Subject to the provisions of Paragraph **2.** below, if the Insurer elects not to renew this policy, the Insurer will mail or deliver written notice stating the reason for nonrenewal to the **Parent Company or Organization** and to the producer of record, at least sixty (60) days, but not more than one hundred twenty (120) days, before the expiration or anniversary date.

The Insurer will mail or deliver the notice to the **Parent Company or Organization**, and to the producer of record, at the mailing address shown in the policy.

**2.** The Insurer is not required to send notice of nonrenewal in the following situations:

    **a.** If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between the Insurer and a member of the insurance group.

    **b.** If the policy has been extended for ninety (90) days or less, provided that notice has been given in accordance with Paragraph **B.1.**

MANAGEMENT LIABILITY

c.  If the **Parent Company or Organization** has obtained replacement coverage, or if the **Parent Company or Organization** has agreed, in writing, within sixty (60) days of the termination of the policy, to obtain that coverage.

d.  If the policy is for a period of no more than sixty (60) days and the **Parent Company or Organization** is notified at the time of issuance that it will not be renewed.

e.  If the **Parent Company or Organization** requests a change in the terms or conditions or risks covered by the policy within sixty (60) days of the end of the **Policy Period**.

f.  If the Insurer has made a written offer to the **Parent Company or Organization**, in accordance with the timeframes shown in Paragraph **B.1.**, to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

All other terms and conditions of this policy remain unchanged.

**MML 1433-CA 01 11**                                                                                    **Page 3 of 3**



MANAGEMENT LIABILITY
POLICY NUMBER: ML817361

# MARKEL AMERICAN INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Additional Insured(s) Endorsement

This endorsement modifies insurance provided under the following:

GENERAL TERMS AND CONDITIONS
DIRECTORS AND OFFICERS AND COMPANY LIABILITY COVERAGE PART
EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART

It is agreed that solely with respect to the above-referenced Coverage Part, the definition of Insured is amended to also include the organization(s) listed below.

Additional Insured(s)

UNITED TALENT AGENCY, INC.

All other terms and conditions remain the same.

**Page 1 of 1**



MANAGEMENT LIABILITY
POLICY NUMBER: ML817361

# MARKEL AMERICAN INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SEPARATE RETENTION ENDORSEMENT
### (California Employees)

This endorsement modifies insurance provided under the following:

GENERAL TERMS AND CONDITIONS
EMPLOYMENT PRACTICES AND THIRD PARTY DISCRIMINATION LIABILITY COVERAGE PART

It is agreed the Coverage Part listed above is amended as follows:

1.      The Retention applicable to any Employment Practices Claim by or on behalf of an Employee who, during any portion of the time period relevant to such Employment Practices Claim, was or is employed by the Company in California shall be as follows:

$200,000  Each Employment Practices Claim

All other terms and conditions remain the same.

Page 1 of 1