Kirk A. Pasich (SBN 94242)
KPasich@PasichLLP.com
Nathan M. Davis (SBN 287452)
NDavis@PasichLLP.com
Caitlin S. Oswald (SBN 330974)
COswald@PasichLLP.com
PASICH LLP
10880 Wilshire Blvd., Suite 2000
Los Angeles, CA 90024
Telephone: (424) 313-7860
Facsimile: (424) 313-7890

Michael S. Gehrt (SBN 246450)
MGehrt@PasichLLP.com
PASICH LLP
1230 Rosecrans Avenue, Suite 690
Manhattan Beach, CA 90266
Telephone: (424) 313-7860
Facsimile: (424) 313-7890

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED TALENT AGENCY, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>MARKEL AMERICAN INSURANCE COMPANY, a Virginia company; and DOES 1 through 10,<br><br>Defendants. | Case No. 2:21-cv-00369-MCS (Ex)<br><br>Hon. Mark C. Scarsi<br><br>**OPPOSITION TO MARKEL'S MOTION FOR SUMMARY JUDGMENT**<br><br>*Statement of Genuine Disputes of Material Facts and Statement of Additional Material Facts filed concurrently*<br><br>Date: September 18, 2023<br>Time: 9:00 a.m.<br>Dept.: 7C<br><br>Complaint filed: December 18, 2020<br>Removal filed: January 14, 2021 |

1

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................9

II.    MARKEL HAS THE BURDEN ON SUMMARY JUDGMENT ....................10

III.    SECTION 533 DOES NOT BAR COVERAGE .............................................12

  A.    Allegations Are Not Evidence. .......................................................13

     1.    Allegations Alone Cannot Sustain Summary Judgment When the Alleged Conduct Is Not Inherently Harmful. .....................................................13

     2.    The CAA Lawsuit's Causes of Action Do Not Meet the "Inherently Harmful" Standard. ...............................................................15

     3.    Markel Has Not Shown Any Evidence of Subjective Intent, So Its Motion Fails. ...............................................................17

  B.    Regardless of What Individuals May Have Intended, Markel Must Provide Coverage for UTA the Business. .........................................................18

  C.    Markel Must Pay All Defense Costs. ..............................................19

  D.    Markel Must Pay the Full Amount of UTA's Loss. ....................................21

IV.    UTA'S CLAIMS ARE NOT TIME BARRED..................................................22

V.   "RESTITUTION," IN THE INSURANCE SENSE, IS NOT AT ISSUE. ........24

VI.    UTA'S BAD FAITH CLAIM SHOULD MOVE FORWARD.......................27

VII.   CONCLUSION ...........................................................................................29

1

**<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Cases**

4

5

*Aetna Casualty & Surety Co. v. Sheft,*
  989 F.2d 1105 (9th Cir. 1993) ............................................................................. 13

6

*AIU Insurance Co. v. Superior Court,*
7
  51 Cal. 3d 807 (1990) ...................................................................... 24, 25, 27

8

*Allstate Insurance Co. v. Tankovich,*
9
  776 F. Supp. 1394 (N.D. Cal. 1991) ................................................................. 13

10

*B & E Convalescent Center v. State Compensation Insurance Fund,*
11
  8 Cal. App. 4th 78 (1992) .......................................................................... 16, 20

12

*Bank of the West v. Superior Court,*
  2 Cal. 4th 1254 (1992) ......................................................................................... 25

13

14

*Braden Partners, LP v. Twin City Fire Insurance Co.,*
  2017 WL 63019 (N.D. Cal. Jan. 5, 2017) ............................................. 12, 23, 24

15

16

*In re C.M. Meiers Co., Inc.,*
  527 B.R. 388 (Bankr. C.D. Cal. 2015) ............................................................. 21

17

18

*California Sansome Co. v. U.S. Gypsum,*
  55 F.3d 1402 (9th Cir. 1995) ........................................................................... 11

19

20

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ........................................................................................... 11

21

*Coit Drapery Cleaners, Inc. v. Sequoia Insurance Co.,*
22
  14 Cal. App. 4th 1595 (1993) ........................................................................... 19

23

*Cortez v. Purolator Air Filtration Products Co.,*
24
  23 Cal. 4th 163 (2000) ....................................................................................... 16

25

*Dart Industries, Inc. v. Commercial Union Insurance Co.,*
  28 Cal. 4th 1059 (2002) ............................................................................... 10, 19

26

27

*Dart Industries, Inc. v. Liberty Mutual Insurance Co.,*
  484 F.2d 1295 (9th Cir. 1974) ..................................................................... 18, 19

28

3

*Davis v. Nadrich*,
174 Cal. App. 4th 1 (2009) .................................................................... 15

*Downey Venture v. LMI Insurance Co.*,
66 Cal. App. 4th 478 (1998) ............................................................ 11, 18

*Egan v. Mutual of Omaha Insurance Co.*,
24 Cal. 3d 809 (1979) ............................................................................ 27

*Federal Insurance Co. v. Tungsten Heavy Powder & Parts, Inc.*,
--- F. Supp. 3d ---, 2023 WL 1806816 (S.D. Cal. Feb. 7, 2023) ...................... 11

*Feduniak v. Old Republic National Title Co.*,
2015 WL 632324 (N.D. Cal. Feb. 13, 2015) .......................................... 23

*In re First Alliance Mortgage Co.*,
471 F.3d 977 (9th Cir. 2006) ................................................................. 16

*First One Lending Corp. v. Hartford Casualty Insurance Co.*,
755 F. App'x 710 (9th Cir. 2019) .......................................................... 15

*First One Lending Corp. v. Hartford Casualty Insurance Co.*,
851 F. App'x 704 (9th Cir. 2021) .......................................................... 14

*Foster-Gardner, Inc. v. National Union Fire Insurance Co.*,
18 Cal. 4th 857 (1998) ........................................................................... 21

*Gray v. Zurich Insurance Co.*,
65 Cal. 2d 263 (1966) .............................................................. 14, 18, 20

*Gruenberg v. Aetna Insurance Co.*,
9 Cal. 3d 566 (1973) .............................................................................. 27

*Hamilton v. Greenwich Investors XXVI, LLC*,
195 Cal. App. 4th 1602 (2011) .............................................................. 17

*Horace Mann Insurance Co. v. Barbara B.*,
4 Cal. 4th 1076 (1993) ........................................................................... 14

*Howard v. American National Fire Insurance Co.*,
187 Cal. App. 4th 498 (2010) ................................................................ 28

*J. C. Penney Casualty Insurance Co. v. M. K.*,
52 Cal. 3d 1009 (1991) .......................................................................... 13

4

*Jaffe v. Cranford Insurance Co.*,
    168 Cal. App. 3d 930 (1985) ............................................................................26

*Jenni Rivera Enters., LLC v. Latin World Entertainment Holdings, Inc.*,
    36 Cal. App. 5th 766 (2019) ...........................................................................15

*People ex rel. Kennedy v. Beaumont Investment, Ltd.*,
    111 Cal. App. 4th 102 (2003) .........................................................................24

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) .................................................................................16

*Lambert v. Commonwealth Land Title Insurance Co.*,
    53 Cal. 3d 1072 (1991) ..................................................................................23

*Lee v. Luxottica Retail North America, Inc.*,
    65 Cal. App. 5th 793 (2021) ...........................................................................26

*Lippitt v. Raymond James Financial Services, Inc.*,
    340 F.3d 1033 (9th Cir. 2003) ........................................................................16

*Lisa M. v. Henry Mayo Newhall Memorial Hospital*,
    12 Cal. 4th 291 (1995) ...................................................................................18

*Lujan v. Gordon*,
    70 Cal. App. 3d 260 (1977) ............................................................................18

*Marie Y. v. General Star Indemnity Co.*
    110 Cal. App. 4th 928, (1996). ......................................................................14

*Marinelarena v. Allstate Northbrook Indemnity Co.*,
    --- F. App'x ---, 2023 WL 3033498 (9th Cir., April 21, 2023) ......................24

*Mez Indus., Inc. v. Pacific National Insurance Co.*,
    76 Cal. App. 4th 856 (1999) ...........................................................................14

*Mintarsih v. Lam*,
    2006 WL 6161031 (Cal. Super. May 12, 2006) .............................................15

*Moran v. Selig*,
    447 F.3d 748 (9th Cir. 2006) ..........................................................................17

*Mosier v. Southern California Physicians Insurance Exchange*,
    63 Cal. App.4th 1022 (1998) ..........................................................................16

*Mt. Hawley Insurance Co. v. Lopez*,
 215 Cal. App. 4th 1385 (2013)....................................................................28

*Nissan Fire & Marine Insurance Co., Ltd. v. Fritz Cos. Inc.*,
 210 F.3d 1099 (9th Cir. 2000) ....................................................................11

*Nordstrom, Inc. v. Chubb & Son, Inc.*,
 54 F.3d 1424 (9th Cir. 1995) ......................................................................21

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*,
 50 Cal. 3d 1118 (1990)................................................................................15

*Palmer v. Truck Insurance Exchange*,
 21 Cal. 4th 1109 (1999)..............................................................................14

*Pan Pacific Retail Properties, Inc. v. Gulf Insurance Co.*
 471 F.3d 961, 969 (9th Cir. 2006) ..........................................................25, 26

*Pierce v. Lyman*,
 1 Cal. App. 4th 1093 (1991)........................................................................16

*PMI Mortgage Insurance Co. v. American International Specialty*
 *Lines Insurance Co.*,
 291 F. App'x 40 (9th Cir. 2008)...............................................................13, 21

*Quelimane Co. v. Stewart Title Guaranty Co.*,
 19 Cal. 4th 26 (1998)..................................................................................15

*Raychem Corp. v. Federal Insurance Co.*,
 853 F. Supp. 1170 (N.D. Cal. 1994)............................................................11

*Reid v. Mercury Insurance Co.*,
 220 Cal. App. 4th 262 (2013).................................................................28, 29

*Republic Indemnity Co. v. Superior Court*,
 224 Cal. App. 3d 492 (1990)......................................................................20

*Richardson v. Employers Liability Assurance Co.*,
 25 Cal. App. 3d 232 (1972)........................................................................27

*RSUI Indemnity Co. v. Murdock*,
 248 A.3d 887 (Del. 2021)............................................................................21

6

*Safeco Insurance Co. v. Robert S.*
  26 Cal. 4th 758 (2001) ........................................................................ 21

*Safeway Stores, Inc. v. National Union Fire Insurane Co.*,
  64 F.3d 1282 (9th Cir. 1995) ............................................................... 21

*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*,
  78 Cal. App. 4th 847 (2000) ............................................................... 29

*State Farm Fire & Casualty Co. v. Dominguez*,
  113 Cal. App. 3d 1 (1982) ................................................................... 13

*State Farm Fire & Casualty Co. v. Century Indemnity Co.*,
  59 Cal. App. 4th 648 (1997) ............................................................... 14

*State Farm General Insurance Co. v. Mintarsih*,
  175 Cal. App. 4th 274 (2009) ........................................................ 13, 14

*Taylor v. List*,
  880 F.2d 1040 (9th Cir. 1989) ............................................................. 11

*U.S. Fidelity & Guarantee Co. v. American Employer's Insurance Co.*,
  159 Cal. App. 3d 277 (1984) ............................................................... 13

*Unified Western Grocers, Inc. v. Twin City Fire Insurance Co.*,
  457 F.3d 1106 (9th Cir. 2006) .....................................................*passim*

*United National Maintenance, Inc. v. San Diego Convention Center Corp.*,
  2012 WL 3861946 (S.D. Cal. Sept. 5, 2012) ...................................... 27

*Waller v. Truck Ins. Exch.*,
  11 Cal. 4th 1, 17 (1995) ...................................................................... 17

*Wilson v. 21st Century Insurance Co.*,
  42 Cal. 4th 713 (2007) ................................................................... 27, 29

*Zelda Inc. v. Northland Insurance Co.*,
  56 Cal. App. 4th 1252 (1997) ............................................................. 17

**Statutes**

California Civil Code § 1641 ................................................................... 21

California Civil Code § 1643 ................................................................... 21

**OPPOSITION TO MARKEL'S MOTION FOR SUMMARY JUDGMENT**

California Insurance Code § 790.03(h)(13)................................................................28

10 California Code of Regulations § 2695.7(b) ......................................................28

**Other Authorities**

John D. Calamari & Joseph M. Perillo. The Law of Contracts § 9-23
    (3d ed. 1987)...................................................................................................24

Restatement (Third) of Torts: Liability for Economic Harm § 17
    (Am. L. 2020) .................................................................................................15

## I.   __INTRODUCTION__

Markel American Insurance Company's sole basis for initially denying United Talent Agency, LLC ("UTA") coverage for the litigation and related arbitrations (the "Underlying Actions") filed by Creative Artists Agency ("CAA") was the Policy's professional liability exclusion, which the Ninth Circuit unequivocally held does not apply. Despite losing its primary coverage defense, Markel doggedly seeks to avoid its coverage obligations and deprive UTA of its day in court by relying on arguments that are contrary to California law and this Court's prior orders.

Specifically, Markel argues that California Insurance Code section 533 bars coverage for the entirety of UTA's claim. By advancing this argument, Markel asks this Court to ignore decades of binding precedent that requires insurers to pay for defense costs, regardless of the ultimate outcome of the litigation for which coverage is sought. Markel additionally asks this Court to ignore multiple causes of action in the Underlying Actions that do not require a showing of specific intent to injure, which is necessary to establish a "wilful act" within the meaning of section 533. Markel's position also contradicts its own Policy's requirement that it pay for defense costs even if the damages sought are otherwise uninsurable. And finally, with respect to UTA, Markel cannot show that UTA authorized or ratified any alleged willful conduct, which it must do to prove that section 533 in fact applies.

Markel's argument that UTA's claim is time-barred is equally flawed. This Court already concluded that the limitation periods were tolled until the Underlying Actions were terminated, and there is no dispute that UTA initiated this coverage action less than two years after the Underlying Actions were resolved. Markel's only arguments in response is to disagree with this Court (and the decades of precedent supporting the Court's holding) and to cite intervening case law that does not even address equitable tolling. Suffice it to say, Markel's argument fails.

1    Markel next seeks to avoid its duties by claiming that the relief that CAA

2    sought from UTA was restitutive in nature and that California law prohibits

3    insurance for restitution awards. However, CAA's claims do not fall within the

4    category of "restitution," as that word has been interpreted in the insurance context.

5    Because CAA sought compensation for an expectancy to which it held no legal

6    interest—future profits—that relief is "damages" (not "restitution") for insurance

7    purposes.

8    Finally, Markel hopes to avoid UTA's bad faith claim by relying on its

9    breach-of-contract arguments and also baldly asserting that its coverage denial was

10   reasonable based on its self-serving interpretation of the law. This argument fails,

11   however, because bad faith claims can exist independently of breach-of-contract

12   claims. There is ample evidence that Markel failed to execute its duties to handle

13   UTA's claim fairly and that it acted in a manner inconsistent with insurance industry

14   customs, standards, and practices.

15   For all these reasons, Markel's motion should be denied.

16   **II.    <u>MARKEL HAS THE BURDEN ON SUMMARY JUDGMENT</u>**

17   "[I]t is well settled that 'the burden is on an insured to establish that the

18   occurrence forming the basis of its claim is within the basic scope of insurance

19   coverage. And, once an insured has made this showing, the burden is on the insurer

20   to prove the claim is specifically excluded.'" *Dart Indus., Inc. v. Com. Union Ins.*

21   *Co.*, 28 Cal. 4th 1059, 1071 (2002) (cleaned up). Markel states, "The parties do not

22   dispute the applicability of [the Policy's] Insuring Agreement, or that [CAA's

23   Second Amended Complaint] is a **Claim** alleging **Wrongful Acts**." Mot. at 5. Thus,

24   Markel concedes that UTA has established its initial burden of showing that the

25   Underlying Actions fall within the Policy's coverage grant, and it is Markel's

26   burden to prove that it does not owe coverage.

27   Nevertheless, Markel seeks to foist its burden onto UTA by arguing that for

28   UTA to show that the Underlying Actions fall within the Policy's coverage grant,

10

UTA also needs to show that section 533 does not bar coverage for the Underlying Actions. *Id.* at 10. Markel has it backward. The Ninth Circuit explained, "Because section 533 is considered under California [law] to be an exclusionary clause, the insurer has the 'burden of proving that the requested claims are matters "uninsurable under the law."'" *Unified W. Grocers, Inc. v. Twin City Fire Ins. Co.*, 457 F.3d 1106, 1111 (9th Cir. 2006) (citation omitted); *accord Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 499-500 (1998) ("It is an implied exclusionary clause which, by statute, must be read into all insurance policies.").

The same is true for Markel's other attempts to avoid liability: the statute of limitations (Markel's first affirmative defense, Mot. at 17-20), uninsurable restitution (fifth affirmative defense, *id.* at 20), and a genuine dispute as to the law, precluding bad faith damages (sixth affirmative defense, *id.* at 21-22). ECF No. 16, at 5-6.[1]

Because Markel bears the burden of proof, to prevail on summary judgment, Markel must "go beyond the pleadings and by [the party's] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citation omitted). Markel may not rely solely on conclusory allegations unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "If [Markel] fails to produce enough evidence to create a genuine issue of material fact, [UTA] wins the motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos. Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

---

[1] *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995) ("A defendant raising the statute of limitations as an affirmative defense has the burden of proving the action is time barred."); *Raychem Corp. v. Fed. Ins. Co.*, 853 F. Supp. 1170, 1175 (N.D. Cal. 1994) ("the insurer bears the burden at trial of proving that a statutory or policy exclusion or limitation applies."); *Fed. Ins. Co. v. Tungsten Heavy Powder & Parts, Inc.*, --- F. Supp. 3d ---, 2023 WL 1806816, at *16 (S.D. Cal. Feb. 7, 2023) ("The genuine-dispute doctrine is an affirmative defense to a bad-faith claim.").

## III.   <u>SECTION 533 DOES NOT BAR COVERAGE</u>

UTA's coverage claim arises from two duties that the Policy imposes on Markel: (1) the duty to advance defense costs "on a current basis" while the Underlying Actions were pending, and (2) the duty to indemnify UTA for settling the Underlying Actions. These are separate duties.

> Instead of simply including defense costs in the definition of covered "Loss" under the policy's general indemnification provision, the policy includes a separate promise to "*advance*" defense costs . . . , subject to [Markel's] right to repayment upon a final determination of coverage.

*Braden Partners, LP v. Twin City Fire Ins. Co.*, 2017 WL 63019, at *6 (N.D. Cal. Jan. 5, 2017); SAMF 1[2] (Markel "shall advance covered Claim Expenses on a current basis," subject to a right to repayment "if and to the extent it is later determined the Insureds shall not be entitled under the terms and conditions of this policy to coverage for such Claim Expenses").

The Policy treats these duties differently. Although it excludes "matters uninsurable under the law" (like matters subject to section 533) from the definition of "Loss," the Policy expressly states that this carve-out does not apply to "Claim Expenses," which include defense costs. SGDMF 9, 11.[3] Thus, the Policy obligates Markel to pay for defense costs, even if the Underlying Actions ultimately resulted in uninsurable liability. Because Markel is seeking to limit coverage, Markel bears the burden to prove what, if any, defense costs owe to non-covered claims—*other than* defense costs owing to "uninsurable matters"—and what portion of the liability

---

[2] "SAMF" refers to UTA's Statement of Additional Material Facts, filed concurrently herewith.

[3] "SGDMF" refers to UTA's Statement of Genuine Disputes of Material Facts, filed concurrently herewith.

1  is uninsurable. *PMI Mortg. Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 291 F.

2  App'x 40, 41 (9th Cir. 2008) (under California law, "[w]here the insurer has the

3  burden of proving the lack of coverage, it also has the burden of proving the

4  allocation of the loss between covered and uncovered losses").

5  　　　Therefore, to carry its burden, Markel must point to evidence that shows

6  conclusively that section 533 bars the entirety of UTA's claim for coverage. Markel

7  has failed to do so.

8  　　**A.　　Allegations Are Not Evidence.**

9  　　　　1.　　*Allegations Alone Cannot Sustain Summary Judgment When the*

10  　　　　　　*Alleged Conduct Is Not Inherently Harmful.*

11  　　　Markel points to no facts at all in its argument that section 533 bars coverage.

12  Its only citations are to the *CAA* lawsuit's unproven allegations and to the Policy's

13  provisions.[4] Allegations can sustain a motion for summary judgment under

14  section 533 *only* if the alleged conduct is inherently harmful. *See Unified*, 457 F.3d

15  at 1111-12 (section 533 bars coverage only if the insurer *proves* "a preconceived

16  design to inflict harm" or if harm is inherent in the alleged wrongful act itself).

17  　　　The "inherently harmful" doctrine is epitomized in the context of child

18  molestation, which "is *always* intentional, it is *always* wrongful, and it is *always*

19  harmful." *J. C. Penney Cas. Ins. Co. v. M. K.*, 52 Cal. 3d 1009, 1025 (1991). Other

20  uninsurable conduct includes first-degree murder, enslavement, racial harassment,

21  arson, and knowingly exposing a sexual partner to a venereal disease.[5]

22  

23  ─────────

[4] "*CAA* lawsuit" refers to the action styled *Creative Artists Agency, LLC v. United*

24  *Talent Agency, LLC*, No. SC123994 (Cal. Super.), and is the only public proceeding
of the Underlying Actions.

25  [5] *See, respectively*, *State Farm Fire & Cas. Co. v. Dominguez*, 113 Cal. App. 3d 1, 6
(1982); *State Farm Gen. Ins. Co. v. Mintarsih*, 175 Cal. App. 4th 274, 287-88

26  (2009); *Allstate Ins. Co. v. Tankovich*, 776 F. Supp. 1394, 1397-98 (N.D. Cal.
1991); *U.S. Fid. & Guar. Co. v. Am. Emp'r's Ins. Co.*, 159 Cal. App. 3d 277, 281

27  (1984), *disapproved of on other grounds by J.C. Penney*, 52 Cal. 3d 1009; *Aetna*
*Cas. & Sur. Co. v. Sheft*, 989 F.2d 1105, 1108 (9th Cir. 1993).

28  

**OPPOSITION TO MARKEL'S MOTION FOR SUMMARY JUDGMENT**

1        Other conduct rarely rises to this level. *Gray v. Zurich Ins. Co.*, 65 Cal. 2d

2    263, 273 n.12 (1966) ("an act which under the traditional terminology of the law of

3    torts is denominated 'intentional' or 'wilful' does not necessarily fall outside

4    insurance coverage"). Indeed, allegations that the insured intentionally shot

5    someone in self-defense do not clear section 533's "inherently harmful" bar. *Id*.

6    at 276. In the unfair competition context, only intentional inducement of another to

7    infringe a patent has been found "inherently harmful." *Mez Indus., Inc. v. Pac. Nat'l*

8    *Ins. Co.*, 76 Cal. App. 4th 856, 876-77 (1999). On the other hand, allegations of

9    trademark infringement do not rise to that level. *See First One Lending Corp. v.*

10   *Hartford Cas. Ins. Co.*, 851 F. App'x 704, 707 (9th Cir. 2021).[6]

11       Markel has cited no case, and we are aware of none, suggesting that allegedly

12   recruiting employees from a competitor, or deciding to leave one company to work

13   for a competitor, constitutes inherently harmful conduct for purposes of section 533.

14   The same goes for allegedly soliciting a competitor's clientele. The cases Markel

15   cites are inapt. *See* Mot. at 11-12. *Horace Mann Insurance Co. v. Barbara B.* was a

16   case about child molestation, and even then, the Supreme Court found section 533

17   did not bar coverage for wrongful acts that were not necessarily sexual. 4 Cal. 4th

18   1076, 1084-85 (1993). *State Farm Fire & Casualty Co. v. Century Indemnity Co.*,

19   59 Cal. App. 4th 648 (1997), also dealt with child molestation. *Marie Y. v. General*

20   *Star Indemnity Co.* addressed a dentist's sexual molestation of his patient, but the

21   Court of Appeal found section 533 did not apply to allegations that the dental

22   assistant failed to report the dentist to the authorities. 110 Cal. App. 4th 928, 959-60

23   (2003). *Mintarsih* addressed domestic enslavement, 175 Cal. App. 4th at 280, in

24   which a jury had found the insureds had acted fraudulently and with malice.

25

26
27   [6] The California Supreme Court has left open the question whether intentional trademark infringement constitutes "inherent harm" for purposes of section 533.

28   *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1114 (1999).

Amended Judgment on Jury Verdict, *Mintarsih v. Lam*, 2006 WL 6161031 (Cal. Super. May 12, 2006).

As explained below, the alleged conduct here does not satisfy the "inherently harmful" standard.

        2.     *The* CAA *Lawsuit's Causes of Action Do Not Meet the "Inherently Harmful" Standard*.

If the causes of action in the underlying complaint do not require the plaintiff to prove the required willfulness contemplated in section 533, then the statute does not necessarily bar coverage. *E.g.*, *First One Lending Corp. v. Hartford Cas. Ins. Co.*, 755 F. App'x 710, 710 (9th Cir. 2019); *Unified*, 457 F.3d at 1111-12. The causes of action in the *CAA* lawsuit do not require the specific intent to injure that would make them "inherently harmful" for purposes of section 533:

- Intentional Interference with Contractual Relations: "While this is an intentional tort, it does not require that the defendant act with specific intent to interfere." *Davis v. Nadrich*, 174 Cal. App. 4th 1, 10 (2009); *accord Jenni Rivera Enters., LLC v. Latin World Ent. Holdings, Inc.*, 36 Cal. App. 5th 766, 788 (2019). The tort will apply "to an interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 56 (1998).

- Inducing Breach of Contract: Claims for inducing breach of contract are generally analyzed within the same framework as claims for intentional interference with contractual relations—no specific intent is required. *See Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126-27 (1990); Restatement (Third) of Torts: Liab. for Econ. Harm § 17 (Am. L. Inst. 2020).

- Intentional Interference with Prospective Economic Advantage: The California Supreme Court concluded that "a plaintiff need not plead that the defendant acted with the specific intent to interfere with the plaintiff's business

1  expectancy in order to state a claim for this tort." *Korea Supply Co. v. Lockheed*
2  *Martin Corp.*, 29 Cal. 4th 1134, 1141 (2003).

3        • Breach of Fiduciary Duty/Duty of Loyalty: "The elements of a cause of
4  action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) the
5  breach of that duty; and (3) damage proximately caused by that breach." *Mosier v.*
6  *S. Cal. Physicians Ins. Exch.,* 63 Cal. App.4th 1022, 1044 (1998); *see also Pierce v.*
7  *Lyman*, 1 Cal. App. 4th 1093, 1101 (1991) (same elements for breach of loyalty);
8  Judicial Council of California Civil Jury Instruction ("CACI") Series 4100 (Breach
9  of Fiduciary Duty). Specific intent is not required.

10       • Aiding and Abetting: The Ninth Circuit concluded that "[a]lthough the
11  California decisions on this subject may not be entirely consistent, we agree with the
12  district court that aiding and abetting liability under California law, as applied by the
13  California state courts, requires a finding of actual knowledge, not specific intent."
14  *In re First Alliance Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006). CACI instruction
15  3610 for aiding and abetting comports with the standard articulated in *First*
16  *Alliance*—no specific intent is required. Intent to act or participate is not the same as
17  specific intent to injure. *See B & E Convalescent Ctr. v. State Comp. Ins. Fund*, 8
18  Cal. App. 4th 78, 94 (1992).

19       • Violations of California Business and Professions Code section 17200:
20  California's Unfair Competition Law ("UCL"), "imposes strict liability when
21  property or monetary losses are occasioned by conduct that constitutes an unfair
22  business practice." *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163,
23  181 (2000). Accordingly, "the plaintiff need not show that a UCL defendant
24  intended to injure anyone through its unfair or unlawful conduct." *Id.*; *see also*
25  *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003)
26  (necessary elements of UCL claim do not include specific intent).

27       • Breach of Contract: "The essential elements of a breach of contract
28  claim are: '(1) the contract, (2) plaintiff's performance or excuse for

nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff.'" *Hamilton v. Greenwich Investors XXVI, LLC,* 195 Cal. App. 4th 1602, 1614 (2011) (quoting *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (1968)). Specific intent is not required.

- Breach of the Implied Covenant of Good Faith and Fair Dealing: CACI instruction 325 states the required elements for breach of the implied covenant of good faith and fair dealing. Specific intent is not required.

None of CAA's causes of action—let alone *all* of them—requires an act deliberately done for the express purpose of causing damage or intentionally performed with knowledge that damage is highly probable or substantially certain to result. In other words, they do not "necessarily involve a wilful act."

       3.    *Markel Has Not Shown Any Evidence of Subjective Intent, So Its Motion Fails.*

Absent conduct that is inherently harmful, the insurer must *prove* that the insureds "subjectively plan[ned] the injury or subjectively fores[aw] the injury 'as practically certain.'" *Zelda Inc. v. Northland Ins. Co.*, 56 Cal. App. 4th 1252, 1261 (1997) (quoting *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 17 (1995)). Markel has pointed to no evidence that speaks to such scienter. Citing unproven allegations is not enough to carry Markel's burden on summary judgment. *Moran v. Selig*, 447 F.3d 748, 759-60 (9th Cir. 2006); *Unified*, 457 F.3d at 1112 ("In determining whether an unproven claim is covered by an applicable insurance policy, we are reluctant to frame coverage based on isolated allegations in an underlying complaint."). As the California Supreme Court has observed:

> Obviously, . . . the complainant in the third party action drafts his complaint in the broadest terms; he may very well stretch the action which lies in only nonintentional conduct to the dramatic complaint that alleges intentional misconduct. In light of the likely overstatement of the

17

1  complaint and of the plasticity of modern pleading, we

2  should hardly designate the third party as the arbiter of the

3  policy's coverage.

4  *Gray*, 65 Cal. 2d at 276. Because Markel has not cited any evidence to support its

5  motion for summary judgment on section 533, Markel has failed to carry its burden,

6  and its motion must be denied.

7      **B.**    **Regardless of What Individuals May Have Intended, Markel Must**

8                **Provide Coverage for UTA the Business.**

9      Even if Markel had overwhelming evidence (let alone zero evidence) showing

10 that all of the individual insureds acted with the subjective intent required to fall

11 within section 533's prohibitions, Markel still would owe coverage to UTA the

12 company. *See Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291

13 (1995). Indeed, California recognizes that in a corporate setting, even if the officers

14 or employees of a corporation commit intentional torts, and even if the corporation

15 is held to be vicariously liable under tort doctrines, coverage still exists for the

16 corporation. *See Dart Indus., Inc. v. Liberty Mut. Ins. Co.*, 484 F.2d 1295, 1296-99

17 (9th Cir. 1974) (no bar to coverage for corporation unless governing board

18 authorized or ratified intentional torts of company's president); *Downey*, 66 Cal.

19 App. 4th at 512 (there is no bar for "indemnity of an insured who does not

20 personally commit the act but who is vicariously liable for another person's act of

21 malicious prosecution"); *Lujan v. Gordon*, 70 Cal. App. 3d 260, 262 (1977) (all

22 partners in law firm exposed to liability for malicious prosecution as the result of

23 malicious action filed by one partner still were entitled to coverage). Accordingly,

24 Markel cannot avoid its coverage obligations to UTA based on section 533 unless it

25 can prove that UTA's board of directors authorized or ratified the purportedly

26 intentional conduct. *Dart*, 484 F.2d at 1299.

27     Markel argues that because "the CAA complaint makes repeated reference to

28 the involvement of senior UTA management," that is enough to deny UTA's

18

1    coverage claim. Mot. at 13. This argument is contrary to law. For instance, in *Dart*,

2    the company's president was the person who committed the intentionally harmful

3    conduct barred by section 533, but the Ninth Circuit still held that the insurer needed

4    to prove that the board of directors had formally authorized or ratified the

5    president's conduct to avoid coverage for the company. 484 F.2d at 1299. It was

6    even conceded that other corporate officials were consulted about or were aware of

7    the president's libelous letter before he sent it, and still the company was entitled to

8    coverage unless the board had formally acted to approve of the president's

9    wrongdoing. *Id.*

10         Markel's reliance on *Coit Drapery Cleaners, Inc. v. Sequoia Insurance Co.*,

11   14 Cal. App. 4th 1595 (1993), for the proposition that willfulness can be imputed to

12   the corporation simply because an intentional act is committed by a member of

13   senior management is just wrong. Mot. at 13. In that case, the company's founder,

14   chairman, president, and major shareholder (all one man) was a notorious roué, who

15   routinely hired young women, sexually harassed them, assaulted them, or pimped

16   them to his clients, and then fired them if they complained. 14 Cal. App. 4th

17   at 1599-1600. The Court of Appeal found that section 533 barred coverage for the

18   corporation because there was no way for the board of directors to hold the dastard

19   accountable, and even if they could, "the evidence showed his sexual misconduct

20   with female employees was affirmatively known to, *and ratified by*, the board of

21   directors and Coit." *Id.* at 1605 (emphasis added).

22         Markel, again, has cited no *evidence* that UTA's governing body made any

23   such official act. All Markel cites are the unproven allegations in the *CAA* lawsuit.

24   Mot. at 13. Again, CAA's allegations are not sufficient to sustain Markel's motion

25   for summary judgment.

26         **C.     Markel Must Pay All Defense Costs.**

27         Even if Markel had sufficient evidence (let alone zero evidence) to show that

28   individual insureds' acts fell within section 533's prohibitions, and even if Markel

19

had sufficient evidence (let alone zero evidence) to show that UTA's corporate governance formally authorized or ratified uninsurable conduct, Markel still must pay for all of UTA's defense costs.

"[S]ection 533 precludes only *indemnification* of wilful conduct and not the *defense* of an action in which such conduct is alleged." *Republic Indem. Co. v. Superior Ct.*, 224 Cal. App. 3d 492, 497 (1990) (emphasis added); *accord Gray*, 65 Cal. 2d at 277 (section 533 "forbid[s] only contracts which indemnify for '*loss*' or '*responsibility*' resulting from wilful wrongdoing"); *B & E*, 8 Cal. App. 4th at 93 ("if the reasonable expectations of an insured are that a defense will be provided for a claim, then the insurer cannot escape that obligation merely because public policy precludes it from indemnifying that claim").

Markel argues that it is not obliged to pay for defense costs owing to uninsurable liability unless the Policy expressly obligates payment of those costs. Mot. at 13 (citing *Downey*, 66 Cal. App. 4th at 508-09). Unfortunately for Markel, the Policy *does* state that even though it excludes coverage for uninsurable matters, it "does not exclude Claim Expenses with respect to" uninsurable matters. SGDMF 11. In other words, the Policy promises to pay "Claim Expenses" for matters that are uninsurable, like those that would be non-indemnifiable under section 533. Thus, contrary to Markel's suggestion, the Policy includes an "express promise" to pay for defense costs even if they relate to conduct excluded by section 533.

Markel is entitled to repayment of defense costs and other claim expenses only if it can "later" establish that they owed to the defense of claims not covered "under the terms and conditions of this policy." SAMF 1. This is not applicable to claim expenses owing to the defense of allegations of uninsurable liability. There is a difference between clams that are not covered "under the terms and conditions of this policy" (for which Markel can seek repayment of defense costs) and claims alleging "matters uninsurable under the law pursuant to which this policy is

20

construed" (the defense of which Markel affirmatively promised to pay). Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 857, 880 (1998) (terms that are not used interchangeably in an insurance policy carry different meanings). If Markel were able to seek repayment of defense costs owing to uninsurable matters, rather than non-covered matters, then its promise to pay for such defense costs would be illusory, which is anathema to California's law of insurance policy interpretation. Cal. Civ. Code § 1643 ("A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties."); *Safeco Ins. Co. v. Robert S.*, 26 Cal. 4th 758, 765 (2001) (same).

### D.     Markel Must Pay the Full Amount of UTA's Loss.

UTA does not dispute that section 533's prohibition of coverage for willful conduct can apply to settlements and judgments. However, for Markel to prevail, it must show, specifically, how much of the settlement UTA paid owed solely to non-covered claims. *PMI*, 291 F. App'x at 41; *Safeway Stores, Inc. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1282, 1287-88 (9th Cir. 1995) (insurer must indemnify a mixed action fully unless it can establish amounts attributable solely to acts of non-covered parties); *In re C.M. Meiers Co., Inc.*, 527 B.R. 388, 407 (Bankr. C.D. Cal. 2015) ("In a mixed cause of action, where it is unclear whether a judgment was based on covered or uncovered claims, the insurer can be liable for the entire judgment."); *accord Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1432 (9th Cir. 1995) (same); *RSUI Indem. Co. v. Murdock*, 248 A.3d 887, 909 (Del. 2021) ("[T]he 'larger settlement rule' captures the extent to which [an insurer's] indemnity obligations might be reduced by an allocation of a portion of [a] settlement to non-covered losses or uninsured parties."). The Policy's allocation provision is consistent with this rule, providing that covered loss shall be allocated to Markel and uncovered loss

1   shall be allocated to UTA, SGDMF 12, but California law is clear that the burden

2   rests on Markel to prove what amounts are not covered.

3       Aside from its assertion that coverage for the entirety of the Underlying

4   Actions is barred by Section 533 (which, for the reasons discussed above, is wrong),

5   Markel has not pointed to any evidence supporting its contention that section 533

6   bars any aspect of the settlement. Accordingly, Markel's motion should be denied.

7   **IV.    UTA'S CLAIMS ARE NOT TIME BARRED.**

8       Markel's attempt to renew its argument that the statutes of limitations for

9   UTA's claim have expired is nothing more than a request for this Court to

10  reconsider its prior ruling against Markel. This Court already concluded that the

11  statutes of limitations were tolled until the Underlying Actions were resolved. ECF

12  No. 15. As this Court explained in its Order denying Markel's motion to dismiss:

13          The California Supreme Court concluded that the

14          limitations period for failure to defend under a title

15          insurance policy "accrues when the insurer refuses the

16          insured's tender of defense, but is tolled until the

17          underlying action is terminated by final judgment."

18          *Lambert v. Commonwealth Land Title Ins. Co.*, 53 Cal. 3d

19          1072, 1080 (1991). . . . *Lambert* and its progeny indicated

20          that California law permits equitable tolling where an

21          insurer declines to advance defense costs, just as equitable

22          tolling is available when an insurer refuses to defend.

23  *Id.* at 3-4. UTA initiated this action on December 18, 2020, ECF No. 5, which is less

24  than two years from the December 21, 2018, settlement of the Underlying Actions

25  and the January 28, 2019, dismissal of the *CAA* lawsuit. SAMF 2, 3. Because any

26  statutes of limitations were equitably tolled until the Underlying Actions were

27  concluded, the applicable four-year and two-year statutes of limitation for breach of

28  contract and bad faith, respectively, do not bar UTA's claims.

1   Markel's only argument in response to this Court's prior holding is that it

2   "makes no sense." Despite contrary California law, Markel claims equitable tolling

3   should not apply when, as now, the Policy provides for a duty to advance defense

4   costs rather than a duty to defend. However, just as in *Lambert*—where a continuing

5   duty has been breached and the plaintiff has the option of filing suit after complete

6   performance—Markel's duty to advance defense costs is one that continues

7   throughout the pendency of the Underlying Actions. The Policy expressly states that

8   Markel "shall advance covered **Claim Expenses** *on a current basis*." SGDMF 8

9   (italics added).  This means that Markel's duty to advance defense costs continues as

10   UTA incurs additional fees and expenses in defense of the Underlying Actions. *E.g.*,

11   *Braden*, 2017 WL 63019, at *5 (duty to advance defense costs "on a current basis"

12   creates an existing duty during the pendency of the underlying lawsuit). Thus,

13   Markel could have assumed its duty to advance defense costs at any time prior to the

14   conclusion of the Underlying Actions. *See Lambert*, 53 Cal. 3d at 1076-7 (because

15   the insurer could have assumed its duty at any time, "the insured 'could elect to wait

16   until a final judgment had been entered and the duty to defend had ceased'" (citation

17   omitted)). Accordingly, the California Supreme Court's rationale for equitable

18   tolling applies with equal force here. UTA should not be placed in the "untenable"

19   position of having to sue its insurer to vindicate the duty to advance defense costs

20   even before the duty itself expires.

21   In *Feduniak v. Old Republic National Title Co.*, a title insurer argued that a

22   claim for reimbursement of defense costs accrued when an underlying lawsuit was

23   filed. 2015 WL 632324, at *3 (N.D. Cal. Feb. 13, 2015). The court characterized the

24   insurers' argument—like those of Markel here—as "not well-taken" and held that

25   *Lambert*'s "rationale is equally applicable to the [plaintiffs'] claim that [the insurer]

26   was obligated under § 4(b) to pay or reimburse for defense costs incurred in the

27   [underlying] action." *Id.*, at *4. The court further stated that "[i]t would be

28   unreasonable to permit the statute of limitations to run against a claim for

23

1  reimbursement of defense costs while those defense costs continue to be incurred."
2  *Id.* The same reasoning is applicable here.

3      Grasping at straws, Markel claims that the Ninth Circuit's recent decision in
4  *Marinelarena v. Allstate Northbrook Indemnity Co.*, --- F. App'x ---, 2023 WL
5  3033498 (9th Cir., April 21, 2023), supports a departure from established California
6  law. Mot. at 19. Markel is wrong. *Marinelarena* does not involve the duty to
7  advance defense costs or the duty to defend and, therefore, does not even involve
8  equitable tolling. Instead, it involved a bad faith settlement offer that, according to
9  the Ninth Circuit, gave the insured "reason to suspect that Allstate was dealing with
10 her in bad faith." *Id.* at *1. In the absence of an ongoing duty, such as Markel's duty
11 to advance defense costs, there is no basis to argue equitable tolling and, tellingly,
12 the insured in *Marinelarena* did not advance such an argument.

13 **V.    "RESTITUTION," IN THE INSURANCE SENSE, IS NOT AT ISSUE.**

14      Markel next argues that the Underlying Actions sought "restitution and
15 disgorgement of UTA's ill-gotten gains," which, according to Markel, "are
16 uninsurable in California . . . regardless of how they are labeled." Mot. at 20.
17 Contrary to Markel's proclamation, the term "restitution" has a particular meaning
18 in the context of insurance that should not be confused with other broader uses of
19 the word to describe an award of money. "'"Restitution" is an ambiguous term,
20 sometimes referring to the disgorging of something which has been taken *and at*
21 *times referring to compensation for injury done*.'" *People ex rel. Kennedy v.*
22 *Beaumont Inv., Ltd.*, 111 Cal. App. 4th 102, 134 (2003) (quoting John D. Calamari
23 & Joseph M. Perillo, *The Law of Contracts* § 9-23 at 376 (3d ed. 1987) ("Often, the
24 result under either meaning of the term would be the same")) (emphasis added).

25      In *AIU Insurance Co. v. Superior Court*, 51 Cal. 3d 807 (1990), the California
26 Supreme Court specifically limited uninsurable "restitution" to forms of relief that
27 are far narrower than what CAA sought through the Underlying Actions. In *AIU*, the
28 insured faced liability for environmental contamination and was ordered to

reimburse government agencies for the costs incurred in the subsequent cleanup. *Id.* at 815. Undertaking a nationwide survey of cases, the California Supreme Court refused to institute a regime that "would unreasonably make coverage hinge on the 'mere fortuity' of which recovery mechanism (injunction, reimbursement, or 'damages to natural resources') the government selects in enforcing CERCLA." *Id.* at 819. Thus, the California Supreme Court held that reimbursement of government agencies' response costs "is restitutive in that it attempts to restore to the agencies the value of a benefit constructively conferred on [the insured], . . . [but it] is not restitutive in the narrow sense . . . as inappropriate for insurance coverage." *Id.* at 836. It then concluded the reimbursement was "damages" within the terms of the insurance policies. *Id*. at 837. Thus, when the cause of action seeks payment to compensate for harm, it does not matter if the theory of recovery is restitutive in nature for insurance purposes.

Bank of the West v. Superior Court, 2 Cal. 4th 1254 (1992), is an illustration of what "restitution" means in the insurance context—and it does not apply to the relief CAA sought in the Underlying Actions. In *Bank*, the insured faced consumer class actions that claimed that it had overcharged them with hidden fees, exorbitant fees, and penalties. 2 Cal. 4th at 1258-59. In other words, the underlying plaintiffs claimed that the bank had taken money *directly from them*, and through their class action, they were *trying to get that money back*. That is a different sense of "restitution" than what was at issue in the Underlying Actions. Here, CAA never gave anything to UTA; its theory of recovery was that it was damaged because of lost future profits.

None of the cases that Markel lists in its string citation to support its argument suggests that CAA claimed uninsurable relief. For instance, in *Pan Pacific Retail Properties, Inc. v. Gulf Insurance Co*., the Ninth Circuit reversed the district court's finding that the settlement of derivative and direct claims against corporate directors were uninsurable restitution because it was conceivable that the settlement also

1   encompassed "compensation for the individualized harm of the shareholders and not

2   for the return of money wrongfully withheld by Appellants." 471 F.3d 961, 969 (9th

3   Cir. 2006). That court explained, "The insurance companies here were required to

4   cover claims that sought compensation for a loss, even if the loss to the victim could

5   also be construed as an ill-gotten benefit to the insured." *Id.* at 966. Yet, Markel

6   encourages the Court to hold the exact opposite now. CAA's claim for "restitution"

7   was that it lost future earnings when it lost agents. Even if it characterized that lost

8   expectancy as UTA's ill-gotten gains, Markel is not relieved of its obligations by

9   calling CAA's claims restitutive.

10       *Unified* similarly provides no support for Markel's position. In *Unified*, the

11   Ninth Circuit reversed the insurer's win on summary judgment because a question

12   of fact existed as to whether the money at issue in the underlying dispute amounted

13   to uninsurable restitution, or also included damages "in an amount greater than the

14   amount of money actually alleged to have been taken by the Defendants." 457 F.3d

15   at 1115-16. Again, CAA did not allege that UTA took money from it.

16       Neither *Pan* nor *Unified* addresses whether lost profits or lost market share—

17   like those sought by CAA—are uninsurable in California, and we are aware of no

18   such decision. On the contrary, in a matter of first impression, the California Court

19   of Appeal recently held in the context of California's Unfair Competition Law

20   (which only permits restitution to consumers, not damages), "Lost profits are

21   damages, not restitution . . . ." *Lee v. Luxottica Retail N. Am., Inc.*, 65 Cal. App. 5th

22   793, 797 (2021). "Simply put, . . . a plaintiff cannot recover anticipated but

23   unearned, future income . . . in the guise of restitution because, absent a legally

24   enforceable right to that stream of future income, the plaintiff lacks an ownership

25   interest in it and thus there is nothing to 'restore.'" *Id.* at 807.

26       There is no reason why that rationale would result in a different conclusion

27   now, when considering the insurability of CAA's claim for lost profits. *See Jaffe v.*

28   *Cranford Ins. Co.*, 168 Cal. App. 3d 930, 935 (1985) ("Although the concept of

1   'restitution' may have a broader meaning in other contexts," a money award is

2   uninsurable only when "[t]he defendant is asked to return something he wrongfully

3   received," not when "he is . . . asked to compensate the plaintiff for injury suffered

4   as a result of his conduct"). The general rule is that decrease in income as a result of

5   competitive behavior is an economic injury that can be remedied by the payment of

6   money damages. *See United Nat'l Maint., Inc. v. San Diego Convention Ctr. Corp.*,

7   2012 WL 3861946, at *8 (S.D. Cal. Sept. 5, 2012) (denying motion for permanent

8   injunction and collecting cases). At the very least, this shows that UTA reasonably

9   expected that CAA's claims for lost profits would be covered, an expectation that

10   must guide this Court. *AIU*, 51 Cal. 3d at 830.

## VI.   UTA'S BAD FAITH CLAIM SHOULD MOVE FORWARD.

12       Markel argues that, because it is entitled to summary judgment on UTA's

13   breach of contract claims, it is also entitled to summary judgment on UTA's bad

14   faith cause of action. Mot. at 21. As discussed above, that is not true, so that

15   argument fails.

16       The argument also fails because an insurer's obligation to act reasonably and

17   in good faith "'is *independent* of the contract and attaches over and above the terms

18   of the contract.'" *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 578 (1973) (quoting

19   *Jones v. Kelly*, 208 Cal. 251, 255 (1929)). While unreasonably denying insurance

20   benefits commonly underpins bad faith claims, an insurer also acts in bad faith when

21   it fails to act reasonably in processing and handling a claim. *Id*.; *see also Egan v.*

22   *Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 819 (1979) (failing to reasonably

23   investigate a claim is bad faith); *Richardson v. Emp'rs Liab. Assurance Co.*, 25 Cal.

24   App. 3d 232, 245 (1972) (an insurer acts in bad faith when it knows there is

25   coverage but denies the claim anyway). "The insurer may not just focus on those

26   facts which justify denial of the claim" because, "denial of a claim on a basis

27   unfounded in the facts known to the insurer, or contradicted by those facts, may be

28   deemed unreasonable." *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 721 (2007).

1    Here, there are facts that show that Markel acted in bad faith when it handled

2    UTA's claim for coverage. For instance, under California law, an insurer acts

3    unfairly and unreasonably when it fails to state promptly all factual and legal bases

4    for its denial of a claim. Cal. Ins. Code § 790.03(h)(13). Indeed, the insurer must do

5    so within 40 days of receiving notice of a claim. 10 Cal. Regs. Code § 2695.7(b).

6    Markel, however, denied coverage for UTA's claim by letter dated April 16, 2015,

7    and made no mention of section 533. SAMF 4. Section 533 surfaced in subsequent

8    correspondence between legal counsel 544 days later, in a letter dated October 11,

9    2016. SAMF 5. Asserting a new defense long after Markel was required to provide

10   "all bases for [its] rejection or denial and the factual and legal bases for each reason

11   given for such rejection or denial which is then within the insurer's knowledge" (10

12   Cal. Regs. Code § 2695.7(b)(1)) is evidence of bad faith sufficient to overcome

13   summary judgment. *See Reid v. Mercury Ins. Co.*, 220 Cal. App. 4th 262, 275-76

14   (2013) (reversing grant of summary judgment because violations of fair claims

15   settlement laws can be evidence of bad faith).

16   Markel further argues that "there was at most a genuine dispute as to the law

17   regarding which MAIC's position is at the very least reasonable . . . ." Mot. at 21.

18   However, "[i]t is doubtful that the so-called 'genuine dispute doctrine' applies in

19   third party duty to defend cases." *Mt. Hawley Ins. Co. v. Lopez*, 215 Cal. App. 4th

20   1385, 1424 (2013); *Howard v. Am. Nat'l Fire Ins. Co.*, 187 Cal. App. 4th 498, 530

21   (2010) ("It has never been held that an insurer in a third party case may rely on a

22   genuine dispute over coverage to refuse settlement."). And, regardless of Markel's

23   beliefs, there is evidence that contradicts its position that it acted appropriately.

24   Indeed, Markel's interpretation of the Professional Services Exclusion and reliance

25   on section 533 are patently unreasonable, unjustified, and contrary under the

26   customs, standards, and practices in the insurance industry. *See* SAMF 6.

27   Taken in their totality, all of the above show that Markel has erected

28   unreasonable obstacles to coverage, rather than performing a good faith attempt to

28

1  honor its promises of coverage by seeking out all possible bases to support UTA's

2  claim—as is its duty. *Wilson*, 42 Cal. 4th at 721. Accordingly, there is a genuine

3  issue of material facts as to UTA's bad faith cause of action. *Shade Foods, Inc. v.*

4  *Innovative Prods. Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 915 (2000) ("a shifting

5  position with respect to coverage might strengthen an inference of bad faith").

6  Markel's motion must be denied. *See Reid*, 220 Cal. App. 4th at 275-76.

7  **VII.   CONCLUSION**

8        Markel does not carry its burden as to any aspect of its claimed entitlement to

9  summary judgment. For the above reasons, Markel's motion should be denied.

10

11  DATED: August 28, 2023            PASICH LLP

12                                    By:*/s/ Michael S. Gehrt*

13                                       Michael S. Gehrt

14                                       Attorneys for Plaintiff

15

16              **CERTIFICATE OF COMPLIANCE**

17  The undersigned, counsel of record for UTA, certifies that this brief contains 6,994

18  words, which complies with L.R. 11-6.1.

19

20  DATED: August 28, 2023            */s/ Michael S. Gehrt*
                                        Michael S. Gehrt

21

22                                    Attorneys for Plaintiff

23

24

25

26

27

28