1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT
9                     CENTRAL DISTRICT OF CALIFORNIA
10
UNITED TALENT AGENCY, LLC, a          Case No. 2:21-cv-00369-MCS-E
11
Delaware limited liability company,
                                      **ORDER RE: PARTIES' CROSS-MOTIONS**
12
        Plaintiff,                    **FOR SUMMARY JUDGMENT (ECF NOS.**
13                                     **82, 84, 89, 97)**
        v.
14
15
MARKEL AMERICAN INSURANCE
16
COMPANY, a Virginia company; and
DOES 1 through 10,
17
18      Defendants.
19
20
21          Plaintiff United Talent Agency ("UTA") moves for partial summary judgment as

22   to Defendant Markel American Insurance Company's ("MAIC") first, fourth, and fifth

23   affirmative defenses to Plaintiff's claims.  (UTA Mot., ECF No. 82-1.)  Defendant filed

24   an opposition, (Opp'n to UTA Mot., ECF No. 93), and Plaintiff replied, (Reply ISO

25   UTA Mot, ECF No. 94).   Separately, Defendant moves for summary judgment on

26   Plaintiff's claims.  (MAIC Mot., ECF No. 89.)  Plaintiff filed an opposition, (Opp'n to

27   MAIC Mot., ECF No. 90), and Defendant replied, (Reply ISO MAIC Mot., ECF No.

28   95.)  The Court heard oral argument on September 18, 2023.

                                          1

# I.   APPLICATIONS TO SEAL

The public has a "general right to inspect and copy public records and documents, including judicial records and documents." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016).  Consequently, there is a "strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).  This "strong presumption . . . applies fully to dispositive pleadings, including motions for summary judgment and related attachments." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).  Thus, a party seeking to seal court documents related to a motion for summary judgment bears the burden of overcoming this presumption by presenting "compelling reasons supported by specific factual findings." *Id.*

UTA filed an application to file under seal Exhibit 1 to the declaration of Michael S. Gehrt in support of its motion for summary judgment.  (1st Appl., ECF No. 84)  "Exhibit 1 is a confidential settlement agreement between UTA and" CAA settling the CAA lawsuit.  (1st Davis Decl. ¶ 2, ECF No. 84-1.)  The settlement agreement "contains a confidentiality clause that requires that the parties thereto, including UTA, refrain from disclosing any part of the settlement agreement.  However, the document allows UTA to use the document in an insurance coverage case arising from the *CAA* lawsuit." (*Id.* ¶ 4.)  If the agreement is to be used in this fashion, "the settlement agreement requires that it be filed under seal."  (*Id.*)

UTA demonstrates compelling reasons to seal.  "[T]he mere fact that the parties' settlement agreement may contain a confidentiality provision, without more, does not constitute a compelling reason to seal the information."  *Helix Env't Planning, Inc. v. Helix Env't & Strategic Sols.*, No. 3:18-cv-02000-AJB-AHG, 2021 WL 120829, at *1 (S.D. Cal. Jan. 13, 2021) (citing *Foltz*, 331 F.3d at 1138).  However, UTA argues that sealing is necessary to "protect non-party CAA's privacy interests in keeping the settlement's terms and amount away from public view."  (1st Davis Decl. ¶ 8.)  Courts in the Ninth Circuit have held that protecting the reasonable privacy interest of a non-

party constitutes a compelling reason to seal documents. *See Cat Coven LLC v. Shein Fashion Grp., Inc.*, 2:19-CV-07967-PSG-GJS, 2019 WL 10856813, at *1 (C.D. Cal. Dec. 20, 2019) (collecting cases). Accordingly, the Court finds there are "compelling reasons" to allow this document to be filed under seal. UTA's first application is therefore GRANTED.

Separately, UTA filed an application to seal portions of Exhibit 1 to the September 5, 2023 Gehrt declaration. UTA claims it "inadvertently filed its Expert Disclosures without first redacting the confidential information." (2nd Appl. 2, ECF No. 97.) Specifically, "UTA's Expert Disclosures contain the name of one of UTA's employees who was a party to a confidential arbitration" and "neither the fact of" this individual's "participation in that confidential arbitration, nor what transpired in that arbitration, have previously been made public." (2d Davis Decl. ¶ 4, ECF No. 97-1.) Because this individual is not a party to the suit, the Court finds that the need to protect the person's reasonable privacy interest constitutes a compelling reason to grant UTA's application.

UTA's second application is GRANTED. UTA shall file a notice of errata with respect to ECF No. 94-3 along with a redacted version of that document within five calendar days of the entry of this Order. The Clerk of Court shall seal ECF No. 94-3.

## II.    BACKGROUND

UTA purchased a management liability insurance policy (the "Policy") from MAIC covering a period from March 18, 2015, to March 18, 2016. (MAIC Statement of Genuine Disputes ("MAIC SGD") ¶ 1, ECF No. 93-1.) Under the Policy, MAIC was responsible for providing coverage for any "**Loss**" that UTA became "legally obligated to pay on account of any **Claim** . . . for a **Wrongful Act** taking place before or during the **Policy Period**."[1] (UTA Statement of Genuine Disputes ("UTA SGD") ¶ 6, ECF

---

[1] The Court intends bolded terms in this Order to have the same meaning set forth in the Policy.

No. 91; *see generally* Perlis Decl. Ex. A ("Policy"), ECF No. 89-3.)  The Policy defines a "**Claim**" as "a written demand against any **Insured** for monetary damages or non-monetary relief" or "a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading upon such **Insured**."  (MAIC SGD ¶ 8 (internal quotation marks omitted).)  The Policy defines "**Loss**" as "the total amount" that UTA was "legally obligated to pay on account of covered **Claims** made against them, including, but not limited to, . . . **Claim Expenses**."  (UTA SGD ¶ 10 (internal quotation marks omitted) (ellipsis in UTA SGD).)  The term "**Loss**" does not include "any amount incurred by" UTA "to comply with any injunctive or other non-monetary relief or any agreement to provide such relief," "any disgorgement or restitution of ill-gotten gain or rescissionary damages," or "matters uninsurable under the law pursuant to which this policy is construed."  (*Id.* ¶ 11.)  The Policy defines "**Wrongful Act**" as "any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty."  (MAIC SGD ¶ 9 (internal quotation marks omitted).)  The term "**Claim Expenses**" means "reasonable and necessary fees, costs and expenses incurred . . . in the defense or appeal of that portion of any Claim for which coverage is afforded under this policy."  (*Id.* ¶ 6 (internal quotation marks omitted).)

"The Policy is not a 'duty to defend' policy, as any such duty must have been purchased separately, which UTA did not do."  (UTA SGD ¶ 7.)  Instead, MAIC had the duty to "advance covered **Claim Expenses** on a current basis."  (*Id.* ¶ 8.)  The Policy also states that "[i]f in any **Claim** the **Insured** incurs both **Loss** covered by this policy and loss not covered by this policy . . . because the **Claim** against the **Insured** includes both covered and uncovered matters," then any "**Loss** . . . shall be allocated between covered **Loss** and uncovered loss based upon the relative legal and financial exposures of the parties to covered and uncovered matters."  (*Id.* ¶ 12.)

While the Policy was in effect, a competing talent management agency, Creative Artists Agency ("CAA"), sued UTA ("the CAA lawsuit").  (MAIC SGD ¶ 11.)  CAA brought claims against UTA as well as individual insureds Gregory Cavic and Gregory

McKnight for: 1) intentional interference with contractual relations; 2) inducing breach of contract; 3) intentional interference with prospective economic advantage; 4) breach of fiduciary duty; 5) conspiracy to breach fiduciary duty; 6) aiding and abetting breach of fiduciary duty; 7) breach of duty of loyalty; 8) conspiracy to breach duty of loyalty; 9) aiding and abetting breach of duty of loyalty; and 10) violations of Business and Professions Code section 17200 ("unfair competition" claim). (*Id.*¶¶ 12, 14.) The CAA lawsuit was resolved by settlement and dismissed on January 28, 2019. (*Id.* ¶¶ 26–27.)

UTA brought the instant suit alleging MAIC improperly denied insurance coverage under the Policy for claims arising from the CAA lawsuit. (Compl. ¶¶ 16–27, ECF No. 5.) UTA alleged breach of the insurance contract and tortious breach of the implied covenant of good faith and fair dealing, and sought declaratory relief stating that UTA was entitled to coverage under the Policy. (*Id.* ¶¶ 28–45.) In ruling on the parties' previous cross-motions for summary judgment, the Court held that the Policy's Broad Professional Services ("BPS") Exclusion precluded coverage and that California Insurance Code section 533 ("section 533") required final adjudication of intentional acts before its exclusion of coverage for wilful conduct applied. (Order, ECF No. 58.) After both parties filed an appeal, (UTA Notice, ECF No. 61; MAIC Notice, ECF No. 64), the Ninth Circuit held that the BPS Exclusion did not apply, and that section 533 does not require final adjudication of intentional conduct, (9th Cir. Mem. Order, ECF No. 76.) In remanding the case, the Ninth Circuit stated this "court's task is to examine the allegations in the underlying complaint to determine whether those allegations necessarily involve a wilful act within the meaning of § 533." (*Id.* at 7.)

In its motion for summary judgment, MAIC seeks a ruling that "the Underlying Litigation is uninsurable as a matter of law pursuant to California Insurance Code Section 533; the disgorgement/restitution sought in the Underlying Litigation is uninsurable as a matter of California public policy;" and "UTA's claims of breach of contract and breach of the implied covenant of good faith and fair dealing ('bad faith') are barred by the applicable four-year and two-year statutes of limitations." (MAIC

5

Not. of Mot. 2, ECF No. 89.)  For its part, UTA seeks summary judgment in its favor with respect to MAIC's "first, fourth, and fifth affirmative defenses." (UTA Notice of Mot. 2, ECF No. 82.)  Specifically, UTA asks the Court to hold "that the applicable statutes of limitation do not bar UTA's causes of action for breach of contract and tortious breach of the implied covenant of good faith and fair dealing," "that the terms of the insurance policy do not bar UTA's claim for insurance coverage," and "that California Insurance Code section 533 does not bar UTA's claim for insurance coverage." (*Id.*)

## III.   LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing law, the resolution of that fact might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex*, 477 U.S. at 322–23, and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007).  To meet its burden,

> [t]he moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000).  Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a

material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). There is no genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* at 587.

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotation marks omitted). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.* Accordingly, while both parties' motions are considered in this Order, the Court analyzes each one independently.

## IV.   PARTIES' BURDENS OF PROOF AT TRIAL

Before proceeding to the parties' motions, the Court begins with the threshold question of who must prove what, when. "When an issue of coverage exists, the burden" at trial "is on the insured to prove facts establishing that the claimed loss falls within the coverage provided by the policy's insuring clause." *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 777 (2010). "Once the insured has made that showing, the burden is on the insurer to prove the claim is specifically excluded," *id.*, but "[p]olicy exclusions must be construed narrowly," *Travelers Prop. Cas. Co. of Am. v. Actavis, Inc.*, 16 Cal. App. 5th 1026, 1044 (2017). If the insurer satisfies this burden, then the burden shifts back to the insured to show "that an exception to a coverage exclusion applies." *All Green Elec., Inc. v. Sec. Nat'l Ins. Co.*, 22 Cal. App. 5th 407, 415 n.2 (2018).

As applied to this case, UTA bears the burden of showing "the claimed loss falls within the coverage provided by the policy's insuring clause." *MRI Healthcare Ctr*, 187 Cal. App. 4th at 777. Specifically, UTA must establish that it suffered a "**Loss**" that UTA became "legally obligated to pay," (UTA SGD ¶ 6), as the result of a "written demand . . . for monetary damages or non-monetary relief" or "a civil proceeding,"

(MAIC SGD ¶ 8 (internal quotation marks omitted)), alleging "any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty," (Policy 26).[2]

Because the term "**Loss**" under the policy excludes "matters uninsurable under the law pursuant to which this policy is construed," (UTA SGD ¶ 11), MAIC argues that UTA has the burden of showing their claims are insurable under California law, (*See* Reply ISO MAIC Mot. 1–2.)  Likewise, because under the Policy MAIC was only required to "advance *covered* **Claim Expenses**," (UTA SGD ¶ 8 (italics added)), MAIC argues that "UTA has failed" to meet its burden to show "that the defense expenses it incurred are 'covered **Claim Expenses**,'" (Reply ISO MAIC Mot. 2).  These arguments unfairly shift the burden to the UTA.  MAIC has the burden of showing the Policy's exclusions or California Insurance Code section 533 precludes coverage.  *See Allstate Ins. Co. v. Tankovich*, 776 F. Supp. 1394, 1397 (N.D. Cal. 1991) (citing *U.S. Fid. & Guar. Co. v. Am. Employer's Ins. Co.*, 159 Cal. App. 3d 277, 284 (1984)) (recognizing section 533 is "an implied exclusionary clause which by statute is to be read into all insurance policies" (internal quotation marks omitted)).  As a result, MAIC must show that section 533 renders UTA's "**Claim**" uninsurable under California law such that UTA suffered no "**Loss**" or no "covered **Claim Expenses**."

## V.    MAIC'S MOTION

### A.    Statute of Limitations

MAIC renews its argument that UTA's claims are barred under the relevant statute of limitations.  (MAIC Mot. 17–20.)  The Court previously concluded that UTA's claims could not be dismissed as untimely.  (Order Re: Mot. to Dismiss 3–4, ECF No. 15.)  Specifically, the Court held that *Lambert v. Commonwealth Land Title Ins. Co.*, 53 Cal. 3d 1072 (1991) "and its progeny indicate that California law permits equitable tolling where an insurer declines to advance defense costs, just as equitable

---

[2] This pinpoint citation refers to the page numbering generated by CM/ECF.

tolling is available when an insurer refuses to defend." (*Id.* at 4.)  MAIC contends that the Ninth Circuit's recent decision in *Marinelarena v. Allstate Northbrook Indemnity Co.*, No. 22-55344, 2023 WL 3033498 (9th Cir. Apr. 21, 2023), confirms MAIC's original position with respect to the statute of limitations.

The Court disagrees.  Nothing in *Marinelarena* addressed the issue of equitable tolling.  As a result, the Court reaffirms its conclusion that under California law, equitable tolling may apply "where an insurer declines to advance defense costs, just as equitable tolling is available when an insurer refuses to defend."  (Order Re: Mot. to Dismiss 4.)  The Court cannot determine on this motion that UTA's claims are untimely.

### B.  California Insurance Code section 533

#### 1.  Many of CAA's Allegations Required Proof of Wilful Acts

Section 533 states that "[a]n insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."  Cal. Ins. Code § 533.  The word "wilful" under section 533 is a term of art and is not necessarily synonymous with the word "intentional."  As the California Supreme Court has recognized, "[n]egligence is often, perhaps generally, the result of a 'willful act,' as the term is commonly understood."  *J. C. Penney Cas. Ins. Co. v. M. K.*, 52 Cal. 3d 1009, 1020 (1991).  For conduct to qualify as "wilful" under section 533, it must be "an act deliberately done for the express purpose of causing damage," an act "intentionally performed with knowledge that damage is highly probable or substantially certain to result," or "an intentional and wrongful act in which the harm is inherent in the act itself."  *Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 500 (1998) (cleaned up).

"Section 533 precludes only *indemnification* of wilful conduct and not the *defense* of an action in which such conduct is alleged."  *B & E Convalescent Ctr. v. State Comp. Ins. Fund*, 8 Cal. App. 4th 78, 93 (1992) (internal quotation marks omitted).  Here, "[t]he Policy is not a 'duty to defend' policy, as any such duty must have been purchased separately, which UTA did not do."  (UTA SGD ¶ 7.)  MAIC's duty to

"advance covered **Claim Expenses**" is therefore a duty to provide indemnification for "reasonable and necessary fees, costs and expenses incurred." (*Id.* ¶¶ 8–9.) As a result, if upon "examin[ing] the allegations in the underlying complaint" the Court concludes "those allegations necessarily involve a wilful act within the meaning of § 533," (9th Cir. Mem. Order 7), section 533 would bar coverage.

One way an insurer can show allegations in an underlying complaint "*necessarily* involve a wilful act within the meaning of § 533," (*id.* (emphasis added)), is to demonstrate that liability *requires* proof the defendant acted in manner that would satisfy the definition of "wilful" under section 533. This approach is regularly used by California courts in their section 533 analyses. For example, in *Republic Indemnity Co. v. Superior Court*, the court of appeal concluded that indemnification would not be precluded by section 533 unless the underlying action *required* proof of both an intentional act by the employer *and* a specific intent to injure, (i.e., the elements of "wilful" conduct). 224 Cal. App. 3d 492, 502 (1990) ("[I]n order to rely upon section 533 to justify its refusal to defend, [the insurer] must show that information available to it at that time demonstrated that [the plaintiff in the underlying complaint] was required to establish that [the insured] intended him harm, not merely that it intended to act.")

The court of appeal applied this approach in *B & E*, holding that section 533 precluded coverage where no "potential for recovery existed without proof of willful conduct." 8 Cal. App. 4th at 95. The court supported this conclusion by recognizing that "[a]n affirmative act which can only violate the law when it is accompanied by such an impermissible motivation *necessarily* involves willful and intentional misconduct." *Id.* Because the plaintiff in the underlying action "could not have prevailed . . . by proving anything short of . . . affirmative and willful misconduct," coverage was barred by section 533. *Id.* Similarly, in *Downey Venture*, the court of appeal recognized that a claim for malicious prosecution "must include proof of either actual hostility or ill will on the part of the defendant or a subjective intent to deliberately misuse the legal

system for personal gain or satisfaction at the expense of the wrongfully sued defendant." 66 Cal. App. 4th at 498–99. The court construed *B & E* to hold that coverage was barred by section 533 because "the insured's alleged misconduct would only be actionable if the insured had acted with an improper and legally impermissible motive or purpose." *Id.* at 505.

CAA's claims for intentional interference with contractual relations, inducing breach of contract, intentional interference with prospective economic advantage, conspiracy to breach fiduciary duty, aiding and abetting breach of fiduciary duty, conspiracy to breach duty of loyalty, and aiding and abetting breach of duty of loyalty all necessarily required proof of "wilful" conduct:

- <u>Intentional interference with contractual relations</u>: "To prevail on a cause of action for intentional interference with contractual relations, a plaintiff must plead and prove (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004). Even if "the plaintiff need not prove that a defendant acted with the primary purpose of disrupting the contract," the plaintiff still "must show the defendant's knowledge that the interference was certain or substantially certain to occur as a result of his or her action." *Id.* Section 533 therefore bars coverage for this cause of action because liability turns on proof that the defendant "intentionally performed" an act "with knowledge that damage is highly probable or substantially certain to result." *Downey Venture*, 66 Cal. App. 4th at 500 (cleaned up).

- <u>Inducing breach of contract</u>: Inducing breach of contract is a species of intentional interference with contractual relations. Liability requires a plaintiff to show "a valid contract between the plaintiff and a third party, defendant's

11

knowledge of it, defendant's intentional acts designed to induce a breach of the contractual relationship, consequent breach, and resulting damage." *1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568, 585 (2003) (cleaned up). Section 533 likewise precludes coverage for this claim; liability requires proof of "an act deliberately done for the express purpose of causing damage." *Downey Venture*, 66 Cal. App. 4th at 500 (cleaned up).

- Intentional interference with prospective economic advantage: Section 533 also precludes coverage for this claim.  To sustain liability for intentional interference with prospective economic advantage, the plaintiff must plead and prove: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003).  Because a defendant must engage in "intentional acts . . . designed to disrupt" "an economic relationship . . . with the probability of future economic benefit," *id.*, liability requires proof that the defendant "intentionally performed" an "an act deliberately done for the express purpose of causing damage" *Downey Venture*, 66 Cal. App. 4th at 500 (cleaned up).

- Conspiracy to breach fiduciary duty and conspiracy to breach duty of loyalty: "The elements of a civil conspiracy are (1) the formation of a group of two or more persons who agreed to a common plan or design to commit a tortious act; (2) a wrongful act committed pursuant to the agreement; and (3) resulting damages." *City of Industry v. City of Fillmore*, 198 Cal. App. 4th 191, 212 (2011).  Because both of these claims require proof of either an agreement or "a common plan or design to commit a tortious act," *id.*, liability requires proof of "wilful" conduct, *see Downey Venture*, 66 Cal. App. 4th at 500.

- Aiding and abetting breach of fiduciary duty and aiding and abetting breach of duty of loyalty: "The elements of a claim for aiding and abetting a breach of fiduciary duty are: (1) a third party's breach of fiduciary duties owed to plaintiff; (2) defendant's actual knowledge of that breach of fiduciary duties; (3) substantial assistance or encouragement by defendant to the third party's breach; and (4) defendant's conduct was a substantial factor in causing harm to plaintiff." *Nasrawi v. Buck Consultants LLC*, 231 Cal. App. 4th 328, 343 (2014). Because liability requires proof of the defendant's actual knowledge and substantial assistance or encouragement to breach a fiduciary duty, section 533 precludes coverage; liability requires proof of "an act deliberately done for the express purpose of causing damage" or, at the very least, "intentionally performed with knowledge that damage is highly probable or substantially certain to result." *Downey Venture*, 66 Cal. App. 4th at 500 (cleaned up).

Because liability for each of these causes of action necessarily requires proof of "wilful" conduct, coverage is barred by section 533. MAIC has therefore satisfied its burden of showing any these claims are "uninsurable under the law pursuant to which this policy is construed." (UTA SGD ¶ 11.)

> 2. *The Remaining Allegations Adequately Allege "Wilful" Conduct and Are "Inseparably Intertwined" with the "Wilful" Conduct*

Liability for the remaining causes of action—breach of fiduciary duty, breach of the duty of loyalty, and violation of section 17200—could conceivably be sustained "based on alleged conduct that has a lower degree of culpability" that what would be required to establish "wilful" conduct under section 533. *Unified W. Grocers, Inc. v. Twin City Fire Ins. Co.,* 457 F.3d 1106, 1112 (9th Cir. 2006)

- Breach of fiduciary duty: "The elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) its breach, and (3) damage proximately caused by that breach." *O'Neal v. Stanislaus Cnty. Emps.' Ret. Ass'n*, 8 Cal. App. 5th 1184, 1215 (2017) (internal quotation marks omitted). The

13

Ninth Circuit recognized in *Unified Western Grocers* that a breach of fiduciary duty "may occur without any intent or expectation to cause harm."  457 F.3d at 1113.  As a result, "[b]reach of this fiduciary duty . . . is not necessarily a willful act." *Id.*

- Breach of duty of loyalty: The duty of loyalty is generally evaluated "by analogy to a claim for breach of fiduciary duty." *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 410 (2007).  "The elements of a cause of action for breach of a duty of loyalty . . . are as follows: (1) the existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by that breach." *Id*.  Like a breach of fiduciary duty, liability for the breach of the duty of loyalty does not depend on proof of "wilful" conduct. *See Unified W. Grocers*, 457 F.3d at 1113.

- Violations of Business and Professions Code section 17200: Business and Professions Code section 17200 "does not proscribe specific activities, but broadly prohibits any unlawful, unfair or fraudulent business act or practice." *Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 251 (2011) (internal quotation marks omitted).  "[A] practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." *Id.* at 252. Because section 17200 is a strict liability statute, it does not require proof that a defendant knowingly or intentionally harmed a plaintiff.  *See Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 181 (2000) ("[T]he plaintiff need not show that a UCL defendant intended to injure anyone through its unfair or unlawful conduct.").  Thus, liability does not require proof of a "wilful" act.

MAIC argues that section 533 nonetheless applies because "CAA never made any allegation that could be interpreted as anything less than inherently harmful willful misconduct by UTA and its co-conspirators." (MAIC Mot. 10–11.)  MAIC also argues that even if the causes of action in the CAA complaint could hypothetically be sustained with proof of conduct with a lower degree of culpability, any such conduct was "so

14

intertwined with intentional and willful wrongdoing as to be inseparable from the wrongdoing" such that "the alleged negligence does not give rise to an insurer's duty to indemnity." (*Id.* at 12 (cleaned up) (citing *Marie Y. v. Gen. Star Indem. Co.*, 110 Cal. App. 4th 928, 957 (2003)).)

To the extent CAA could have succeeded on these causes of action by proving non-wilful conduct, any such conduct would have been "so closely related to [the] intentional misconduct as to constitute the same course of conduct for purposes of Insurance Code section 533." *State Farm Gen. Ins. Co. v. Mintarsih*, 175 Cal. App. 4th 274, 289 (2009). The insureds' alleged unfair business practices, breach of fiduciary duty, and breach of the duty of loyalty were "part and parcel" to the alleged scheme, *Marie Y.*, 110 Cal. App. 4th at 958 (internal quotation marks omitted), that allegedly involved a wilful conspiracy to breach their fiduciary duty and duty of loyalty as well as a coordinated effort to aid and abet the breach of fiduciary duty and duty of loyalty. (*See* CAA SAC ¶¶ 85–131, ECF No. 89-4.) Clearly, the gravamen of CAA's claims was that the insured acted "wilfully" as part of a broader, coordinated plan to harm CAA. *See Rizzo v. Ins. Co. of Penn.*, 969 F. Supp. 2d 1180, 1199–1200 (C.D. Cal. 2013) (looking to the "gravamen" of the complaint to determine whether claims of negligent conduct were "'inseparably intertwined' with noncovered conduct."), *aff'd in part and remanded in part on other grounds*, 632 F. App'x 889 (9th Cir. 2015).[3] Thus, even if CAA could have hypothetically proceeded on claims without a showing of "wilful" conduct, the facts supporting liability based on less culpable conduct would have been "'inseparably intertwined' with the intentional conduct described at great length" in the complaint. *Holland v. Travelers Com. Ins. Co.*, No. 2:19-cv-02604-SVW-RAO, 2020 WL 2527052, at *10 (C.D. Cal. Mar. 30, 2020) (citing *Unified W.*

---

[3] Although *Rizzo* dealt with an express policy exclusion, the court noted that an analysis of section 533 was "analogous to the present case because the claims for negligence are closely related to the claims arising out of dishonesty, fraud, or self-enrichment, which are excluded under [the] Exclusions." *Id.* at 1199 n.10.

*Grocers*, 457 F.3d at 1114), *aff'd*, 843 F. App'x 928 (9th Cir. 2021). Here, "[a]s in *Rizzo*, the gravamen of the [CAA] Complaint is [the insureds'] participation in a willful, fraudulent scheme," *id.*, intended to "intentionally and deliberately interfere[] with CAA's [then-]existing and prospective economic relationships," (CAA SAC ¶ 1).

"[T]he factual allegations related to" CAA's claims for unfair competition, breach of fiduciary duty, and breach of the duty of loyalty were "based on intentional conduct that the Complaint assert[ed] was central to [the insureds'] alleged scheme." *Holland*, 2020 WL 2527052, at *10. As a result, any liability would have "'unavoidably originate[d] from intentional and willful conduct by the insured,'" *id.* (quoting *Unified W. Grocers*, 457 F.3d at 1114), and MAIC had no duty to advance costs for these causes of action pursuant to section 533.

> ### 3.   MAIC Did Not Have a Duty to Advance Defense Costs Incurred by UTA Itself

Both in its opposition to MAIC's motion and in its own motion for summary judgment, UTA argues that "[e]ven if [MAIC] had overwhelming evidence . . . showing that all of the individual insureds acted with the subjective intent required to fall within section 533's prohibitions, [MAIC] still would owe coverage to UTA the company." (Opp'n to MAIC Mot. 18; *see* UTA Mot. 24.) The California Supreme Court has indeed held that section 533 "has no application to a situation where the plaintiff is not personally at fault." *Arenson v. Nat'l Auto. & Cas. Ins. Co.*, 45 Cal. 2d 81, 84 (1955). As a result, "[i]ndemnity of the insured principal for the wilful, wrongful act of an insured is not contrary to public policy because the insured in such a case is guilty of no wrong-doing, but simply has the misfortune to be legally responsible for the wrong-doing of another." *Am. States Ins. Co. v. Borbor*, 826 F.2d 888, 893 (9th Cir. 1987) (cleaned up).

UTA's argument is unavailing because the CAA complaint clearly alleged UTA's leadership actively participated in the plan to harm CAA. (*See* CAA SAC ¶ 129 ("UTA, including UTA's Chief Executive Officer, UTA's General Counsel and Chief

Operating Officer, UTA's Associate General Counsel, and several of UTA's directors, substantially assisted the wrongful acts alleged herein . . . ."); *accord id.* ¶¶ 44, 46, 50, 57, 67, 69, 108, 134.)  CAA adequately alleged that "UTA and its co-conspirators" engaged in a deliberate attempt "to steal clients and employees" and that the individual insureds and UTA "worked clandestinely with each other . . . to induce a number of CAA employees to abruptly terminate their employment with CAA and to join UTA." (*Id.* ¶ 1.)  Because CAA has sufficiently alleged UTA and its senior leadership were direct and wilful participants, section 533 applies to this case.

To the extent UTA could have been held liable "based on alleged conduct that has a lower degree of culpability," *Unified W. Grocers*, 457 F.3d at 1112, such as negligence or respondeat superior, any such conduct would also have arisen from acts that were "'inseparably intertwined' with the intentional conduct described" in the complaint.  *Holland*, 2020 WL 2527052, at *10.  As discussed above, it is "clear from the [CAA complaint] as a whole that the claims arise out of a deliberate and conscious agreement between [UTA] and [its] co-defendants."  *Rizzo*, 969 F. Supp. 2d at 1200.  Thus "even to the extent that any alleged claims by their technical nature do not involve" "wilful" conduct under section 533, *id.*, such claims would be "so closely related to intentional misconduct as to be inseparable from it," *Mintarsih*, 175 Cal. App. 4th at 288.

The CAA complaint alleges that UTA's conduct was "wilful" or otherwise so "inseparably intertwined" with its "wilful" conduct such that section 533 precludes coverage.

\*\*\*

MAIC has shown that pursuant to section 533 it had no duty to advance any defense costs related to the CAA lawsuit.  CAA's claims for intentional interference with contractual relations, inducing breach of contract, intentional interference with prospective economic advantage, conspiracy to breach fiduciary duty, aiding and abetting breach of fiduciary duty, conspiracy to breach duty of loyalty, and aiding and

1   abetting breach of duty of loyalty require proof of wilful conduct and thus "*necessarily*
2   involve a wilful act within the meaning of § 533." (9th Cir. Mem. Order 7.)

3        MAIC has also shown that under section 533 it had no duty to advance defense
4   costs for CAA's claims of breach of fiduciary duty, breach of the duty of loyalty, and
5   violation of California Business and Professions Code section 17200. To the extent
6   these causes of action could have been sustained "based on alleged conduct that has a
7   lower degree of culpability," *Unified W. Grocers*, 457 F.3d at 1112, MAIC's duty would
8   have not have arisen under section 533 because the insureds' conduct "'unavoidably
9   originate[d] from intentional and willful conduct." *Holland*, 2020 WL 2527052, at *10.

10       Finally, because the CAA complaint alleges that UTA's leadership engaged in
11  "wilful" conduct in service of the plan to harm CAA, MAIC had no duty to advance
12  defense costs under section 533. For reasons similar to those discussed above, any
13  conduct by UTA itself that did not rise to the level of "wilful" was "inseparably
14  intertwined" with "wilful" conduct meaning section 533 likewise precludes coverage.

15       MAIC's motion for summary judgment is GRANTED on this basis. The Court
16  declines to reach MAIC's remaining arguments and DENIES as moot the balance of
17  the motion.

18  **VI.   UTA'S MOTION**

19       When viewing the evidence in the light most favorable to UTA, the Court found
20  that MAIC is entitled to summary judgment that coverage was not afforded under
21  section 533. To the extent there is a factual dispute in this case, the outcome would
22  clearly be the same when viewing the evidence in the light most favorable to MAIC.
23  As a result, UTA's motion for summary adjudication as to MAIC's section 533
24  affirmative defense is DENIED. Because the section 533 issue disposes of UTA's
25  claims, the Court DENIES the balance of the motion as moot.

26  ///

27  **VII.   CONCLUSION**

28       MAIC has satisfied its burden of showing that under section 533 it had no duty

1   to advance defense costs related to CAA's claims.   MAIC's motion for summary

2   judgment is GRANTED to this end.   The remainder of MAIC's motion is DENIED,

3   and UTA's motion is DENIED in its entirety.   There is no coverage available under the

4   For Profit Management Liability Policy number ML817361 issued by MAIC to United

5   Talent Agency Holdings, Inc., for Directors and Officers and Company Liability, for

6   the Policy Period of March 18, 2015, to March 18, 2016), for the Underlying Litigation

7   (i.e., *Creative Artists Agency, LLC v. United Talent Agency, LLC, et al.*, Los Angeles

8   Superior Court Case No. SC 123994).   UTA's claims must be dismissed consistent with

9   this determination.   The Court directs the Clerk to enter judgment accordingly.

10

11   **IT IS SO ORDERED.**

12

13    Dated: September 29, 2023

14                                              MARK C. SCARSI
                                                UNITED STATES DISTRICT JUDGE

19